

**TRANSPERFECT**

City of New York, State of New York, County of New York

I, Anders Ekholm, hereby certify that the attached document is to the best of my knowledge and belief, a true and accurate translation from Turkish into English.

_(signature)_

Anders Ekholm

Sworn to before me this
August 23, 2019

_(signature)_

Signature, Notary Public

AURORA ROSE LANDMAN
NOTARY PUBLIC-STATE OF NEW YORK
No. 01LA6380858
Qualified in New York County
My Commission Expires 09-17-2022

Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016 | T 212.689.5555 | F 212.689.1059 | WWW.TRANSPERFECT.COM
OFFICES IN 90 CITIES WORLDWIDE

**REPUBLIC OF TURKEY**
**ISTANBUL**
**CHIEF PUBLIC PROSECUTOR'S OFFICE**

| | |
|---|---|
| **Investigation No.** | **:** 2017/175132 Investigation |
| **Decision No.** | **:** 2018/56534 |

**DECISION OF NON-PROSECUTION**

**PLAINTIFF** **:** K.H.

**COMPLAINANT** **: YALÇIN AYASLI,** son of MEHMET NURİ and KERİME NESİBE, born on ▮▮▮▮▮▮, resides at NASHUA, NH / UNITED STATES OF AMERICA.

**ATTORNEY** **: ATT. AYŞE HERGÜNER BİLGEN,** ISTANBUL
Büyükdere Cad. No: 199 Levent / ISTANBUL

**SUSPECT** **: 1- FATİH AKOL,** son of YAŞAR and FATMA, born on ▮▮▮▮▮▮, registered in the civil registry in the city of ADANA, district of MERKEZ [CENTER], village/neighborhood of KAYALIBAĞ in volume 25, family serial number 547, serial number 16 and resides at Göktürk Merkez Mah. Mutlu Yokuşu Yolu Sk. No: 1F İç Kapı No: 3 Eyüp / ISTANBUL.

**OFFENSE** **:** Fraud via the Use of Information Systems, Banks or Credit Institutions as an Instrument, Establishing a Criminal Organization with Criminal Intent

**DATE AND PLACE OF OFFENSE** **:** 11/24/2017 ISTANBUL/MERKEZ, ISTANBUL/null

**SUSPECT** **: 2- JACOP ORTELL KINGSTON,** son of, born on, registered in the city of, district of, village/neighborhood of, in volume, family serial number, serial number and resides at.

**OFFENSE** **:** Fraud via the Use of Information Systems, Banks or Credit Institutions as an Instrument, Establishing a Criminal Organization with Criminal Intent

**DATE AND PLACE OF OFFENSE** **:** 11/24/2017 ISTANBUL/MERKEZ, ISTANBUL/null

**SUSPECT** **: 3- KADİR PEKER,** son of YILMAZ and TÜREL, born on ▮▮▮▮▮▮, registered in the city of MANİSA, district of AKHİSAR, village/neighborhood of ULUCAMİ, in volume 14, family serial number 656, serial number 11 and resides at Şenlikköy Mah. Otlukbeli Sk. No: 8 İç Kapı No: 0 Bakırköy / ISTANBUL.

**OFFENSE** **:** Fraud via the Use of Information Systems, Banks or Credit Institutions as an Instrument, Establishing a Criminal Organization with Criminal Intent

**DATE AND PLACE OF OFFENSE** **:** 11/24/2017 ISTANBUL/MERKEZ, ISTANBUL/null

1

[datamatrix] _____
You may access this document available on National Judiciary Informatics System at http://vatandas.uyap.gov.tr with the code DlnQCHx – CO+Cy6T – lp0Vbp9 – AF5B8Y=.

| | |
|---|---|
| **SUSPECT** | **: 4- KAMİL EKİM ALPTEKİN,** son of MUSTAFA SEVİNÇ and ZEHRA, born on ▮▮▮▮, registered in the city of DENİZLİ, district of MERKEZEFENDİ, village/neighborhood of DEĞİRMENÖNÜ, in volume 5, family serial number 357, serial number 8 and resides at Burhaniye Mah. Taşocakları Sk. No 10C İç Kapı No: 1 Üsküdar /ISTANBUL. |
| **OFFENSE** | **:** Fraud via the Use of Information Systems, Banks or Credit Institutions as an Instrument, Establishing a Criminal Organization with Criminal Intent |
| **DATE AND PLACE OF OFFENSE** | **:** 11/24/2017 ISTANBUL/MERKEZ, ISTANBUL/null |
| **SUSPECT** | **: 5- KAMİL FERİDUN ÖZKARAMAN,** son of MEHMET BESİM and HACER, born on ▮▮▮▮, registered in the city of ISTANBUL, district of ÜSKÜDAR, village/neighborhood of AZİZ MAHMUT HÜDAYİ, in volume 49, family serial number 1173, serial number 8 and resides at Çeliktepe Mah. Hoşgör Sk. No: 3 İç Kapı No: 4 Kağıthane / ISTANBUL. |
| **OFFENSE** | **:** Fraud via the Use of Information Systems, Banks or Credit Institutions as an Instrument, Establishing a Criminal Organization with Criminal Intent |
| **DATE AND PLACE OF OFFENSE** | **:** 11/24/2017 ISTANBUL/MERKEZ, ISTANBUL/null |
| **SUSPECT** | **: 6- LEVON TERMENDZHYAN** |
| **OFFENSE** | **:** Fraud via the Use of Information Systems, Banks or Credit Institutions as an Instrument, Establishing a Criminal Organization with Criminal Intent |
| **DATE AND PLACE OF OFFENSE** | **:** 11/24/2017 ISTANBUL/MERKEZ, ISTANBUL/null |
| **SUSPECT** | **: 7- SEZGİN BARAN KORKMAZ,** son of TEYYAR and RAHİME, born on ▮▮▮▮, registered in the city of KARS, district of DİGOR, village/neighborhood of BACALI , in volume 5, family serial number 32, serial number 27 and resides at Acarlar Mah. Bıldırcın Sk. No: 146 Beykoz / ISTANBUL. |
| **OFFENSE** | **:** Fraud via the Use of Information Systems, Banks or Credit Institutions as an Instrument, Establishing a Criminal Organization with Criminal Intent |
| **DATE AND PLACE OF OFFENSE** | **:** 11/24/2017 ISTANBUL/MERKEZ, ISTANBUL/null |
| **SUSPECT** | **: 8- TOLGA ÜZÜMCÜ,** son of İSMAİL and NİLGÜN, born on ▮▮▮▮, registered in the city of ÇANAKKALE, district of LAPSEKİ, village/neighborhood of UMURBEY BELDESİ, in volume 41, family serial number 194, serial number 13 and resides at Barbaros Mah. Ardıç Sk. No: 8H İç Kapı No: 3 Ataşehir / ISTANBUL. |
| **OFFENSE** | **:** Fraud via the Use of Information Systems, Banks or Credit Institutions as an Instrument, Establishing a Criminal Organization with Criminal Intent |
| **DATE AND PLACE OF OFFENSE** | **:** 11/24/2017 ISTANBUL/MERKEZ, ISTANBUL/null |

2

| | |
|---|---|
| **SUSPECT** | **: 9- AUTHORIZED REPRESENTATIVES OF BORA JET HAVACILIK TAŞIMACILIK UÇAK BAKIM ONARIM VE TİCARET A.Ş.** |
| **OFFENSE** | : Aggravated Fraud. |
| **DATE AND PLACE** | |
| **OF OFFENSE** | : 11/24/2017 ISTANBUL |
| **SUSPECT** | **: 10- AUTHORIZED REPRESENTATIVES OF BUGARAJ ELEKTRONİK TİCARET VE BİLİŞİM HİZMETLERİ A.Ş.** |
| **OFFENSE** | : Aggravated Fraud |
| **DATE AND PLACE** | |
| **OF OFFENSE** | : 11/24/2017 ISTANBUL |
| **SUSPECT** | **: 11- AUTHORIZED REPRESENTATIVES OF MEGA VARLIK YÖNETİM ANONİM ŞİRKETİ,** resides at Beylerbeyi Mah. Beylerbeyi İskele Cad. No: 16/1 Üsküdar Istanbul Üsküdar / ISTANBUL. |
| **OFFENSE** | : Aggravated Fraud |
| **DATE AND PLACE** | |
| **OF OFFENSE** | : 11/24/2017 ISTANBUL |
| **SUSPECT** | **: 12- AUTHORIZED REPRESENTATIVES OF SBK HOLDING A.Ş.,** resides at Sarıyer Reşitpaşa Mah. Eski Büyükdere Cad. No: 14 K: 9/B Maslak Şişli / ISTANBUL. |
| **OFFENSE** | : Aggravated Fraud |
| **DATE AND PLACE** | |
| **OF OFFENSE** | : 11/24/2017 ISTANBUL |

<u>**INVESTIGATION DOCUMENT WAS REVIEWED:**</u>

      With the complaint petition submitted to our Chief Public Prosecutor's Office by the attorney of the complainant Yalçın AYASLI, it is understood that he filed a complaint with the claim that the shares of the company named Borajet owned by the complainant Yalçın AYASLI along with the shares of the companies Borajet Bakım [Maintenance] and Aydınjet were transferred to Bugaraj Elektronik Tic. A.Ş. owned by one of the suspects Sezgin Baran KORKMAZ who is also the owner of SBK Holding, that a share transfer and profit sharing contract was signed by and between the parties on 12/29/2016, that the parties have reached an agreement on which debts were to be paid off by the parties however banks have sent warning letters to Sezgin Baran KORKMAZ for the payment of the loan debts that were owed by the complainant for various reasons, that the debts were assigned to Mega Varlık Yönetim A.Ş. which is affiliated with SBK Holding after the complainant failed to pay off his debts, that one of the members of the board of directors of the company named Mega Varlık during the aforementioned period was Kamil Ekim [ALPTEKİN] and the individuals in question acted together in an organized manner to cause damage to the complainant through unlawful means, that Sezgin Baran KORKMAZ filed a criminal complaint against the complainant in order to put him under pressure, that the public action filed against the complainant is still pending before Istanbul 2nd High Criminal Court, that the company named SBK Holding is backed by Levon Termendzhyan and Jacob Ortell Kingston who are foreign nationals along with Fatih AKOL, Kamil Feridun ÖZKARAMAN who partook in the share transfer contract and Tolga ÜZÜMCÜ who was in charge of the company's financial affairs, and Kadir PEKER who also took part in the share transfer as well as other suspects to be determined came together to commit a crime and established a criminal organization for this purpose and that they committed the offenses of aggravated fraud, perjury, attempt to influence a fair trial and threat, and furthermore, that the suspect Sezgin Baran KORKMAZ is affiliated with FETO [Fethullahist Terrorist Organization] / PDY [Parallel State Structure] terrorist organization and they conspired against the complainant together with this organization,

      That a separate file was prepared about the suspect Sezgin Baran KORKMAZ for the offense of being a member of an armed terrorist organization and this was recorded in our Chief Public Prosecutor's Office file numbered 2018/63526,

3

[datamatrix] _____
You may access this document available on National Judiciary Informatics System at http://vatandas.uyap.gov.tr with the code DlnQCHx – CO+Cy6T – lp0Vbp9 – AF5B8Y=.

That there is an ongoing investigation within the file with the investigation number 2017/68314 of Istanbul Chief Public Prosecutor's Office between the suspect Sezgin Baran KORKMAZ and the complainant Yalçın AYASLI on the grounds that unlawful transactions have been carried out during the sale of Borajet, it was determined that Sezgin BARAN KORKMAZ suffered from losses due to the unlawful transactions that were carried out prior to the transfer of Borajet's shares, company's accounting records were falsified, airplanes registered in the name of the company were used as donors and their parts were detected to be missing in the witness expert report prepared within the scope of the investigation, it was also determined that Yalçın AYASLI tried to smuggle his personal assets by transferring these during the sales process, therefore a public action was filed against Yalçın AYASLI as per Article 158/1-h of the Turkish Penal Code,

As a result of the review that was conducted within the scope of the file, an inspection report dated 07/06/2018 was issued by Istanbul Branch Directorate for Combatting Financial Crimes, no unlawful transactions were discovered with regards to the transfer of the company shares carried out between the complainant and other suspects, the share transfer carried out between the parties was previously reviewed with the file of Istanbul Chief Public Prosecutor's Office numbered 2017/68314 investigation, and it was reported that nothing was discovered against the suspects.

As a result of the investigation that was conducted, it was understood from the scope of the entire file that there is a commercial relationship between the complainant Yalçın AYASLI and the suspect Sezgin Baran KORKMAZ who is also the owner of SBK Holding, that the parties had a previous hostility due to the transfer of the company's shares, the public action in this regard is still pending a decision, the claims that the complainant carried out an unlawful transaction during and after the transfer of the company constituted a legal dispute arising from purchase and sale between the parties, and the claims in the question in fact constituted a defense for the public action that is still pending before Istanbul 2nd High Criminal Court against the complainant Yalçın AYASLI, that there is no substantial evidence which shows that the suspects are affiliated in a way that they could have established a criminal organization and acted in unity as claimed by the complainant, other offenses that were claimed by the complainant to have been committed by the suspects are abstract claims, that the claims were brought forward due to the hostility and legal dispute between the parties, there is no substantial evidence which shows that the alleged offenses have been committed and in fact, a lawsuit can be filed by the complainant before the authorized and competent legal courts due to the legal dispute that arose from the share transfer;

It was decreed that **THERE IS NO NEED FOR THE INDIVIDUAL PROSECUTION** of the suspects for the alleged offenses,

A copy of the ruling **will be delivered to the complainant's attorney,**

that an objection can be raised against the decision before On-Duty Istanbul Criminal Court of Peace via our Chief Public Prosecutor's Office within 15 days as of the date that the decision was notified in accordance with Articles 172 – 173 of the Code of Criminal Procedure. 07/09/2018

Muhammet AKCAER 120910
Public Prosecutor
***signed with an e-signature***

4

[datamatrix] _____
You may access this document available on National Judiciary Informatics System at http://vatandas.uyap.gov.tr with the code DlnQCHx – CO+Cy6T – lp0Vbp9 – AF5B8Y=.

Hergüner Bilgen Özeke
Attorney Partnership        [bilingual text]

Büyükdere Caddesi 199 Levent 34394 Istanbul TURKEY
T +90 212 310 18 00 F +90 212 310 18 99
E info@herguner.av.tr W www.herguner.av.tr

Att. Piraye Kuranel Başol
Att. Ayşe Hergüner Bilgen
Att. İsmet Bozoğlu
Att. S. Aslı Budak
Att. H. Tolga Danışman
Att. Serkan Gül
Att. Ümit Hergüner
Att. Senem İşmen

Att. Nazım O. Kurt
Att. M. Mert Oğuzülgen
Att. Yeşim F. Api Şamlı
Att. Deniz Tuncel
Att. Kayra Üçer
Att. Ufuk Yalçın
Att. Bige Yücel

[handwritten:] *2017/175132*

**November 24, 2017**

**INCLUDES A REQUEST FOR CAPTURE, ARREST, BAN ON
LEAVING THE COUNTRY, INJUNCTION, SEARCH AND
SEIZURE.**

FOR THE ATTENTION OF ISTANBUL CHIEF PUBLIC PROSECUTOR'S OFFICE,

**COMPLAINANT**          :  **Yalçın Ayaslı**
75 Hawthorn Village Road, Nashua NH 03062, USA

**ATTORNEYS**          :  **Att. Ayşe Hergüner Bilgen – Att. Hamdi Tolga Danışman**
*(Address is in the letterhead.)*

**SUSPECTS**          :  1- Sezgin Baran Korkmaz *(Republic of Turkey Identity No.: 24194155124)*
2- Kamil Ekim Alptekin *(Republic of Turkey Identity No.: 42211033118)*
3- Levon Termendzhyan (Lev Aslan Dermen)
4- Jacob Ortell Kingston *(Tax identification number:* ▮▮▮▮▮▮*)*
5- Bugaraj Elektronik Ticaret ve Bilişim Hizmetleri A.Ş.'s authorized
representatives
*(all authorized representatives determined as suspects and
primarily, Cüneyt Özen (Republic of Turkey Identity No.: 10660831050))*
[handwritten:] *Because he is an attorney* ⟵
6- Fatih Akol *(Republic of Turkey Identity No.: 16774198744)*
7- Tolga Üzümcü *(Republic of Turkey Identity No.: 32686260812)*
8- Kadir Peker *(Republic of Turkey Identity No.: 32732042126)*
[10]- Kamil Feridun Özkaraman *(Republic of Turkey Identity No.: 46846353986)*
11- Authorized representatives of Bora Jet Havacılık Taşımacılık Uçak Bakım
Onarım ve Ticaret A.Ş.
*(all authorized representatives determined as suspects and
primarily Sezgin Baran Korkmaz, Fatih Akol, Kamil Feridun Özkaraman and Cüneyt Özen)*
12- Authorized representatives of Mega Varlık Yönetim Anonim Şirketi
*(all authorized representatives determined as suspects and
primarily Jacob Ortell Kingston and Kamil Ekim Alptekin)*
13- Authorized representatives of SBK Holding A.Ş.
*(all authorized representatives determined as suspects and
primarily Sezgin Baran Korkmaz)*
14- Other individuals who have acted as an accomplice that will be determined within the scope of
the investigation

…./…./201…
Mustafa KUCUKOGLU
Public Prosecutor

[stamp:] REPUBLIC OF TURKEY
ISTANBUL
CHIEF PUBLIC PROSECUTOR'S OFFICE
[illegible]

[illegible]        Turkish Penal Code 158 / 1 [illegible]        [signature]        [signature]

Hergüner Bilgen Özeke

| | | |
|---|---|---|
| **OFFENSES** | **:** | **1- Establishing a criminal organization in order to commit crimes as per Article 220 of the Turkish Penal Code** due to the following offenses being committed within the scope of the activities of an organization<br>2- Aggravated Fraud (Turkish Penal Code Article 158 1st paragraph, sub-paragraphs b-f-g-h)<br>3- Perjury (Turkish Penal Code Article 272)<br>4- Attempt to Influence Fair Trial (Turkish Penal Code Article 288)<br>5- Threat (Turkish Penal Code Article 106) |
| **SUBJECT** | **:** | With regards to all Suspects named above and other individuals determined to have taken part in committing the crime as a result of the investigation that will be conducted by the Prosecutor's Office, the subject matter includes the requests for the adoption of a decision to (i) prepare a bill of indictment within the scope of the actions that will be explained in further detail below and file a public action, (ii) to issue an arrest warrant and establish a ban preventing these individuals from leaving the country, (iii) to implement the necessary cautionary judgements on all movable and immovable properties and bank accounts as required. |

## STATEMENTS

**SUMMARY:**

As explained in detail within the scope of this petition, pursuant to the evidences that we submitted to your Honorable Office with regards to the following matters that have occurred during, much before and after the negotiation and execution of the share transfer contract for the transfer of the companies Bora Jet Havacılık Taşımacılık Uçak Bakım Onarım ve Ticaret A.Ş. ("**Bora Jet**"), Bora Jet Bakım ve Onarım Ticaret A.Ş. ("**Bora Jet Bakım [Maintenance]**"), and Aydın Jet Havacılık A.Ş. ("**Aydın Jet**") owned by the Client Yalçın Ayaslı:

- *Taking advantage of the convenience provided by press and media organs, he was deceived in a planned manner by some of the suspects through several actions with constitute aggravated fraud within the scope of business activities,*

- *Some of the suspects were engaged in perjury within the scope of the baseless investigations brought against the Client both due to coercion and with their own initiatives,*

- *Creating a perception against the Client in the press in a biased manner, Client's reputation was damaged and it was ensured that others acted against the Client through threats and as a result of this, the offences of threat and attempting to influence a fair trial were committed,*

 - *All of these actions were carried out against the Client and other persons apart from the Client in an organized manner, this was also realized by the Capital Market Board and the offense of establishing a criminal organization with the intent to commit a crime might have been committed within this scope,*

and the evidences that will be collected ex officio, we hereby request a public action to be filed against those determined to be responsible for the offenses that they are charged with and the necessary measures to be implemented against them.

## 1. INFORMATION ABOUT OUR CLIENT YALÇIN AYASLI

**1.** Our Client Yalçın Ayaslı was born in Ankara, in ███. He graduated from Ankara Atatürk High School and then from the Electrical Engineering department at METU [Middle East Technical University]. In 1973, he completed his master's and PhD studies at the Massachusetts Institute of

2

[signature]          [signature]

Hergüner Bilgen Özeke

Technology (MIT) in Boston. Subsequent to this, Yalçın Ayaslı served as a faculty member and vice head of the department at METU Electrical Engineering Department for six years.

2. As of 1979, he conducted theoretical and experimental studies on microwave monolithic integrated circuit techniques, GaAs field effect transistor and relevant devices within the research department of the company called Raytheon that is situated in the state of Massachusetts in USA. Dr. Ayaslı has 15 patents related to his studies and he has published several technical articles. In 1986, he was awarded with the Microwave Award of the Institute of the Electrical and Electronic Engineers ("IEEE") for his studies within the field of "High broadband-monolithic distributed wave amplifier". He also holds the title of "Fellow" at the aforementioned international institute which is awarded to those members regarded as exceptionally successful.

3. On the other hand, Client established his own company named Hittite Microwave Corp. in Chelmsford, MA in 1985. The company was registered at NASDAQ stock exchange on January 15, 1985. Company manufactures RFIC mixed signal, microwave and millimeter wave integrated circuit parts and auxiliary systems for the telecommunication markets worldwide. The company that went public in 2005 and that is registered at NASDAQ was purchased by Analogue Devices (AND) in 2014 for the price of USD 2,500,000,000.

4. The Client who was retired in 2005 transferred his shares at Hittite Microwave that are worth USD 60,000,000 to the Turkish Coalition of America that he established in 2007 and to Turkish Cultural Foundation that he established in 2000 for the promotion of the Turkish culture and within this scope, he **aimed to promote the Turkish culture to the entire world and to ensure that Turkish-Americans would have a voice within the political realm in the United States of America** through these non-profit institutions that had offices in Boston, Washington DC and Istanbul.

5. **On the other hand, he also took a stance against the Armenian genocide claims which is one of the most challenging subjects that Turkey is faced with in the international arena in particular and within this framework, he carried out important activities of a legal nature in various parts of the world through the foundation named Turkish American Legal Defense Fund that he established in 2009 as an extension of the Turkish Coalition of America against the activities of the Armenian lobby. The significance of this point and its link with the aggravated fraud case submitted before your Office are explained in detail within paragraph numbered 39 of our petition.**

**6.** He donated Ayaslı Research Center to the department of Electrical Engineering at METU where he graduated from in 2012 and he also founded the Culinary Arts Center and Natural Dye Research and Development Laboratories in Istanbul. **Our client is also a member of the Global Turkish Business Council High Advisory Board.**

7. Our client made investments to promote the Turkish culture and he has made and still makes significant contributions to Turkey as a respected individual. Our Client who is dual citizen of both Turkey and the United States of America relied on bilateral agreements between USA and Turkey that guaranteed the investments of the investors and he has invested more than USD 400 million in Turkey until now. **[APPENDIX 1 – News Articles Published in the Press About the Client and His Investments]**

3

[signature]          [signature]

Hergüner Bilgen Özeke

## II.      MATERIAL FACTS AND ACTIONS SUBJECT TO THE COMPLAINT:

### A- MATERIAL FACTS REGARDING THE OFFENSE OF AGGRAVATED FRAUD

8. Within the scope of the investments made by our Client in Turkey and in connection with the activities carried out to promote the Turkish culture within the international arena as of 2007, our Client purchased the company named Ovaair Uçak Bakım Onarım ve Havacılık Ticaret Ltd. Şti. which can go to relatively less known spots across Turkey and which holds a license to carry our short distance flights considering the ability to introduce Turkey to those who come from abroad, to organize promotional trips for the US Congress members that he brought to Turkey and to organize short distance flights including air taxi. As a result of the tradename change and transactions related to changing the company type that were carried out after the purchase was complete, company was given its current tradename which is Bora Jet. As Bora Jet was restructured in 2014, Bora Jet Bakım ve Onarım Ticaret A.Ş. (**"Bora Jet Bakım"**) was established through a partial demerger. Our Client also founded Aydın Jet Havacılık A.Ş. (**"Aydın Jet"**) in 2015.

9. Bora Jet adopted a policy of expansion as the only regional airline company operating in Turkey. Within this scope, the operations planned to be carried out at the third airport were also considered and preliminary contracts were signed with various aircraft companies such as Embraer and Bombardier with regards to the purchase of new airplanes. Within the framework of its agreement with Turkish Airlines, joint flights had been carried out. With a presentation prepared by the company named Ata Yatırım Menkul Kıymetler A.Ş. (**"Ata Invest"**) which is an investment company authorized in April 2016 to find financing that would further develop the companies including the future projections for June 2016, Borajet's value was determined to increase to USD 358,000,000 in accordance with the method of multiplier analysis for similar companies and to USD 1,770,000,000 as per the reduced cash flow analysis method. [**APPENDIX 2 – Exclusive Consultancy Agreement and Presentation Regarding Valuation**]

10. As of April 2016, certain news articles started to be published in the press that implied a connection between Borajet and FETO. Some of these articles are submitted for the consideration of your Honorable Prosecution Office as an example.[1] [**APPENDIX 3- Baseless Articles Published Against the Client**]

11. Subsequent to the treacherous attempt for the coup d'etat that took place on July 15, 2016, a much more serious smear campaign was started against the Client where he was directly targeted, and this campaign was in the form of a serious accusation operation. In fact, starting as of August 2016 and until January 2017, numerous baseless and untrue news articles were published against the Client in a systematic manner within leading newspapers such as Sabah, Takvim, Sözcü and other news websites in order to create a negative perception within the scope of the developments that occurred in the country.[2] These news articles published after July 15th are submitted for the consideration of your Honorable Prosecution Office in the attachment. [**APPENDIX 4- Baseless News Articles Published with regards to the Client**] It was learned at a later date that these news articles were published with the request of Kamil Ekim Alptekin and/or other Suspects.

---

[1] http://www.habervaktim.com/haber/467094/paralar-cemaate-himmet-olarak-aktarildi.html – http://t24.com.tr/haber/şikede-kumpas-dosyasindan-polis-operasyon-yapti-cemaate-yakin-avukat-savundu-paralar-himmet-oldu.337491, http://www.karar.com/gundem-haberleri/sikenin-himmetci-avukatlari-98067. http://www.haberkanal.net/m/mansetgoster-mob.nsp?haber_no=7929, http://www.hurriyet.com.tr/avukat-ve-polislerin-himmet-agi-10093238

[2] Mahmut Övür FETO under every rock, August 21, 2016, http://www.sabah.com.tr/yazarlar/ovur/2016/08/21/feto-her-tasin-altinda. Mahmut Övür, Who enabled Ayaslı from US to meet these names? August 23, 2016, http://www.sabah.com.tr/yazarlar/ovur/2016/08/23/abdli-ayasliyla-bu-isimleri-kim-bulusturdu; Ergün Diler, Did Gülen Come? September 02, 2016. http://www.takvim.com.tr/yazarlar/ergundiler/2016/09/02/gulen-geldi-mi; Ersin Ramoğlu (Güney) Did Fethullah Gülen come to Istanbul? September 04, 2016, http://www.sabah.com.tr/yazarlar/bolgeler/ramoglu/2016/09/04/fethullah-gulen-istanbula-geldi-mi Ergun Diler, Not Akıncı Base but a hangar[1] September 03, 2016. http://www.takvim.com.tr/yazarlar/ergundiler/2016/09/03/akinci-ussu-degil-hangar Ergün Diler Hangar air, September 07, 2016 http://www.takvim.com.tr/yazarlar/ergundiler/2016/09/07/hangar-havasi Ergün Diler, Hangar's door, September 09, 2016 http://www.takvim.com.tr/yazarlar/ergundiler/2016/09/09/hangarin-kapisi, Soner Yalçın. If only Mücahit Arslan would talk, September 23, 2016. http://www.sozcu.com.tr/2016/yazarlar/soner-yalcin/mucahit-arslan-konussa-keske-1406234/; Ergun Diler, Here is baylock[1]. October 06, 2016. http://www.takvim.com.tr/ergundiler/2016/10/06/iste-baylock; Ergün Diler. Bay Lock story… October 25, 2016. http://www.takvim.com.tr/ergundiler/2016/10/25/bay-lock-story; Ergün Diler Hangar brotherhood. October 27, 2016. http://www.takvim.com.tr/ergundiler/2016/10/27/hangar-kardesligi; Ergün Diler. Strange relations!… November 18, 2016. http://www.takvim.com.tr/ergundiler/2016/11/18/garip-iliskiler; Ergün Diler You Scratch My Back and I Will Scratch Yours. December 31, 2016 http://www.takvim.com.tr/ergundiler/2016/12/31/al-gulum-ver-gulum

[signature]        #

Hergüner Bilgen Özeke

12. Due to the ongoing perception operation, Borajet's investments that were still being carried out with Turkish Airlines and would have been developed were cancelled by Turkish Airlines for such baseless articles. Moreover, banks were uncomfortable with these articles and they were reluctant to give out loans. The client had to transfer resources to Borajet from his own pocket and in a continuously increasing manner in order to prevent the losses that Borajet suffered from due to these news articles during the same period.

13. The Client who could no longer stand against this smear and perception campaign, decided to transfer the companies so that his employees and his investment are not damaged any further. Ata Invest started the studies in this regard.

14. However, Borajet's chairman of the board of directors at the time and suspect Fatih Akol left this contract with Ata Invest aside and even though there were different companies and individuals interested in purchasing Borajet during that period, he took advantage of the Client being uninformed about this subject matter and he has underlined the relations of SBK Holding A.Ş. (**"SBK Holding** Turkey") which is one of the suspects herein, with the Ministry of Transportation in particular and indicated that the Ministry would have preferred this buyer before he stated that they were interested in Borajet and started to advise the Client for the transfer of shares to SBK Holding Turkey. [**APPENDIX 5- Fatih Akol's E-mails to the Client For the Transfer to SBK Holding Turkey**]

15. Subsequently, Fatih Akol carried out all negotiations related to the contract, and a Share Transfer and Profit-Sharing Contract was signed by and between Bugaraj Elektronik Ticaret ve Bilişim Hizmetleri A.Ş. (**"Bugaraj"**) which is a subsidiary of SBK Holding Turkey and our Client through a representative authorized by our Client in order to transfer all shares of Bora Jet, Bora Jet Maintenance and Aydın Jet to Bugaraj on December 29, 2016. (**"Share Transfer Contract"**) [APPENDIX 6- Share Transfer Contract]

16. Share Transfer Contract is not a classic share transfer contract. **Shares were transferred free of charge and company's debts were allocated between the parties.** Within the scope of the Share Transfer Contract, Client agreed to pay the bank loans taken out by Borajet and some of the leasing debts that are owed by Borajet and the transferee Bugaraj has undertaken the debts owed to the market. Moreover, it was agreed that 25% of the net profit that will be generated if Bugaraj transferred the shares of the companies after it has taken these over to 3rd parties would be paid to the Client within the scope of the Share Transfer Contract. **However, Bugaraj and Sezgin Baran Korkmaz created a false perception during this process by ensuring that the news articles which indicated that Borajet was sold for USD 260,000,000 were published in a systematic manner. It was understood at a later date that the suspects tried to create a victim image for the subsequent attacks that they would launch against the Client with these news articles.** [APPENDIX 7 – Relevant News Articles]

**17.** Furthermore, our Client established a lien on the immovable property located in the city of Istanbul, district of Fatih, Molla Feneri Mah. Nuru Osmaniye Mevkii, Section 24, Block 294, Parcel 15 which belonged to him on February 01, 2017 in favor of Bugaraj for an amount of TRY 220,000,000 (equivalent to USD 50,000,000) as a guarantee for his debts and obligations within the framework of the Share Transfer Contract. [**APPENDIX 8 – Mortgage Deed**]

**18.** The trap that was set up by the organization against our Client was understood after the Share Transfer Contract was signed. Within the framework of the Share Transfer Contract, it was agreed to give the Client a payment term of one year so that the Client could pay off the debts owed to the banks but Sezgin Baran Korkmaz who is one of the suspects had met with certain banks such as Akbank T.A.Ş., Denizbank T.A.Ş., Türk Ekonomi Bankası A.Ş., Odea Bank A.Ş., Garanti Bankası A.Ş. where Borajet had taken out a loan and our Client had a personal guarantee and caused them to issue account [break-off] warning letters without any reason.

5

[signature]          [signature]

Hergüner Bilgen Özeke

19. Due to these attempts made by Sezgin Baran Korkmaz, Odea Bank A.Ş. sent a warning letter to Borajet and to the Client in his capacity as the joint guarantor on February 28, 2017 and requested the payment of all loans which have/have not become due within 1 day and asked the payment of the loan debt in the amount of TRY 21,070,603.45. Even though the client asked 1 week to make the payment, this period was not granted. Following this, Odea Bank A.Ş. assigned the entire loan debt subject to the warning letter mentioned above to Mega Varlık Yönetim A.Ş. which has an organic link with Bugaraj and Bugaraj's final main shareholder during the transfer period, SBK Holding Turkey , with a contract signed on March 06, 2017. **This is an extraordinary situation for a loan that is still being paid and that has not gone into default. Odea Bank had firstly broken off a loan that was already being paid and then transferred it to an asset management company for a smaller sum instead of collecting the payment from Borajet which is the principal debtor. The asset management company in question requested and collected the receivables from the Client who is the guarantor rather than the principal debtor Borajet.** As a result of this assignment, Mega Varlık Yönetim A.Ş. initiated an enforcement proceeding without a judgment within the scope of the file before Istanbul 22nd Enforcement Office numbered 2017/6669 C. and levied the Client's assets in Turkey. Within the scope of this proceeding, the Client had to pay TRY 23,161,907.94 which was significantly higher than the actual debt on March 10, 2017 as the debt owed within the context of the file and attachment decisions could only be released after a sum of TRY 2,000,000 in excess of the actual debt was paid off like this.

20. 3 months prior to the transfer share, Kamil Ekim Alptekin was appointed to Mega Varlık Yönetim A.Ş. as a member of the board of director and after the debts on the file were collected, he resigned from his position at the board of directors on April 17, 2017. **[APPENDIX 9 – Relevant Trade Registry Records]**

21. The Client who was put in a difficult situation with the break-off warning letters issued by the bank, had to establish a lien on various real estate properties that he owns from Turkey Garanti Bankası A.Ş. ("Garanti Bank") in order to pay off his loan debts, and he had taken out a total loan of approximately USD 20,000,000 and closed off all bank loans owed by Borajet in Turkey. As of today, total sum of loan debts that were paid off is equivalent to TRY 67,216,407.35 + USD 1,489,819.67. Moreover, as one of the prerequisites of the loan allocation established by Garanti Bank within the scope of this loan taken out from Garanti Bank, was paying off all leasing debts owed to the bank, Client had to pay off all leasing debts that have and have not become due in the amount of TRY 487,607. Additionally, Bugaraj failed to pay various debts owed to the suppliers of Borajet that it was obliged to pay within the scope of the Share Transfer Contract. For this reason and as some of the letters of guarantee and external guarantees were converted into cash, the Client who had acted as a personal guarantor within the scope of this guarantee and these letters of guarantee, had to make a payment of TRY 12,500,000 approximately in favor of Borajet as of the date of this petition even though he was not obliged to pay these within the scope of the Share Transfer Contract*. **[APPENDIX 10 – Warning Letters and Table and Documents Regarding the Debts that were paid off] [APPENDIX 11 – Documents Showing Leasing Debts that were Paid Off]**

**22.** As it may be understood from the timeline of the events, it is obvious that the **suspects Kamil Ekim Alptekin, Sezgin Baran Korkmaz and companies that he owns including SBK Holding Turkey, Bugaraj and Mega Varlık Yönetim A.Ş. which have an organic link with these were affiliated and they acted together in an organized manner with the aim to cause damage to the Client and to confiscate his assets through unlawful means depicting an image of legality.** The links between the parties to the incident are discussed in detail below in section B.

23. Subsequent to these events, an unjust action for debt was filed by the company Bugaraj against the Client on March 13, 2017 with the file numbered 2017/242 C. before Istanbul 3rd Commercial Court of First Instance for the collection of TRY 253,305,035 from the Client. Even though there is a lien established by the Client, this lawsuit also requested a cautionary attachment to be imposed on the immovable properties of our Client in a repetitive manner in order to obtain an unfair advantage over the Client's assets. However, these claims brought forward by Bugaraj were

6

[signature]          [signature]

Hergüner Bilgen Özeke

rejected both by Istanbul 3rd Commercial Court of First Instance and by Istanbul Regional Court of Justice 12th Legal Chamber. As they were directly connected with the complaint, the duplicate petition as well as the list of evidences that we submitted with the petition for the lawsuit in this case are provided for the consideration of the Honorable Public Prosecutor's Office. **[APPENDIX 12 – Lawsuit, Duplicate and Evidence Petitions]**

**24.** Due to the rejection of the request for a cautionary attachment judgment in the action for debt mentioned in the preceding paragraph, the company named Bugaraj could not fulfill its objective after the first attempt therefore they aimed to put our Client under pressure through a criminal trial this time, to obtain an unfair advantage and to seize his assets and with a petition for complaint dated May 05, 2017, they requested a public action to be filed against the Client for various crimes including aggravated fraud, tax evasion, falsification of commercial books and endangering the safety of the traffic. This investigation was initiated with the file prepared by Istanbul Chief Public Prosecutor's Office numbered 2017/68314. Afterwards, Bugaraj continued to make up offenses with the petitions that they submitted in this investigation file and they claimed that there are rumors which revealed that the Client was affiliated with FETO, he had designed By Lock himself, he was aware of the treacherous coup d'etat attempt that took place on July 15th, he financed the terrorist organization named FETO and he played an active role in the organization and that he was a CIA agent. The news articles submitted with regards to these claims were actually published upon the request of Kamil Ekim Alptekin and/or other Suspects.

25. As it may be seen above, suspects acted in unity and in a coordinated manner and they created offenses which are contrary to the truth with baseless newspaper articles that they had published and fictionalized, and immediately afterwards, they take legal action to abuse the rights granted to them. So-called evidences which are used as a basis for their application are untrue news articles that were published upon their request and that they had fictionalized. The legal means are not the only way that the suspects used in order to obtain an unfair advantage by committing a crime. In addition to the foregoing and as these are explained in more detail within the remaining sections of our petition, they also use threat, blackmail and violence. In short, suspects have used all kinds of unlawful methods to reach their aims in a "legitimate" (!!!) manner. That aim is to obtain an unfair advantage.

26. Bugaraj did not only take these steps against the Client but they have also submitted a petition to the Investigation File on July 06, 2017 (this time shortly after the decision to reject the cautionary attachment judgement was approved by the Regional Court of Justice) and they requested an investigation to be started against the Client as well as Fatih Akol who is one of the suspects and a former member of the board of directors of Borajet, and other members of the board of directors including Zahide Üner, Nur Gezeroğlu and Samir Bayraktar with the claims regarding aggravated fraud, tax evasion, falsification of commercial books and endangering traffic safety along with membership/support for FETO and carrying out political and military espionage activities by establishing a structure similar to FETO and they requested the confiscation of the immovable properties, rights and receivables of the suspects. When this request was rejected, they submitted another petition dated July 11, 2017 where they requested the companies, foundations and bank accounts where the Client is a shareholder and/or executive to be determined with the investigation file numbered 2017/68314, to have their accounts for the past 10 years to be prepared in a detailed list and their accounts to be blocked as a precaution.

27. Within the scope of the relevant investigation, a bill of indictment was prepared against our Client in an unjust manner with the suspicion of fraud, our statements with regards to the unjust character of the bill of indictment were submitted to the High Criminal Court that reviewed the bill of indictment. [**APPENDIX 13 – Statements Regarding the Unjust Character of the Bill of Indictment**]. The file was segregated with regards to the baseless FETO claims which is the most serious accusation in Turkey under current circumstances and the investigation is still pending a decision before Istanbul Chief Public Prosecutor's Office Terrorism Bureau with the number 2017/135059. However, on the contrary, news articles had been published where it was stated that the suspect Sezgin Baran Korkmaz was actually a member of FETO. The excerpt from the article written by one of the authors of Hürriyet Newspaper, Yalçın Bayer, and published on November 16, 2017 is provided below for the consideration of the honorable Prosecutor's Office:

7

[signature]                    [signature]

Hergüner Bilgen Özeke

"It is indicated that the negotiations took place between Flynn and Korkmaz at New York Peninsula Hotel, and behind these developments, 'Sezgin Baran Korkmaz was shown as an enemy of FETO through the management of perceptions and he brought FETO's funds in the United States (showing them as if they were American capital) to Turkey and he was assigned to purchase the companies which were confiscated and which were faced with difficulties'.".

This news article is submitted for the consideration of your Honorable Office in full within the attachment. [**APPENDIX 14- Relevant Article**]

**28.** In the same manner, according to an article published via online sources, the individual named Bereket Öner who is the son-in-law of Former Chairman of Ankara Chamber of Commerce Sinan Aygün filed a complaint against Sezgin Baran Korkmaz within the scope of the investigation of Istanbul Chief Public Prosecutor's Office numbered <u>2017/162009</u> with the claim that he is a member of FETO. The complaint petition in question which is comprised of two pages was published online through various news websites. Within the complaint petition, Bereket Öner briefly declared and claimed that: Sezgin Baran Korkmaz introduced him to an individual of Armenian origin named Levon, they went to the United States of America together a couple of times, during one of these visits, Sezgin Baran Korkmaz had said to him, "you stay at the hotel, we will go to Pennsylvania with Levon to visit the preacher", this visit was after the coup d'etat attempt that took place on July 15th, Sezgin Baran Korkmaz had returned together with Levon on the next day, that certain people at FETO's palace and who were with the leader of FETO told them to buy an airline company in Turkey. We hereby request the summon of the investigation file that was opened in relation to the complaint petition in question which claimed that Sezgin Baran Korkmaz is a member of FETO and where location, time, people etc. and other objective elements were indicated. <u>As a result of this, it will be understood whether the conspiracy planned against the Client is one of the endless conspiracies planned by FETO.</u>

**29. WE HEREBY REQUEST OUR CLAIMS AND DEFENSES WITHIN THE SCOPE OF THE ACTION FOR DEBT MENTIONED ABOVE AND THE CRIMINAL CASE TO BE REVIEWED BY THE HONORABLE PROSECUTOR'S OFFICE. THE EXAMINATION OF THE CONTENTS OF THE RELEVANT FILES ARE VITAL TO UNDERSTAND WHAT KIND OF A PLOT WAS PLANNED AGAINST THE CLIENT AND THE PARTICULARS OF THIS INVESTIGATION.**

**30. <u>EVEN THOUGH THE CLIENT PERFORMED HIS OBLIGATIONS ARISING FROM THE SHARE TRANSFER CONTRACT IN GOOD FAITH, A FICTIONAL SCENARIO WAS CREATED AND CLIENT WAS ATTACKED BOTH PERSONALLY AND FINANCIALLY THROUGH HIS ASSETS. THE CLIENT WHO WAS SUBJECT TO ACCUSATIONS FOR THE CRIMES THAT HE DID NOT COMMIT BOTH LEGALLY AND VIA THE PRESS, WAS ACTUALLY THE PARTY WHO WAS DECEIVED AND THE ACTIONS THAT CONSTITUTE AGGRAVATED FRAUD ARE STILL ONGOING.</u>**

**B- FACTS WHICH SHOW THAT SOME OF THE SUSPECTS ACTED IN AN ORGANIZED MANNER**

31. Even though the lawsuits filed by Bugaraj and the investigations started seem like a mere exercise of their rights at first glance, they are actually actions that aim to obtain an unfair advantage through baseless claims, to damage the Client's reputation and to confiscate his assets in the background and they constitute a crime and an abuse of the rights. The Client was trapped in a malicious organization's game and within this scope, there are attempts to seize his attempts in an unfair manner and to make him pay unlawful sums. **THE LAWSUITS FILED AND THE INVESTIGATIONS OPENED ARE THE TACTICS USED BY THIS ORGANIZATION.**

**<u>The background and the details of these actions are provided for the consideration of your Honorable Prosecution Office below in more detail:</u>**

8

[signature]                    [signature]

Hergüner Bilgen Özeke

32. The only shareholder of Bugaraj which has taken over all of Client's shares at Borajet is Bukombin Bilişim ve Teknoloji Anonim Şirketi ("**Bukombin**"). Bukombin was founded by SBK Holding Turkey in 2015. The only member of the board of directors of Bukombin during its foundation and when the shares were transferred to Bugaraj on December 29, 2016 was SBK Holding Turkey. However, as it may be understood from the trade registry records, a share transfer had been made and the only shareholder as of May 26, 2017 was Kamil Feridun Özkaraman. Kamil Feridun Özkaraman was also appointed as the chairman of the board of directors.

33. SBK Holding was founded in Istanbul, Turkey on March 08, 2013 with a capital of TRY 10,000,000 and its only and founder shareholder as well as its only board of directors' member is Sezgin Baran Korkmaz. Sezgin Baran Korkmaz is also the signatory of the Share Transfer Agreement on behalf of Bugaraj as its Guarantor.

34. The articles published in the press clearly indicate that the definitive owner of Bugaraj during the transfer of the shares was SBK Holding and its field of activity in Turkey is **"purchasing companies that have declared bankruptcy and are subject to enforcement proceedings, that cannot carry out any production activities or pay the salaries of their employees and that are in crisis"**. We hereby submit the sections in the article in question and that are included on the website of SBK Holding Turkey which are based on the statements of Sezgin Baran Korkmaz below for the consideration of the Honorable Prosecution Office:

> *"As it was stated by Korkmaz, these companies that are bankrupt or are on the verge of bankruptcy are purchased for a 'very low price' and their debts to the banks are paid off. The salaries are paid to the employees and they are brought to a status where they can start production again. Following this, they are sold as an active company. SBK Holding Executive Board Chairman Sezgin Baran Korkmaz stated that they continued their path by purchasing bankrupt companies with American investment funds afterwards in this business which they started in 1988 as a domestic company. Korkmaz also explained that they reached an agreement with a British investment fund for the first time the other night, and that they are planning to invest in those companies which are in crisis either by purchasing these companies or by becoming a major shareholder. Sezgin Baran Korkmaz and Ana Cukic Armstrong who is the CEO of the British fund AIM that he collaborates with, came together with the members of the press in Istanbul during a conversation meeting."[3] [APPENDIX 15]*

> *"With the successful projects that it develops and through its result-oriented approach and innovative platform, it invests in those companies that conduct business in Turkey, that cannot achieve financial growth with their own equities even though they add value to the society and to the economy and it ensures that these companies become leaders in their own industries."[4] [APPENDIX 16]*

35. Even though SBK Holding's field of activity is indicated as it is specified above, the exact opposite has been realized with regards to the companies which have been transferred, companies were caused to lose value, debts owed to the market were not paid off and employees were dismissed.

36. In the same manner, we present the video records of the interviews and speeches given by SBK Holding Turkey's executive board chairperson Sezgin Baran Korkmaz in this regard, for the consideration of your Honorable Prosecution Office without meaning that we accept the claims against the Client. **[APPENDIX 17 – Video Records Containing Sezgin Baran Korkmaz's Statements Regarding SBK Holding Turkey's Field of Activity]**

37. The activity described as "Distressed Asset Management" by Sezgin Baran Korkmaz within the relevant videos is claimed to be financed by Mormons. Again in these videos, Sezgin Baran Korkmaz states that the name of the Mormon member is Jacob Ortell Kingson.

---

[3] Article Regarding the Purchase of Companies that Declare Bankruptcy by SBK Holding Turkey http://www.hurriyet.com.tr/ingiliz-fonu-yanina-aldi-fabrika-avina-cikti-28597180
[4] http://www.sbkholding.com.tr/tr-TR/sbk_holding/1/19

[signature]                    [signature]

Hergüner Bilgen Özeke

38. On the other hand, it must be noted that there is another company named SBK Holdings USA, Inc. ("**SBK Holding USA**") that is located in California behind SBK Holding Turkey. This company was founded on December 06, 2013 and its shareholders include Levon Termendzhyan, Edgar Sargsyan and George Termendzhyan. The trade registry records in this regard and the article published within the framework of Sezgin Baran Korkmaz's interview with Forbes magazine are annexed herein for your consideration. [**APPENDIX 18 – Relevant Trade Registry Record and Forbes Magazine Author].** We also submit information and articles related to the criminal charges about some of the individuals mentioned above for the consideration of your Honorable Prosecution Office. [**APPENDIX 19 – Evidences Regarding Criminal Charges]** It must be noted within this framework that the lawyer named Mark Gregos representing Levon Termendzyan who is of Armenian origin in various lawsuits and investigations carried out in the USA about him also represented the terrorist who assassinated deceased Consul General Orhan Arıkan during an attack carried out by ASALA organization in Los Angeles and filed lawsuits against Turkey due to 1915 Armenian incidents in the USA. **Taking into account that some of the suspects are of Armenian origin and that they have important connections within the Armenian lobby, it is understood that one of the most tragic aspects of the situation that the Client found himself in are the efforts to hit a blow to the stance taken by the Client against the Armenian genocide claims which we explained in detail above under paragraph numbered 5.**

39. Moreover, we would like to highlight that it was learned Levon Termendzhyan changed his name to Lev Aslan Dermen in the United States of America and there are rumors that he attempted to become a Turkish citizen. You may find a document related to the name change in the United States of America annexed for the consideration of your Honorable Prosecution Office. There are also rumors that this change was made to avoid a crime that was committed by him within the United States of America. [**APPENDIX 20 – Name Change Document]**

40. The information available on SBK Holding Turkey's website in the past also indicate that Levon Termendzhyan, Jacob Ortell Kingston and Sezgin Baran Korkmaz who are also the shareholders of the company with the same tradename and that is located abroad, are the members of the board of directors of SBK Holding USA.

41. Jacob Ortell Kingson is also the founding partner of Mega Varlık Yönetim A.Ş. that was established in Turkey. [**APPENDIX 21 – Relevant Trade Registry Gazette copies]**

42. In the videos mentioned in paragraph 37, Sezgin Baran Korkmaz indicates that Ekim Alptekin stood behind him while he carried out these activities and refers to him as "Brother Ekim".

43. **It can be seen here that while SBK Holding Turkey purchases those companies that are bankrupt to "improve" them, it actually leaves them in a worse state and on other hand, Mega Varlık Yönetim A.Ş. which has an organic link with SBK Holding Turkey takes over the bank loans of the same companies and acquires an interest as a result of this.**

44. With regards to Mega Varlık Yönetim A.Ş., Soner Yalçın stated the following in his article dated March 31, 2017 published in Sözcü Newspaper and titled "Masquerade":

> *"These companies are called vultures in the west; they constitute a legal version of the mafia. They take over the non-performing loans of financial institutions and they start chasing the debtors. Our vulture lastly purchased Bodrum Kervansaray Hotel. Mega Varlık's actual owner is a US national named Jacob Ortel Kingston. Isn't it strange for the credit rating institution JCR which has decreased Turkey's score to have increased this vulture company's score to A in such a short period of time? No, it is not. It is Global Solidarity!"*

10

[signature]                    [signature]

Hergüner Bilgen Özeke

45. On the other hand, Kamil Feridun Özkahraman who is also one of the suspects is assigned to senior positions in all of the investments made by SBK Holding Turkey and as it will be explained in section C below, he plays an effective role in their decision-making mechanisms.

## C- THIS ORGANIZATION USED THE SAME PLOT OR A SIMILAR PLOT IN OTHER CASES – KERVANSARAY HOTEL EXAMPLE

**46.** Kamil Feridun Özkahraman who is also one of the suspects, is an executive and shareholder of SBK Holding Turkey's subsidiaries and affiliated partnerships and he has a close relationship with Sezgin Baran Korkmaz.

**47. We hereby submit the information related to Kamil Feridun Özkaraman's place within the organization for the consideration of your Honorable Prosecution Office:**

**(i) Borajet Havacılık Taşımacılık Uçak Bakım Onarım ve Ticaret Anonim Şirketi:** Subsequent to the transfer of the Client's shares, Kamil Feridun Özkaraman was elected as a member of the board of directors for three years with the Board of Directors Resolution dated December 30, 2016 and then he was authorized to represent and to bind the company. Following this, he was appointed as the company's general manager with the board of directors' resolution dated March 30, 2017. [**APPENDIX 22 – Board of Directors Resolutions**]

(ii) **Bukombin Bilişim ve Teknoloji Anonim Şirketi:** This company is the only shareholder of Bugaraj. The only shareholder of this company is its founding partner SBK Holding Turkey. Company was founded in 2015. During its foundation and while the shares were being transferred, the member of the board of directors is SBK Holding Turkey. However, as it may be understood from the trade registry records, a share transfer had been made and the only shareholder as of May 26, 2017 was Kamil Feridun Özkaraman. Kamil Feridun Özkaraman was also appointed as the chairman of the board of directors. [**APPENDIX 23 – Relevant Trade Registry Records**]

(iii) Mega Varlık Yönetim A.Ş.: Even though we did not determine that Kamil Feridun Özkaraman holds a direct position as the member of the board of directors or as a shareholder in this company within the registry records, he has carried out several transactions as the representative of this company's founding partner Jacob Ortell Kingston. [**APPENDIX 24 – Document and Powers of Attorney Showing that Kamil Feridun Özkaraman is Jacob Ortell Kingston's Authorized Representative**]

**(iv) Noil Yatırım İnşaat Turizm Sanayi ve Ticaret A.Ş.:** This company was founded by Levon Termendzhyan, Friedrich Grosz Roell and Mehmet Özbey on October 23, 2012. The first chairman of the company's Executive Board is Levon Termendzhyan and its General Manager is Sezgin Baran Korkmaz. Afterwards, Kamil Feridun Özkaraman was appointed as the General Manager of the company authorized to represent and bind the company in the broadest possible manner with the Board of Directors' Resolution dated December 28, 2012 and numbered 2012/5 and it was resolved for the company to resume its activities as an incorporated company with a single shareholder as of January 28, 2013 pursuant to the Board of Directors' Resolution dated January 28, 2013 and numbered 2013/2 and the same resolution also indicated that the only shareholder was Kamil Feridun Özkaraman.[5] [**APPENDIX 25 – Relevant Trade Registry Records**]

---

[5] According to the official records of the State Department of Utah in the USA that are open to public access, Washakie Renewable Energy LLC was established on 06/03/2006. Company's General Manager (CEO) is Jacob Ortell Kingston. According to the official records of the State Department of California in the USA that are open to public access, Noil Energy Group, Inc. was established on 06/20/2007. Its General Manager is Daniel McDyre, Company Secretary is George Termendzhyan, Finance Manager is Anne Termendzhyan and Company Director is Levon Termendhzyan. According to the official records of the State Department of Utah in the USA that are open to public access, it is possible to access the company records of Washakie Renewable Energy LLC at the following website (Access date: 09/11/2017): https://secure.utah.gov.bes.details.html?entity=6138397-0160) https://www.epa.gov/enforcement/washakie-renewable-energy-llc-stipulation-settlement-and-order-notice-violation-and) According to the official records of the State Department of California in the USA that are open to public access

[signature]                    [signature]

Hergüner Bilgen Özeke

(v) **Kervansaray Yatırım Holding A.Ş.**: Kamil Feridun Özkaraman accepted to be elected to serve on the company's board of directors with the deed of consent dated July 21, 2015 for this company as well and this matter was announced at the General Assembly meeting that was held on August 28, 2015 and a resolution was adopted accordingly. He submitted his letter of resignation on June 02, 2017. [**APPENDIX 26 – Relevant Trade Registry Records]**

48. The methods including the trap set up for Borajet and hence the Client who transferred his shares, and the actions subject to the crimes that were committed, were also used for other companies by the company officials in question detailed above and with regards to whom a complaint has been filed. In fact, Kervansaray Yatırım Holding A.Ş. ("**Kervansaray**") was remembered with certain irregularities during the period when Kamil Feridun Özkaraman served as a member of the board of directors. Firstly, Kervansaray Bodrum Hotel was leased to SBK Holding Turkey for 10 years on August 04, 2015 and as a result of this lease contract, SBK Holding Turkey had a lease annotation for 10 years processed for Kervansaray Bodrum Hotel which was worth TRY 27,960,000 [**APPENDIX 27 – Kervansaray Yatırım Holding A.Ş. Public Disclosure Platform statement dated December 02, 2016]**

49. In the special status statement that was made by Kervansaray on March 09, 2016, it was announced that the receivables of one of the company's creditor banks named Odea Bank A.Ş. from the company in the amount of TRY 29,505,037 and EUR 1,104,262 were transferred/assigned to Mega Varlık Yönetim A.Ş. and that Mega Varlık Yönetim A.Ş. started two separate proceedings without judgment with regards to the aforementioned receivables. In the statement dated December 07, 2016, it was declared that Kervansaray Bodrum Hotel which was pledged for the aforementioned receivable was put on the market for sale for a price of TRY 94,239,951 upon the request of Mega Varlık Yönetim A.Ş. **THIS INCIDENT ALSO HAPPENED AT BORAJET WITH THE SAME ACTORS.** [**APPENDIX 28 - Kervansaray Yatırım Holding A.Ş. Public Disclosure Platform statements dated March 09, 2016 and December 07, 2016]**

**We would like to underline that the same structure formed by Odea Bank A.Ş. and Mega Varlık Yönetim A.Ş. against the Client were also present in this incident and submit this point for the consideration of the Honorable Prosecution Office.**

50. As the process continued, Kervansaray Bodrum Hotel was sold to Mega Varlık Yönetim A.Ş. for the price of TRY 47,150,095.77 on March 21, 2017 via a tender. However, as it was mentioned in the Capital Market Board's bulletin dated March 23, 2017 and numbered 2017/12, a lawsuit was filed for the annulment of the tender as per Article 134 of the Enforcement and Bankruptcy Law on March 27, 2017 before Bodrum Enforcement Court as per the decision adopted by the Board's Decision-Making Organ dated March 23, 2017 and numbered 13/451:

> "*Pursuant to our Board's application dated 03/20/2017 and **in order to prevent the Company's assets to be reduced within the scope of Article 21 of the Capital Market Law,** a lawsuit has been filed before Istanbul 7th Civil Court of Peace with the file numbered E.2017/264 and **with the requests to render the lease contract dated 08/04/2015 with regards to the leasing of the hotel in question that was signed by and between the parties invalid as the contract is fictitious** and with an injunction request to stop the sale of Kervansaray Bodrum Hotel which belongs to the Company that will be realized on 03/21/2017 by Bodrum 2nd Enforcement Office within the framework of articles 92/1-(a) and (b) of the Capital Market Law and Article 389 and subsequent articles of Code of Civil Procedures numbered 6100.*
>
> *With the decision adopted by the aforementioned Court dated 03/21/2017 and numbered E.2017/264, it was decreed to reject our Board's interim injunction request.*
>
> *With the special status statement made by the Company on 03/22/2017, it was declared to the public that Kervansaray Bodrum Hotel was*

---

it is possible to access the company records related to Noil Energy Group LLC from the following website address (Access date 09/11/2017): https://businesssearch.sos.ca.gov/CBS/Detail)

[signature]                    [signature]

Hergüner Bilgen Özeke

*sold to Mega Varlık Yönetim A.Ş. for the price of TRY 47,150,975.77 via a tender that took place on 03/21/2017.*

*It was decided by our Board **to instruct the Company for taking an immediate action for the annulment of the sale in question, to send a notification to the Banking Regulation and Supervision Agency for the inspection of the business activities and transactions of Mega Varlık Yönetim A.Ş.,** to inform the public that the Company's partner can seek legal remedies in order to exercise their rights."*

**[APPENDIX 29 - Kervansaray Yatırım Holding A.Ş. Public Disclosure Platform statement dated March 23, 2017 and Capital Market Board's Bulletin dated March 23, 2017 and numbered 2017/12]**

**51.** On the other hand, the minutes of the 2015 and 2016 Ordinary General Assembly Meeting of Kervansaray Yatırım A.Ş. that was held on September 26, 2017 indicates:

*"Moreover, Zübeyir Öztopal asked for the floor and said that 'even though the company is constantly reporting a loss, major shareholders did not repay the sums that they have taken from the company and in the same manner, loans taken out from the banks have been repaid with high interest rates. We want information about these and we **also want an explanation with regards to the loan taken from SBK Holding with a high interest rate'."***

*Zübeyir Öztopal took the floor and said, "**It was indicated that the hotel provided to SBK Holding against a debt would be returned, we did not receive any information in this regard and we still expect an explanation about this".** Zuhal Tılhaslı who asked for the floor from the meeting chairman on behalf of the company said, "Our negotiations with Mega Varlık with regards to Bodrum Hotel are still ongoing, we hope that they will be concluded soon and when they are concluded, a statement will be published on the Public Disclosure Platform as required".*

**52.** The most striking points within this scope are the criminal complaints filed against Borajet's current owner Kamil Feridun Özkaraman and included within various bulletins published by the Capital Market Board (**"CMB"**). The financial crimes allegedly committed by Kamil Feridun Özkaraman as claimed by CMB and some of which are linked with Mega Varlık Yönetim A.Ş. are as follows:

*"Even though the payments for existing receivables could not be collected, the **collection of the payment for the receivable** in the amount of TRY 4,794,292.87 arising from the financing provided to the related party **Komak Isı Yalıtım Sistemleri Sanayi ve Ticaret Ltd. Şti.** without obtaining anything in return was **waived on 04/19/2017 and as a result of this, the company suffered a loss of TRY 4,794,292.87"***

*"As the necessary objections were not raised against the default interest of 44.24% that was incurred on **TRY 7,348,336 and EUR 49,261 requested by Mega Varlık Yönetim A.Ş. in excess** and the debts in foreign currencies and TRY contrary to the loan agreement signed with Odea Bank A.Ş. within the scope of the file before Istanbul 10th Enforcement Office in accordance with the Enforcement and Bankruptcy Law numbered 2004, Company has undertaken an excess debt of TRY 26,949,109.88 included in the file before Istanbul 10th Enforcement Office in an unjust manner as of 03/21/2017"*

*"Untrue accounts were opened intentionally, records were falsified with accounting tricks and **fictitious invoices were issued** between affiliated partnerships Anteks Tekstil and Antalya College in order to present the accounting tricks as true transactions"* **[APPENDIX 30 – CMB Bulletins Regarding Criminal Complaints Filed Against Kamil Feridun Özkaraman]**

13

[signature]                                        [signature]

Hergüner Bilgen Özeke

53. Moreover, it must be noted that while the aforementioned company named Komak Isı Yalıtım Sistemleri Sanayi ve Ticaret Ltd. Şti. was founded by Sezgin Baran Korkmaz, it was transferred to Kamil Feridun Özkaraman through the transfer of shares. [**APPENDIX 31 – Relevant Trade Registry Gazettes**]

**54. Within this scope, it is obvious that Kamil Feridun Özkaraman colluded with Sezgin Baran Korkmaz and Jacob Ortell Kingston through various companies and as a result of these collusions, criminal complaints were filed against different companies.**

**55. When these offenses and the foregoing relationships are examined, while the Client actually transferred a group of airline companies free of charge, he has fulfilled all obligations related to the transfer, he did not carry out any fraudulent acts, it is obvious that an untrue perception was created about him, he was accused of baseless crimes, the Client was deceived and defrauded.**

**D- MATERIAL FACTS REGARDING THE THREAT OFFENSES**

**56. On the other hand, Sezgin Baran Korkmaz who is one of the suspects threatens our Client and his former employees constantly.**

**57.** In addition to the actions that we explained above, these organized criminal acts of the suspects including Bugaraj and Sezgin Baran Korkmaz who is its definitive owner during the share transfer period, continued in a sequence. In fact, they did not only cause unjust lawsuits to be filed against the Client but Sezgin Baran Korkmaz also sent threatening messages and carried out threatening acts against the Client and his employees simultaneously. Some of the examples of the threatening messages sent to the Client by Sezgin Baran Korkmaz are provided below for the consideration of your Honorable Prosecution Office:

| | | |
|---|---|---|
| *I will not let you get away with what you have put me through Mr. Ayaslı* | March 02, 2017 04:02:25 p.m. | +90 532 268 43 44 |
| *While I am dealing with your debts here, you are enjoying yourself. We will get even with you, fraud Ayaslı* | March 06, 2017 02:57:53 p.m. | +90 532 268 43 44 |
| *I will go to the tax office today and I will have them impose an attachment on your houses due to your tax debts* | March 07, 2017 10:50:41 p.m. | +90 532 268 43 44 |
| *I will wait until tomorrow and if it is not resolved until tomorrow, I will file a lawsuit for the balance sheet difference in the amount of 83 mil. US dollars and I will have an injunction imposed on all your assets.* | March 07, 2017 10:52:50 p.m. | +90 532 268 43 44 |
| *I will make a fool of you before the entire world* | March 09, 2017 11:25:18 a.m. | +90 532 268 43 44 |
| *So you say that we had our eyes on your properties, you are a dishonest person, who are you that we would have our eyes on your properties* | March 09, 2017 11:26:49 a.m. | +90 532 268 43 44 |
| *I will show your true colors to entire Turkey* | March 09, 2017 11:27:21 a.m. | +90 532 268 43 44 |
| *I will reveal all your donations to FETO [Fethullahist Terrorist Organization] one by one* | March 09, 2017 11:31:59 a.m. | +90 532 268 43 44 |
| *I give you my word of honor, I will get my revenge from you* | March 09, 2017 11:33:30 a.m. | +90 532 268 43 44 |

14

[signature]                    [signature]

Hergüner Bilgen Özeke

| | | |
|---|---|---|
| *I will make a fool of you in America* | March 09, 2017 11:33:52 a.m. | +90 532 268 43 44 |
| *I will get my revenge from you* | March 09, 2017 11:36:11 a.m. | +90 532 268 43 44 |
| *You disgraceful man, wasn't your company bankrupt?* | March 09, 2017 11:36:50 a.m. | +90 532 268 43 44 |
| *Did I bankrupt it?* | March 09, 2017 11:36:57 a.m. | +90 532 268 43 44 |
| *You remorseless, disgraceful man* | March 09, 2017 12:02:40 p.m. | +90 532 268 43 44 |
| *I suggest that you resolve this without making a fool of yourself any longer* | March 22, 2017 07:17:58 a.m. | +90 532 268 43 44 |
| *I will come to America soon and I will also file a lawsuit against you there and I will tell them that you defrauded me here* | March 22, 2017 07:19:32 a.m. | +90 532 268 43 44 |
| *Whoever defrauded me will pay for it* | March 22, 2017 07:23:54 a.m. | +90 532 268 43 44 |
| *Primarily Fatih and Zahide* | March 22, 2017 07:24:07 a.m. | +90 532 268 43 44 |
| *I give you one day; you can either come out with your honor and do what is necessary or you will be responsible for what comes next* | April 21, 2017 03:51:55 a.m. | +90 532 268 43 44 |
| *I will reveal you as a fraud Ayaslı, it will happen soon* | April 27, 2017 02:13:04 a.m. | +90 532 268 43 44 |
| *Be sure that even if you die, I will get it from your children* | April 27, 2017 02:14:45 a.m. | +90 532 268 43 44 |
| *Your lawyer daughter or your director son will pay for it* | April 27, 2017 02:15:23 a.m. | +90 532 268 43 44 |
| *I will come there soon, take it easy* | April 27, 2017 02:18:01 a.m. | +90 532 268 43 44 |
| *I will show your true colors to the entire world with the documents* | April 27, 2017 02:18:01 a.m. | +90 532 268 43 44 |
| *Let's see if you will have the audacity to come to Turkey* | April 27, 2017 02:18:50 a.m. | +90 532 268 43 44 |
| *That bitch named Zahide was your guarantor, now she is missing* | April 27, 2017 02:56:34 p.m. | +90 532 268 43 44 |
| *You and your wife will look for a hole to hide* | April 27, 2017 04:25:22 p.m. | +90 532 268 43 44 |
| *I will put you in prison* | April 28, 2017 03:50:28 p.m. | +90 532 268 43 44 |
| *I left my business and my only concern is to put the man who defrauded me to prison* | April 28, 2017 03:51:09 p.m. | +90 532 268 43 44 |
| *And that fraud named Zahide* | April 28, 2017 | +90 532 268 43 44 |

15

[signature]                                        [signature]

Hergüner Bilgen Özeke

| | 03:51:59 p.m. | |
|---|---|---|
| *I will go to Kayaköy and I will show them your true face this week (with documents* | April 28, 2017 04:55:49 p.m. | +90 532 268 43 44 |
| | | |
| *Ten foreign journalists called me and I told them to wait and that I would send them a translation of the file once a fraud lawsuit is filed* | May 08, 2017 01:00:30 p.m. | +90 532 268 43 44 |
| *It is only a matter of time* | May 08, 2017 01:00:34 p.m. | +90 532 268 43 44 |
| *I am having leaflets published to explain how I was defrauded, and I will hang these on the boards at METU. Now they will see how you were involved in tax evasion and fraud in addition to your scientist activities* | May 08, 2017 01:02:25 p.m. | +90 532 268 43 44 |
| *I will also send a letter and a document to the University where your daughter is to explain the situation* | May 08, 2017 01:03:14 p.m. | +90 532 268 43 44 |
| *When the enforcement officers go to the former general manager Kadir Peker's door, he will naturally speak as well* | May 08, 2017 05:14:06 p.m. | +90 532 268 43 44 |
| *Come back and solve my problem. I will help you get payback from those managers who defrauded you.* | May 08, 2017 05:22:59 p.m. | +90 532 268 43 44 |
| *I will get my revenge from you for defrauding me and until that time, I hope God does not take my life and I can get my revenge* | July 06, 2017 05:37:59 p.m. | +90 532 268 43 44 |

**58.** As you may see clearly from the foregoing messages, Client received clear threats and insulting messages from Sezgin Baran Korkmaz who is the definitive owner of Bugaraj for a long period of time.

**59. <u>Sezgin Baran Korkmaz did not only make threats via telephone and messages, but these threats were also translated into physical attacks.</u>** Sezgin Baran Korkmaz called the Client's office in Taksim, he made threats and insults moreover he threatened Borajet's former executive board member Zahide Üner and his employees including Client's lawyer Burhan Asaf Şafak, he used a foul language and made insults during the meetings. Some of the evidences in this regard are also submitted for the consideration of your Honorable Prosecution Office. [**APPENDIX 32 – Evidences Regarding Coercion and Threats as well as Insults Made by Sezgin Baran Korkmaz to the Client and His Employees**]

**60.** Moreover, Zahide Üner was attacked by the opposing party during a meeting that was held on March 18, 2017 within the scope of the disputes regarding the Share Transfer Contract with the participation of Fatih Akol, Kamil Ekim Alptekin, Kamil Feridun Özkaraman, Zahide Üner and Burhan Asaf Şafak. Sezgin Baran Korkmaz threw his tea cup and his water glass to Zahide Üner; he hit the table and broke the glass on the table and walked towards Zahide Üner in a threatening manner and said, "I will kill you *heavy swear* girl".

16

[signature]                                    [signature]

Hergüner Bilgen Özeke

**61.** It is also indicated in the messages sent to the Client that Sezgin Baran Korkmaz also coerced Borajet's former general manager and one of suspects, Kadir Peker, to act against the Client and to make up offenses. In fact, Kadir Peker also verified this. [**APPENDIX 33 – Evidences Showing Kadir Peker was Coerced to Act Against the Client**]

**62.** Apart from the foregoing, even though Sezgin Baran Korkmaz was not invited in any way, he went to the Client's real estate property in Kandilli with his wife and another woman on February 25, 2017. This was not enough for Korkmaz and he went to the same place again on July 30, 2017 and this time he could not get in because security was instructed with strict orders not to allow him inside. Following this, he told the security that he purchased the house and that he would move in within a couple of days.

### E. MATERIAL FACTS WITH REGARDS TO THE OFFENSES OF PERJURY AND ATTEMPT TO INFLUENCE A FAIR TRIAL

**63.** The suspect Sezgin Baran Korkmaz also coerced the witnesses who gave a statement as part of the Investigation carried out by Istanbul Chief Public Prosecutor's Office numbered 2017/68314. Sezgin Baran Korkmaz was at the courthouse on the day that the statements were given, and he ensured that a statement was given against the Client. Some witnesses, on the other hand, testified against the Client for their own interests. In fact, there had been rumors that Sezgin Baran Korkmaz also used violence against the suspect Fatih Akol through various means. Sezgin Baran Korkmaz also told this to the Client in the following message:

| *Mr. Fatih deserved what I did to him* | March 22, 2017 07:17:58 a.m. | +90 532 268 43 44 |
|---|---|---|

**64.** Within the scope of the Investigation File, Fatih Akol (Borajet's Former Board of Directors Chairman and General Manager), Tolga Üzümcü (Financial Affairs Manager), Mehmet Ceylan Topal (Bora Jet Maintenance's General Manager) and Olcay Özbay (Assistant General Manager at Borajet in charge of Maintenance Works) gave a statement. These individuals continued to work at Borajet even after the transfer of the shares. With the manipulation of and the management of the process by Fatih Akol, it was resolved to sell the companies transferred within the scope of the Share Transfer Contract to Bugaraj. Following this, negotiation process was personally led by Fatih Akol, company's financial tables were prepared by the Financial Affairs Manager Tolga Üzümcü and although these financial tables that were prepared were annexed to the Share Transfer Contract, these individuals testified as if the Client forced them to falsify the balance sheets. [**APPENDIX 34 – Correspondences Regarding the Management of the Process by Fatih Akol and Preparation of the Share Transfer Contract Annexes by Tolga Üzümcü**]

**65.** In the same manner, Zahide Üner whose witness statement was taken and who had subsequently become a defendant due to the accusations of Bugaraj also indicated in her statement that she gave during the same investigation that she was coerced as well. The suspect named Kamil Feridun Özkaraman also tried to pressure Zahide Üner about her statement. [**APPENDIX 35 – Statement text**] [**APPENDIX 36 – Message Indicating that Kamil Feridun Özkaraman Coerced Zahide Üner About Her Statement**]

**66.** Apart from the foregoing, examples of the news articles that were published against the Client upon the request of Sezgin Baran Korkmaz and that violate the confidentiality of the investigation and damage the Client's reputation by creating an image as if a ruling has been adopted against the Client and that he was found guilty even though this was not true, are attached herein for the consideration of your Honorable Prosecution Office. [**APPENDIX 37 – Other Examples of News Articles Published as Part of the Smear Campaign Against the Client**]

17

[signature]                    [signature]

Hergüner Bilgen Özeke

*"Borajet's boss Sezgin Baran Korkmaz provided information on Borajet's sales process and his plans for the future in a radio program at Numberone Turk that he participated. Korkmaz accused the previous management of keeping the company, which was already bankrupt, active by forging the documents and indicated, "They put everything that must have been added to the expenses in the revenues. They did this forgery not to lose their license in a company that had technically gone bankrupt in 2015-2016. Inspection companies determined the situation. We are getting ready to file a lawsuit.".* "[6]

*"Fraud lawsuit against the old boss*

*The management of Borajet which suspended its flights temporarily a while ago filed a criminal complaint against the company's former owner. SBK Holding's Executive Board Chairman Sezgin Baran Korkmaz said, "Borajet's former General Manager Kadir Peker, Yalçın Ayaslı and his wife Serpil Ayaslı included, everyone must have been tried".* "[7]

*SBK Holding's Executive Board Chairman Sezgin Baran Korkmaz said, "Borajet's former General Manager Kadir Peker, Yalçın Ayaslı and his wife Serpil Ayaslı included, everyone must have been tried".* "[8]

*"According to the report by Murat Palavar from Yeni Şafak Newspaper, the criminal complaint that was filed claimed that Borajet had been technically bankrupt. It was also indicated that the company's expenses were recorded as revenues in an unlawful manner."* [9]

**67.** In fact, some of the messages sent to the Client by Sezgin Baran Korkmaz and where he confessed that he smeared the Client and his family in the press and to their close circles are provided below:

| | | |
|---|---|---|
| *I will make a fool of you before the entire world* | March 09, 2017 11:25:18 a.m. | +90 532 268 43 44 |
| *I am showing the contract that you signed and the current status today to everyone I come across* | | |
| *I will go to Kayaköy and I will show them your true face this week (with documents* | April 28, 2017 04:55:49 p.m. | +90 532 268 43 44 |
| *I am having leaflets published to explain how I was defrauded, and I will hang these on the boards at METU. Now they will see how you were involved in tax evasion and fraud in addition to your scientist activities* | May 08, 2017 01:02:25 p.m. | +90 532 268 43 44 |
| *I will also send a letter and a document to the University where your daughter is to explain the situation* | May 08, 2017 01:03:14 p.m. | +90 532 268 43 44 |
| *Ten foreign journalists called me and I told them to wait and that I would send them a translation of the file once a fraud lawsuit is filed* | May 08, 2017 01:00:30 p.m. | +90 532 268 43 44 |

**68.** Moreover, according to the rumors that we heard, the suspect Sezgin Baran Korkmaz organized an event for the press together with the suspect Kamil Ekim Alptekin in July – August, 2017 at a waterfront mansion at the Istanbul Bosphorus owned by Mega Varlık Yönetim A.Ş. He acted as if the waterfront mansion belonged to him and he made misstatements to the members of the press where he claimed that the Client is affiliated with FETO and carried out illegal actions. This actions also constitute the offense of attempting to influence the fair trial

[6] http://www.turizmguncel.com/haber/borajet%27in-patronundan-eski-yonetime-sahtecilik-suclamasi-h31505.html
[7] http://www.yenisafak.com/ekonomi/eski-patrona-dolandiricilik-davasi-2652663 – http://uzmanpara.milliyet.com.tr/haber-detay/genel/eski-patrona-dolandiricilik-davasi/68298/
[8] https://www.haber.com/borajet-yonetimi- eski-patrona-dolandiricilik-9574451-haberi/
[9] http://www.kokpit.aero/borajet-yalcin-ayasli-dava – http://www.airlinehaber.com/borajet-yonetimieski-patrona-dolandiricilik-davasi-acti/

[signature]                                                      [signature]

Hergüner Bilgen Özeke

and he tried to mislead the public opinion through the members of the press.

## III.     OFFENSES BEING CHARGED

### 1- Aggravated Fraud (sub-paragraphs f-g-h of 1st paragraph of Article 158 of the Turkish Penal Code)

**69.** As per the 1st paragraph of Article 157 of the Turkish Penal Code numbered 5237 ("TCK") titled "Fraud", *'An individual who deceives someone through fraudulent acts and obtains an advantage for himself/herself or another person to the detriment of that person who is deceived or someone else will be sentenced to one to five years in prison and subject to an administrative fine up to five thousand days."*

**70**. The article in question is related to the offense of 'Aggravated Fraud'. As per Article 158 sub-paragraph (f), if the offense of Fraud "*is committed by using information systems, banks or credit institutions as a means"* then the Aggravated Fraud offense will be committed by *"taking advantage of the conveniences provided by press and media organs"* as per sub-paragraph (g).

**71.** In the same manner, sub-paragraph (h) of Article 158 indicates that an Aggravated Fraud offense will be committed if the offense of Fraud is committed *"during the business activities of the individuals who are merchants or company executives or acting on behalf of the company or within the scope of the activities of a cooperative by the executives of a cooperative".*

**72.** Within this scope, aggravated fraud was committed via multiple actions and by multiple individuals against the Client in a systematic manner and it is still being committed. Provided that these actions which were explained in more detail above and for which a complaint has been filed are still subject to our complaint and our rights arising from this complaint are reserved: - Borajet's value was deliberately reduced through the systematic fraudulent acts of the individuals for whom a complaint has been filed and through the perception operation initiated against the Client,

- As a result of this, Client was compelled to transfer Borajet for free,

- Shortly after the Share Transfer Contract, these individuals failed to comply with the terms and conditions that they acknowledged and they maliciously claimed that the balance sheet was forged,

- Following this, aforementioned individuals whose field of business is to purchase and develop bankrupt companies claimed that they had been deceived and they started to get an unfair advantage from the Client,

- Bugaraj essentially aimed to obtain a material benefit by creating a so-called commercial dispute with the Client and they aimed to compel the Client to pay the amount they wanted through racketeering therefore they made baseless claims about the Client, expanded the subject matter of the investigation with baseless claims that are not related to the commercial matter in dispute subject to the investigation and as a result of this, they created a negative image about the Client before the judicial authorities in a deceptive manner and they caused investigations to be opened and lawsuits to be filed against the Client,

- They made insulting accusations and threats against the Client, a scientist who spent years of his life to pursue the interests of Turkey, and they used a foul language in their accusations and threats,

- Similar threats were also made to the Client's employees and family members,

- They engaged in perjury to claim that the Client committed a crime,

19

[signature]                                    [signature]

Hergüner Bilgen Özeke

- They ensured that misleading/wrong news reports are published in the press regarding the Client to fabricate offenses and to damage his reputation.

- They organized meetings with various banks against the Client so that they would issue account closure notices for the Client's accounts without any justification and they tried to obtain an unfair advantage through enforcement threats,

- They ensured that Odea Bank's loan is closed, transferred it to Mega Varlık Yönetim A.Ş. and as a result of this, they obtain an unfair advantage from the Client.

- After the Share Transfer Contract was signed, some of the authorized representatives of Borajet changed sides due to threats etc. coercion and they fabricated evidences and gave statements against the Client and contrary to the facts, whereas some of these authorized representatives were found to have colluded with Sezgin Baran Korkmaz since the beginning, they committed perjury before the courts and they fabricated evidences and made statements contrary to the facts,

- The witnesses were coerced, and they were made to testify against the Client in order to mislead the judicial authorities to the detriment of the Client,

- As a result of these fraudulent acts, they ensured that Borajet, Aydın Jet and Borajet Bakım [Maintenance] companies were purchased for free and even though Client did not owe these debts, they collected payments from the Client by force and in a short period of time in order to increase the company's assets through unlawful means,

- Rather than ensuring that the companies generate a profit in line with the provisions of the Share Transfer Contract, they dismissed employees, they failed to pay the debts owed to the market, they did not take those measures which would ensure the airplanes fly as appropriate, they failed to carry out the maintenance works for the airplanes and they aimed to avoid the payment of 25% divided that is due to the Client in the event that the companies are transferred which is in violation of the Share Transfer Contract and as they took advantage of the means provided by press and media organs and they carried out the foregoing actions during the business activities of the individuals who are either merchants or company executives or those individuals who act on behalf of the company, these create two different forms of the offense of aggravated fraud. We hereby request a bill of indictment to be prepared for imposing the maximum sentence for the suspects to be determined by the Prosecutor's Office.

73. On the other hand, Borajet is planned to be sold according to the most recent rumors that we heard, and the news reports published in the press. This way, SBK Holding Turkey carries out its primary activity which is the purchase of bankrupt companies in Turkey and to derive a profit by selling these companies through the deception of the Client together with its subsidiaries and business partners. Moreover, it must be noted that Bugaraj which claimed that the Client is in debt with the lawsuit that was filed, tries to transfer Borajet to a third person within the scope of the Share Transfer Contract and to eliminate the divided that it must pay the Client. Within this scope, it is understood that the article incorporated in the Share Transfer Contract with regards to the payment of a dividend only aimed to mislead the Client and to manipulate the Client so that he would sign the Share Transfer Contract. Therefore, the offense of aggravated fraud was committed in a successive manner. We hereby request these points to be considered while preparing the bill of indictment.

**2- Perjury (Article 272 of the Turkish Penal Code)**

**74.** Article 272 of the Turkish Penal Code stipulates, "*Those individuals who give a witness statement that is contrary to the facts before an individual or a board authorized to hear the witness within the scope of an investigation initiated due to an unlawful action will be sentenced to four months to one year in prison.*".

**75.** Within the scope of the investigation that was initiated by Istanbul Chief Public Prosecutor's Office, Bugaraj made false statements contrary to the facts against the Client and they committed

20

[signature]                                          [signature]

Hergüner Bilgen Özeke

perjury. We hereby request these individuals to be determined by the Honorable Prosecution Office within the framework of our declarations provided above, and those who committed the offense of perjury to be determined by your Honorable Prosecution Office, these individuals to be considered within the scope of Article 28 of the Turkish Penal Code and those individuals who made the aforementioned threats to be determined and a bill of indictment to be prepared against these individuals so that they can be tried as the perpetrators of the crime.

**76.** This crime has been committed both as a result of the relevant individuals' efforts to protect their own interest and Sezgin Baran Korkmaz's complicity in this crime as the abettor. Even though he is not an official representative of Bugaraj and although Bugaraj already has an attorney to represent itself, Sezgin Baran Korkmaz's presence at the court house and the fact that the individuals in question continued to work at Borajet after the transfer of the company also indicate that the witnesses were coerced. We also request this matter to be considered by the Honorable Prosecution Office for the preparation of the bill of indictment.

### 3 – Attempt to Influence a Fair Trial (Article 288 of the Turkish Penal Code)

**77.** Within the framework of Article 288 of the Turkish Penal Code, *"The individual who makes a verbal or written statement openly as part of a pending lawsuit or investigation in order to influence those who carry out judicial duties, an expert witness or a witness in an unlawful manner so that an unlawful decision can be adopted or an unlawful transaction can be carried out or so that they can commit perjury, shall be sentenced to an administrative fine for no less than fifty days."*

**78.** All actions that we explained in detail above and baseless criminal accusations made against the Client in particular demonstrate that the offenses of making untrue verbal statements against the Client via the press and coercing the witnesses to commit perjury through pressure and threats have been committed on several occasions.

**79.** The complaint which includes the claim that the Client is a member of a terrorist organization is the best evidence showing that they tried to influence the prosecution office who were trying to carry out their duties against the Client and to form an opinion against the Client. Under current circumstances, being accused of aiding and abetting FETO via slander and insults creates a negative opinion within the society and damages that person's honor and dignity. Considering the Client's reputation within the society, these types of public accusations and declarations about him aimed to create a negative opinion before the prosecution office and to influence a fair trial and this objective was actually fulfilled, and a lawsuit was filed against the Client for the offense of aggravated fraud even though it is not relevant in any way. During the process until the lawsuit was filed, even though it was known that the Client lived in the United States of America for 43 years and in fact, this address is shown in the Central Registration System as his residential address, Prosecution Office was misled and an arrest warrant was issued for the Client in order to get his statement as if the Client avoided giving a statement. Even though the trial that was started after the offense of attempting to influence a fair trial as committed is still pending a decision, since the violation of the fair trial is not required for the completion of the crime and an attempt is sufficient, the crime has been committed with all of its aspects from this perspective as well.

### 4- Threat (Article 106 of the Turkish Penal Code)

**80.** Article 106 of the Turkish Penal Code states, *"The person who threatens the livelihood, physical integrity or sexual integrity of someone else, or their family members through an attack will be sentenced to six months to two years in prison. For those threats where the individual in question threatens the other person by mentioning that they will suffer a major loss with regards to their assets or they will be subject to a malicious attack, will be sentenced up to six months in prison or an equivalent administrative fine upon the victim's complaint."*.

21

[signature]                                                                 [signature]

Hergüner Bilgen Özeke

**81.** The Client has been threatened with the messages that Sezgin Baran Korkmaz sent to the Client via the application named WhatsApp and examples of which are provided above for the consideration of your Honorable Prosecution Office where Sezgin Baran Korkmaz threatened the livelihoods of the Client himself and his family, and indicated that he would suffer a major loss with regards to his assets.

**82.** Again the messages with the same contents that were sent to the Client and the relevant persons where Client's employees and his attorney were also threatened constitute an offense of threat as well. In the same manner, Client's office located in Taksim was called and same threats were made by Sezgin Baran Korkmaz which also constitute an offense.

83. Within this framework, as Sezgin Baran Korkmaz committed the offense of threat against different individuals on a number of occasions, we hereby request a bill of indictment to be issued against him where he would be sentenced to the maximum penalty.

**5- Establishing a criminal organization with the intent to commit a crime Article 220 of the Turkish Penal Code**

**84.** As per Article 220 of the Turkish Penal Code, "*Those individuals who establish or manage criminal organizations to carry out those acts that are considered as criminal offenses within the law, will be sentenced from two years to six years in prison if the structure of the organization is suitable for committing the intended offenses with regards to its members and tools and instruments available to it. However, the number of members for an organization must be minimum three.*"

**85.** Again 4th paragraph of the same article indicates, "*If a crime is committed within the framework of the organization's activities, then a penalty will also be imposed for these offenses.*" and 5th paragraph states, "*Organization's higher-ranking officials will also be sentenced as the perpetrators for all crimes committed within the framework of the organization's activities.*".

**86.** Within the framework of the actions that we explained above, it is obvious that the organization which set up the Client was not comprised of Sezgin Baran Korkmaz and Bugaraj's authorized representatives who were included in the transfer process of the Companies that were transferred, when one looks at the entire picture, it can be seen that SBK Holding Turkey and its subsidiaries acted together with its business partners and its connections located abroad in an organized manner and they committed various crimes against different individuals including the Client, they coerced the relevant individuals through these methods and confiscated their assets and derived a profit. In fact, these matters were also noticed by the Capital Market Board and criminal complaints have been filed against some of the Suspects in the examples provided above. From this perspective, we hereby request the aforementioned matters to be investigated and a bill of indictment to be prepared about those individuals who were determined to be a part of this organization with the intent to commit a crime for the offense of establishing a criminal organization with the intent to commit a crime.

**87.** If the membership of the suspects in question within the criminal organization cannot be determined, then we hereby request a bill of indictment to be prepared against these individuals within the framework of the provision which reads as, "*Those individuals who help an organization deliberately and willingly even though they are not included in the hierarchical structure within the organization will be punished as a member of the organization.*" within the scope of the 7th paragraph of the same article.

**88.** In the same manner, we hereby request 4th and 5th paragraphs of the same article provided above to be considered and an evaluation to be conducted with the other crimes that will be charged and all other crimes that will be determined within the framework of the investigation to be conducted by your Honorable Prosecution Office.

**89.** Moreover, we hereby request an investigation to be conducted within the scope of the articles related to the offense of establishing a criminal organization with the intent to commit a crime explained above and Article 314 of the Turkish Penal Code within the framework of the news reports published in the press where it is claimed that Sezgin Baran Korkmaz is a FETO member and examples of which are provided above and if any affiliation/connection is determined, then we request the file to be segregated from this perspective and to be sent to Istanbul Chief Public Prosecutor's Office Terrorism and Organized Crimes Investigation Bureau.

22

[signature]                                                    [signature]

Hergüner Bilgen Özeke

## IV. LETTERS ROGATORY

**90.** As we indicated above, our Client has been living in the USA for more than 40 years and his address on the Central Registration System is 75 Hawthorn Village Road, Nashua NH 03062 USA. Within the framework of all of the points included in our complaint petition and if the Client's statement must be taken by your Prosecution Office as the plaintiff, then it must be reminded that "Ensuring that the witness statements and declarations of individuals are taken" is listed among the issues of mutual assistance within sub-paragraph (b) of the third paragraph of Article 21 of the "Treaty on Extradition and Mutual Assistance in Criminal Matters between the United States of America and the Republic of Turkey". In this context, we hereby request taking the Client's statement as the plaintiff via a rogatory commission within the United States of America where he resides. [**APPENDIX 38 - Treaty on Extradition and Mutual Assistance in Criminal Matters between the United States of America and the Republic of Turkey**]

**CONCLUSION and REQUEST                   :** As a result of the incidents and legal statements provided above, we hereby request your Honorable Prosecution Office;

1. To adopt **ARREST and CUSTODY WARRANTS** as per Article 90 and 91 of the Code of Criminal Procedure ('CMK') against the Suspects whose names are written above and all other suspects who have been determined to act as an accomplice as a result of an inquiry and these warrants to be enforced by the security forces with immediate effect given the evidences at hand, strong suspicion of a crime having been committed as detailed above and given the likelihood of the suspects to flee and to tamper with the evidences,

2. Considering the presence of multiple phenomena which led to the suspicion that the Suspects may hide, flee or tamper with evidences and likelihood of the suspects to get rid of, to confiscate or to falsify the evidences, to **SUBMIT A REQUEST TO THE CRIMINAL COURT OF PEACE THAT IS AUTHORIZED IN ORDER TO ISSUE AN ARREST WARRANT** as per Article 100 of the Code of Criminal Procedure,

3. As the crimes subject to the complaint also include Aggravated Fraud, to **SUBMIT A REQUEST TO THE CRIMINAL COURT OF PEACE THAT IS AUTHORIZED IN ORDER TO CONFISCATE all ASSETS** including the movable and the immovable properties registered on the Suspects, all kinds of accounts held at the banks and other financial institutions, all kinds of receivables before real and legal entities, available funds within rental vaults, share stocks registered in their names before the Custody and Settlement Bank, if any, and all real estate properties and securities that they own as per Article 128 of the Code of Criminal Procedure and the evidences currently in possession,

4. Due to the suspicion that the suspects may flee abroad and tamper with the evidences and as a result of an inquiry that will be carried out, **TO SUBMIT A REQUEST TO THE CRIMINAL COURT OF PEACE THAT IS AUTHORIZED IN ORDER TO ISSUE A BAN FOR LEAVING THE COUNTRY** about all suspects determined to be accomplices as per Article 109/3-a of the Code of Criminal Procedure,

5. To issue a bill of indictment against all Suspects whose names are written above and all other suspects who are determined to be accomplices so that they can be sentenced due to the actions explained above and as per the relevant articles of the Turkish Penal Code and to **FILE A PUBLIC ACTION** in this regard,

23

[signature]                                [signature]

Hergüner Bilgen Özeke

6. To conduct an investigation about FETO claims and if a relationship is established then to segregate the file from this perspective and to send it to Istanbul Chief Public Prosecutor's Office Terrorism and Organized Crimes Bureau,

Kindly submitted for your information.

**Yours Sincerely,**

**Attorneys of**

**Yalçın Ayaslı**

**Att. Ayşe Hergüner Bilgen – Att. Hamdi Tolga Danışman**

[signature]                                    [signature]

**[APPENDIX 39 – Power of Attorney]**

**T.C.**
**İSTANBUL**
**CUMHURİYET BAŞSAVCILIĞI**

**Soruşturma No** : 2017/175132 Soruşturma
**Karar No** : 2018/56534

## KOVUŞTURMAYA YER OLMADIĞINA DAİR KARAR

| | |
|---|---|
| **DAVACI** | : K.H. |
| **MÜŞTEKİ** | : YALÇIN AYASLI, MEHMET NURİ Oğlu KERİME NESİBE'den olma, ▮▮▮ doğumlu, NASHUA, NH /AMERİKA BİRLEŞİK DEVLETLERİ ikamet eder. |
| **VEKİLİ** | : AV AYŞE HERGÜNER BİLGEN, İSTANBUL Büyükdere Cad. No:199 Levent/İSTANBUL |
| **ŞÜPHELİ** | : 1- FATİH AKOL, YAŞAR Oğlu FATMA'den olma, ▮▮▮ doğumlu, ADANA ili, MERKEZ ilçesi, KAYALIBAĞ köy/mahallesi, 25 cilt, 547 aile sıra no, 16 sıra no'da nüfusa kayıtlı Göktürk Merkez Mah. Mutlu Yokuşu Yolu Sk. No:TF İç Kapı No:3 Eyüp/ İSTANBUL ikamet eder. |
| **SUÇ** | : Bilişim Sistemleri Banka veya Kredi Kurumlarının Araç Olarak Kullanılması Suretiyle Dolandırıcılık, Suç İşlemek Amacıyla Örgüt Kurma |
| **SUÇ TARİHİ VE YERİ** | : 24/11/2017 İSTANBUL/MERKEZ, İSTANBUL/null |
| **ŞÜPHELİ** | : 2- JACOP ORTELL KİNGSTON, Oğlu 'den olma, doğumlu, ili, ilçesi, köy/mahallesi, cilt, aile sıra no, sıra no'da nüfusa kayıtlı ikamet eder. |
| **SUÇ** | : Bilişim Sistemleri Banka veya Kredi Kurumlarının Araç Olarak Kullanılması Suretiyle Dolandırıcılık, Suç İşlemek Amacıyla Örgüt Kurma |
| **SUÇ TARİHİ VE YERİ** | : 24/11/2017 İSTANBUL/MERKEZ, İSTANBUL/null |
| **ŞÜPHELİ** | : 3- KADİR PEKER, YILMAZ Oğlu TÜREL'den olma, 16/09/1964 doğumlu, MANİSA ili, AKHİSAR ilçesi, ULUCAMİ köy/mahallesi, 14 cilt, 656 aile sıra no, 11 sıra no'da nüfusa kayıtlı Şenlikköy Mah. Otlukbeli Sk. No:8 İç Kapı No:0 Bakırköy/ İSTANBUL ikamet eder. |
| **SUÇ** | : Bilişim Sistemleri Banka veya Kredi Kurumlarının Araç Olarak Kullanılması Suretiyle Dolandırıcılık, Suç İşlemek Amacıyla Örgüt Kurma |
| **SUÇ TARİHİ VE YERİ** | : 24/11/2017 İSTANBUL/MERKEZ, İSTANBUL/null |

1


UYAP Bilişim Sistemindeki bu dokümana http://vatandas.uyap.gov.tr adresinden DInQCHx - CO+Cy6T - ip0Vbp9 - AF5B8Y= ile erişebilirsiniz.

| | |
|---|---|
| **ŞÜPHELİ** | : 4- **KAMİL EKİM ALPTEKİN**, MUSTAFA SEVİNÇ Oğlu ZEHRA'den olma, ▮▮▮ doğumlu, DENİZLİ ili, MERKEZEFENDİ ilçesi, DEĞİRMENÖNÜ köy/mahallesi, 5 cilt, 357 aile sıra no, 8 sıra no'da nüfusa kayıtlı Burhaniye Mah. Taşocakları Sk. No:10C İç Kapı No:1 Üsküdar/ İSTANBUL ikamet eder. |
| **SUÇ** | : Bilişim Sistemleri Banka veya Kredi Kurumlarının Araç Olarak Kullanılması Suretiyle Dolandırıcılık, Suç İşlemek Amacıyla Örgüt Kurma |
| **SUÇ TARİHİ VE YERİ** | : 24/11/2017 İSTANBUL/MERKEZ, İSTANBUL/null |
| **ŞÜPHELİ** | : 5- **KAMİL FERİDUN ÖZKARAMAN**, MEHMET BESİM Oğlu HACER'den olma, ▮▮▮ doğumlu, İSTANBUL ili, ÜSKÜDAR ilçesi, AZİZ MAHMUT HÜDAYİ köy/mahallesi, 49 cilt, 1173 aile sıra no, 8 sıra no'da nüfusa kayıtlı Çeliktepe Mah. Hoşgör Sk. No:3 İç Kapı No:4 Kağıthane/ İSTANBUL ikamet eder. |
| **SUÇ** | : Bilişim Sistemleri Banka veya Kredi Kurumlarının Araç Olarak Kullanılması Suretiyle Dolandırıcılık, Suç İşlemek Amacıyla Örgüt Kurma |
| **SUÇ TARİHİ VE YERİ** | : 24/11/2017 İSTANBUL/MERKEZ, İSTANBUL/null |
| **ŞÜPHELİ** | : 6- **LEVON TERMENDZHYAN**, |
| **SUÇ** | : Bilişim Sistemleri Banka veya Kredi Kurumlarının Araç Olarak Kullanılması Suretiyle Dolandırıcılık, Suç İşlemek Amacıyla Örgüt Kurma |
| **SUÇ TARİHİ VE YERİ** | : 24/11/2017 İSTANBUL/MERKEZ, İSTANBUL/null |
| **ŞÜPHELİ** | : 7- **SEZGİN BARAN KORKMAZ**, TEYYAR Oğlu RAHİME'den olma, ▮▮▮ doğumlu, KARS ili, DİGOR ilçesi, BACALI köy/mahallesi, 5 cilt, 32 aile sıra no, 27 sıra no'da nüfusa kayıtlı Acarlar Mah. Bıldırcın Sk. No:146 Beykoz/ İSTANBUL ikamet eder. |
| **SUÇ** | : Bilişim Sistemleri Banka veya Kredi Kurumlarının Araç Olarak Kullanılması Suretiyle Dolandırıcılık, Tehdit, Adli Yargılamayı Etkilemeye Teşebbüs, Yalan Tanıklık, Suç İşlemek Amacıyla Örgüt Kurma |
| **SUÇ TARİHİ VE YERİ** | : 24/11/2017 İSTANBUL/MERKEZ, İSTANBUL/null |
| **ŞÜPHELİ** | : 8- **TOLGA ÜZÜMCÜ**, İSMAİL Oğlu NİLGÜN'den olma, ▮▮▮ doğumlu, ÇANAKKALE ili, LAPSEKİ ilçesi, UMURBEY BELDESİ köy/mahallesi, 41 cilt, 194 aile sıra no, 13 sıra no'da nüfusa kayıtlı Barbaros Mah. Ardıç Sk. No:8H İç Kapı No:3 Ataşehir/ İSTANBUL ikamet eder. |
| **SUÇ** | : Bilişim Sistemleri Banka veya Kredi Kurumlarının Araç Olarak Kullanılması Suretiyle Dolandırıcılık, Suç İşlemek Amacıyla Örgüt Kurma |
| **SUÇ TARİHİ VE YERİ** | : 24/11/2017 İSTANBUL/MERKEZ, İSTANBUL/null |

2



| | |
|---|---|
| ŞÜPHELİ | : 9- BORA JET HAVACILIK TAŞIMACILIK UÇAK BAKIM ONARIM VE TİCARET AŞ YETKİLİLERİ |
| SUÇ | : Nitelikli Dolandırıcılık |
| SUÇ TARİHİ VE YERİ | : 24/11/2017 İSTANBUL |
| ŞÜPHELİ | : 10- BUGARAJ ELEKTRONİK TİCARET VE BİLİŞİM HİZMETLERİ AŞ YETKİLİLERİ |
| SUÇ | : Nitelikli Dolandırıcılık |
| SUÇ TARİHİ VE YERİ | : 24/11/2017 İSTANBUL |
| ŞÜPHELİ | : 11- MEGA VARLIK YÖNETİM ANONİM ŞİRKETİ YETKİLİLERİ, Beylerbeyi Mah.Beylerbeyi İskele Cad.No:16/1 Üsküdar İstanbul Üsküdar/ İSTANBUL ikamet eder. |
| SUÇ | : Nitelikli Dolandırıcılık |
| SUÇ TARİHİ VE YERİ | : 24/11/2017 İSTANBUL |
| ŞÜPHELİ | : 12- SBK HOLDİNG AŞ YETKİLİLERİ, Sarıyer Reşitpaşa Mah. Eski Büyükdere Cad. No:14 K:9/B Maslak Şişli/ İSTANBUL ikamet eder. |
| SUÇ | : Nitelikli Dolandırıcılık |
| SUÇ TARİHİ VE YERİ | : 24/11/2017 İSTANBUL |

## SORUŞTURMA EVRAKI İNCELENDİ:

Müşteki Yalçın AYASLI vekili aracılığıyla Cumhuriyet Başsavcılığımıza verilen şikayet dilekçesi ile; müşteki Yalçın AYASLI nın sahip olduğu Borajet isimli şirket ile birlikte Borajet Bakım ve Aydınjet şirketlerinin hisselerinin, şüphelilerden SBK Holding sahibi Sezgin Baran KORKMAZ ın sahibi olduğu Bugaraj Elektronik Tic. A.Ş ye devredildiği, taraflar arasında 29/12/2016 tarihinde hisse devir ve kar paylaşım sözleşmesi imzalandığını, tarafların hangi borçların ödeneceği konusunda anlaştığı, ancak daha sonra bazı sebeplerden Sezgin Baran KORKMAZ ın müştekiye ait kredi borçlarının ödenmesi yönünde bankalardan ihtar yaptırıldığını, müştekinin borçlarını ödeyememesi üzerine SBK Holding ile bağlantılı Mega Varlık Yönetim A.Ş ye borçların temlik edildiğini, söz konusu dönemde Mega Varlık şirketinin yönetim kurulu üyelerinden birinin Kamil Ekin ALTTEKİN olduğunu, şahısların birlikte hareket ederek örgütlü bir şekilde gayrimeşru yollarla müştekiyi zarara uğrattıklarını, Sezgin Baran KORKMAZ ın müştekiyi baskı altına almak adına suç duyurusunda bulunduğunu, müşteki hakkında İstanbul 2. Ağır Ceza Mahkemesinde kamu davasının devam ettiğini, SBK Holding isimli şirketin arkasında yurtdışı kaynaklı Levon Termendzhyan, Jacob Ortell Kingston ile birlikte hisse devir sözleşmesine katılan Fatih AKOL, Kamil Feridun ÖZKARAMAN ile şirketin mali işlerine bakan Tolga ÜZÜMCÜ, yine hisse devrinde yer alan Kadir PEKER ile diğer tespit edilecek şüphelilerin suç işlemek amacıyla bir araya gelerek örgüt kurduklarını ve yaşanan süreçte nitelikli dolandırıcılık, yalan tanıklık, adil yargılamayı etkilemeye teşebbüs ve tehdit suçlarını işledikleri, ayrıca şüpheli Sezgin Baran KORKMAZ ın FETÖ/PDY terör örgütü ile irtibatlı olduğunu ve bu örgüt ile birlikte müştekiye kumpas kurdukları iddiasıyla şikayetçi olduğu,

Şüpheli Sezgin Baran KORKMAZ hakkında silahlı terör örgütüne üye olma suçundan dosya tefrik edilerek Cumhuriyet Başsavcılığımızın 2018/63526 sayılı dosyasına kaydedildiği,

3



Şüpheli Sezgin Baran KORKMAZ ve müşteki Yalçın AYASLI arasında İstanbul Cumhuriyet Başsavcılığının 2017/68314 soruşturma sayılı dosyasında Borajet in satımı sırasında usulsüz işlemler yapıldığı gerekçesiyle soruşturmanın bulunduğu, soruşturma kapsamında bilirkişi incelemesinde Borajet in hisseleri devredilmeden önce yapılan usulsüz işlemler sebebiyle Sezgin Baran KORKMAZ ın zarara uğradığının, şirketin muhasebe kayıtları ile oynamalar yapıldığı, şirket adına kayıtlı uçakların donör olarak kullanıldığı ve parçalarının eksik olduğunun tespit edildiği, satım sürecinde Yalçın AYASLI nın şahsi mal varlığını devretmek suretiyle kaçırma yoluna gittiğinin tespit edildiği, böylece Yalçın AYASLI hakkında TCK 158/1-h maddesi gereğince kamu davası açıldığı,

Dosya kapsamında yapılan inceleme sonrası İstanbul Mali Suçlarla Mücadele Şube Müdürlüğünce düzenlenen 06/07/2018 tarihli araştırma raporunda; müşteki ile diğer şüpheliler arasında yapılan şirket hissesi devri konusunda herhangi bir usulsüzlüğün görülmediği, taraflar arasında yapılan hisse devrinin daha önce İstanbul Cumhuriyet Başsavcılığının 2017/68314 soruşturma sayılı dosyasında incelendiği, şüpheliler aleyhine bir hususun tespit edilmediğinin bildirildiği,

Yapılan soruşturma neticesinde müşteki Yalçın AYASLI ile şüphelilerden SBK Holding sahibi Sezgin Baran KORKMAZ arasında ticari bir ilişkinin bulunduğu, şirket hisse devri sebebiyle aralarında daha önceden bir husumetin yaşandığı, bu yönde kamu davasının halen devam ettiği, müşteki tarafından şirketin devrinde ve sonrasında usulsüzlük yapıldığı yönünde ileri sürülen iddiaların taraflar arasındaki alım satımdan doğan hukuki uyuşmazlık niteliğinde olduğu, kaldı ki söz konusu iddiaların müşteki Yalçın AYASLI hakkında İstanbul 2. Ağır Ceza Mahkemesinde görülen kamu davasının savunması niteliğinde olduğu, şüpheliler arasında müştekinin iddia ettiği şekilde suç örgütü olacak şekilde bir bağlantının ve eylem birlikteliğinin olduğuna dair herhangi bir somut delilin bulunmadığı, müşteki tarafından şüpheliler hakkında işledikleri iddia edilen diğer suçların soyut iddia niteliğinde olduğu, taraflar arasındaki husumet ve hukuki uyuşmazlık neticesinde ileri sürülen iddialar olduğu, atılı suçların işlendiğine dair somut bir delilin bulunmadığı, kaldı ki müştekinin hisse devri sebebiyle yaşanan hukuki uyuşmazlık sebebiyle yetkili ve görevli hukuk mahkemelerinden dava açabileceği tüm dosya kapsamından anlaşılmakla;

Şüpheliler hakkında atılı suçlardan **AYRI AYRI KOVUŞTURMAYA YER OLMADIĞINA,**

Kararın bir örneğinin **müşteki vekiline tebliğine,**

CMK' nun 172 – 173 maddeleri uyarınca kararın tebliğ edildiği tarihten itibaren 15 gün içerisinde Cumhuriyet Başsavcılığımız aracılığıyla İstanbul Nöbetçi Sulh Ceza Hakimliği'ne itirazı kabil olmak üzere karar verildi. 09/07/2018

Muhammet AKCAER 120910
Cumhuriyet Savcısı
*E. imzalıdır.*

4


UYAP Bilişim Sistemindeki bu dokümana http://vatandas.uyap.gov.tr adresinden **DInQCHx - CO+Cy6T - ip0Vbp9 - AF5B8Y=** ile erişebilirsiniz.

# Hergüner Bilgen Özeke
Avukatlık Ortaklığı                    Attorney Partnership

| | |
|---|---|
| Av. Piraye Kuranel Başol | Av. Nazım O. Kun |
| Av. Ayşe Hergüner Bilgen | Av. M. Mert Oğuzülgen |
| Av. İsmet Bozoğlu | Av. Yeşim F. Api Şamlı |
| Av. S. Aslı Budak | Av. Deniz Tuncel |
| Av. H. Tolga Danışman | Av. Kayra Üçer |
| Av. Serkan Gül | Av. Ufuk Yalçın |
| Av. Ümit Hergüner | Av. Bige Yücel |
| Av. Senem İşmen | |

Büyükdere Caddesi 199 Levent 34394 Istanbul TURKEY
T +90.212.310 18 00   F +90.212 310 18 99
E info@herguner.av.tr  W www.herguner.av.tr

24 Kasım 2017

### YAKALAMA, TUTUKLAMA, YURTDIŞINA ÇIKIŞ YASAĞI, TEDBİR, ARAMA VE EL KOYMA TALEPLİDİR.

## İSTANBUL CUMHURİYET BAŞSAVCILIĞI'NA,

**ŞİKAYET EDEN** : Yalçın Ayaslı
75 Hawthorn Village Road. Nashua NH 03062, ABD

**VEKİLLERİ** : Av. Ayşe Hergüner Bilgen – Av. Hamdi Tolga Danışman
*(Adres antettedir.)*

**ŞÜPHELİLER** : 1- Sezgin Baran Korkmaz *(T.C. Kimlik No: 24194155124)*
2- Kamil Ekim Alptekin *(T.C. Kimlik No: 42211033118)*
3- Levon Termendzhyan (Lev Aslan Dermen)
4- Jacob Ortell Kingston *(Vergi kimlik no:* ████ *)*
5- Bugaraj Elektronik Ticaret ve Bilişim Hizmetleri A.Ş. yetkilileri *(Başta Cüneyt Özen (T.C. Kimlik No: 10660831050) olmak üzere şüpheli olduğu tespit olunacak tüm yetkililer)*
6- Fatih Akol *(T.C. Kimlik No: 16774198744)*
7- Tolga Üzümcü *(T.C. Kimlik No: 32686260812)*
8- Kadir Peker (T.C. Kimlik No: 32732042126)
10- Kamil Feridun Özkaraman *(T.C. Kimlik No: 46846353986 )*
11- Bora Jet Havacılık Taşımacılık Uçak Bakım Onarım ve Ticaret A.Ş. yetkilileri *(Başta Sezgin Baran Korkmaz, Fatih Akol, Kamil Feridun Özkaraman ve Cüneyt Özen olmak üzere şüpheli olduğu tespit olunacak tüm yetkililer)*
12- Mega Varlık Yönetim Anonim Şirketi yetkilileri *(Başta Jacob Ortell Kingston ve Kamil Ekim Alptekin olmak üzere şüpheli olduğu tespit olunacak tüm yetkililer)*
13- SBK Holding A.Ş. yetkilileri *(Başta Sezgin Baran Korkmaz olmak üzere şüpheli olduğu tespit olunacak tüm yetkililer)*
14- Suça iştirak ettiği soruşturma kapsamında tespit olunacak diğer şahıslar

...../.....201...
Mustafa KUCUKOGLU
Cumhuriyet Savcısı

Hergüner Bilgen Özeke

**SUÇLAR** : 1- *Aşağıda yer alan fiillerin bir örgüt faaliyeti kapsamında işlenmesi sebebiyle* suç işlemek amacıyla örgüt kurma TCK md. 220

2- **Nitelikli Dolandırıcılık (TCK m. 158 1. fıkra b-f-g-h bentleri)**

3- **Yalan Tanıklık (TCK m. 272)**

4- **Adil Yargılamayı Etkilemeye Teşebbüs (TCK md. 288)**

5- **Tehdit (TCK m. 106)**

**KONU** : Yukarıda ismi belirtilen tüm Şüpheliler ile suçun işlenmesinde iştirak halinde olduğu yürütülecek Savcılık soruşturması neticesinde tespit edilecek diğer şahıslar hakkında **(i)** aşağıda ayrıntılı olarak açıklanacak fiiller kapsamında iddianame hazırlanması ve kamu davası açılması, **(ii)** tutukluluk kararı verilmesi ve yurtdışına çıkış yasağı konulması, **(iii)** tüm menkul ve gayrimenkul malvarlıkları ile banka hesapları üzerine gerekli tedbirlerin uygulanması için karar alınması taleplerini içerir .

## AÇIKLAMALAR

**ÖZET:**

İşbu dilekçemiz kapsamında detaylarıyla açıklandığı üzere, Müvekkil Yalçın Ayaslı'nın, sahibi bulunduğu Bora Jet Havacılık Taşımacılık Uçak Bakım Onarım ve Ticaret A.Ş. ("**Bora Jet**"), Bora Jet Bakım ve Onarım Ticaret A.Ş. ("**Bora Jet Bakım**") ve Aydın Jet Havacılık A.Ş. ("**Aydın Jet**") şirketlerinin devrine ilişkin hisse devri sözleşmesinin müzakereleri ve imzası sürecinde, bunun çok öncesinde ve sonrasında:

- *Basın ve yayın araçlarının sağladığı kolaylıktan yararlanmak suretiyle, ticari faaliyet kapsamında nitelikli dolandırıcılık teşkil eden pek çok fiil ile şüphelilerin bir kısmı tarafından planlı şekilde dolandırıldığına.*

- *Kimi şüphelilerin Müvekkil'e karşı açılan mesnetsiz soruşturmalar kapsamında gerek baskı sebebiyle, gerek kendi inisiyatifleri ile yalan tanıklık yaptığına.*

- *Müvekkil aleyhine basında taraflı şekilde algı oluşturularak Müvekkil'in itibarının zedelenmesi suretiyle ve tehdit fiilleri ile Müvekkil aleyhine davranılmasının sağlandığına, bu şekilde hem tehdit, hem adil yargılamayı etkilemeye teşebbüs suçlarının işlendiğine.*

- *Tüm bu fiillerin organize bir şekilde Müvekkil ve Müvekkil dışında farklı kişilere karşı da yürütüldüğüne, konunun Sermaye Piyasası Kurulu tarafından da fark edildiğine ve bu kapsamda suç işlemek amacıyla örgüt kurma suçunun oluşmuş olabileceğine*

dair Sayın Makamınıza sunmuş olduğumuz deliller ve resen tolanacak deliller muvacehesinde sorumlu olduğu tespit olunacaklar hakkında müsnet suçlardan dolayı kamu davası açılmasını ve haklarında gerekli tedbirlerin uygulanmasını talep etmekteyiz.

## I.    MÜVEKKİLİMİZ YALÇIN AYASLI HAKKINDA BİLGİLER

1.    Müvekkilimiz Yalçın Ayaslı ▨ yılında Ankara'da doğmuş, Ankara Atatürk Lisesi'nden sonra ODTÜ Elektrik Mühendisliği bölümünden mezun olmuş, 1973 yılında Boston'da MIT –

2

Hergüner Bilgen Özeke

Massachusetts Institute of Technology'de (Massachusetts Teknoloji Enstitüsü) master ve doktora eğitimini tamamlamıştır. Yalçın Ayaslı daha sonra altı yıl boyunca ODTÜ Elektrik Mühendisliği bölümünde öğretim üyesi ve bölüm başkan yardımcısı olarak görev yapmıştır.

2.      1979 yılından itibaren, ABD'nin Massachusetts eyaletindeki Raytheon firmasının araştırma bölümünde mikrodalga monolitik entegre devre teknikleri, GaAs alan etki transistörü ve ilgili aygıtlar üzerinde teorik ve deneysel çalışmalar yapmıştır. Dr. Ayaslı çalışmalarıyla ilgili 15 adet patente sahip olup çok sayıda teknik makale yazmıştır. 1986 yılında "Çok geniş band-monolitik yayılan dalga amplifikatörü" alanındaki çalışmalarından ötürü Elektrik ve Elektronik Mühendisleri Enstitüsü ("IEEE")'nin Mikrodalga Ödülüne layık görülmüştür. Söz konusu uluslararası enstitünün ancak en üstün başarılı sayılan üyelerine verilen "Fellow" unvanına sahiptir.

3.      Öte yandan, Müvekkil 1985 yılında Chelmsford, MA'de, Hittite Microwave Corp. isimli firmasını kurmuştur. 15 Ocak 1985 tarihinde firma NASDAQ borsasında kayda alınmıştır. Firma, RFIC karışık sinyal, mikrodalga ve milimetre dalga entegre devre parçaları ile dünya çapında telekomünikasyon pazarlarına yan sistemler üretmektedir. 2005 yılında halka açılan ve NASDAQ'a kayıtlı şirket 2014 yılında Analog Devices (ANAD) tarafından 2.500.000.000 ABD Doları'na satın alınmıştır.

4.      2005 yılında emekli olan Müvekkil, 60.000.000 ABD Doları tutarında Hittite Microwave hissesini 2007'de kurduğu Turkish Coalition of America (Amerika-Türk Koalisyonu)'ya ve 2000 yılında kurduğu Turkish Cultural Foundation'a (Türk Kültür Vakfı). Türk kültürünün tanıtımı için aktarmış. bu bağlamda Boston, Washington DC ve İstanbul'da ofisleri bulunan. kar amacı gütmeyen bu kuruluşlar vasıtasıyla Türk kültürünü tüm dünyaya tanıtmayı ve **Türk Amerikalıları Amerika siyasi hayatında etkili kılmayı hayat gayesi edinmiştir.**

5.      **Öte yandan, Türkiye'nin özellikle uluslararası alanda en önemli konulardan olan Ermeni soykırımı iddialarına karşı durmuş ve bu çerçevede Ermeni lobisi faaliyetlerine karşı Turkish Coalition of America'nın bir uzantısı olarak 2009 tarihinde kurduğu Turkish American Legal Defense Fund** (*Türk Amerikan Hukuki Savunma Fonu*) **isimli vakıf üzerinden dünyanın birçok yerinde önemli hukuki çalışmalar yapmıştır. Bu hususun önemi ve huzurdaki nitelikli dolandırıcılık vakıası ile bağlantısı dilekçemizin 39 numaralı paragrafında ayrıntılı olarak açıklanacaktır.**

6.      Mezun olduğu ODTÜ Elektrik Mühendisliği bölümüne 2012 yılında, Ayaslı Araştırma Merkezi'ni bağışlamıştır. İstanbul'da Yemek Sanatları Merkezi ve Doğal Boya Araştırma ve Geliştirme Laboratuvarları'nı kurmuştur. Müvekkilimiz ayrıca, Dünya Türk İş Konseyi Yüksek İstişare Kurulu üyesidir.

7.      Müvekkilimiz Türk kültürünü tanıtmaya yönelik yatırımlar yapmış ve Türkiye'ye her anlamda büyük katkılar sağlamış ve halen sağlamakta olan saygın bir kişiliktir. Hem Amerikan hem de Türk vatandaşı olan Müvekkilimiz, yatırımcıların yatırımlarını güvence altına alan ABD ve Türkiye arasındaki ikili anlaşmalara da güvenerek. su ana kadar Türkiye'de 400 milyon ABD Dolarının üzerinde yatırım yapmış bulunmaktadır. [EK 1- Müvekkil ve Yatırımları Hakkında Basında Yer Alan Haberler]



3



Hergüner Bilgen Özeke

II.     MADDİ VAKIALAR VE ŞİKÂYET KONUSU FİİLLER:

## A - NİTELİKLİ DOLANDIRICILIK SUÇUNA İLİŞKİN MADDİ VAKIALAR

8.     Müvekkilimizin Türkiye'de yaptığı yatırımlar kapsamında 2007 yılı itibariyle, Türk kültürünün uluslararası alanda tanıtılması faaliyetleri ile de bağlantılı olarak, yurtdışından gelen misafirlerin Türkiye'yi tanıyabilmesi. Türkiye'ye getirdiği Amerikan Kongresi üyelerinin tanıtım gezilerinin yapılabilmesi, hava taksi de dâhil kısa mesafeli uçuşların yapılabilmesi gibi imkânları da değerlendirerek. Türkiye'nin nispeten az bilinen yerlerine gidebilen, kısa mesafeli uçuş yapabilecek lisansa sahip Ovaair Uçak Bakım Onarım ve Havacılık Ticaret Ltd. Şti.'ni satın almıştır. Satın alma sonrasındaki unvan değişikliği ve tür değişikliği ile işlemleri neticesinde şirket bugünkü ticaret unvanı olan Bora Jet unvanını almıştır. Bora Jet'in 2014 senesinde yeniden yapılanmaya gitmesi sonucu kısmi bölünme yoluyla Bora Jet Bakım ve Onarım Ticaret A.Ş. ("**Bora Jet Bakım**") kurulmuştur. Müvekkilimiz 2015 yılında ise, Aydın Jet Havacılık A.Ş.'yi ("**Aydın Jet**") kurmuştur.

9.     Bora Jet Türkiye'nin tek bölgesel havayolu şirketi olarak büyüme politikası benimsemiştir. Bu kapsamda üçüncü havalimanında gerçekleştirilmesi planlanan operasyonları da hesaba katarak Embraer ve Bombardier gibi çeşitli uçak firmaları ile yeni uçak alımlarına ilişkin ön sözleşmeler yapmış. THY ile anlaşması çerçevesinde ortak uçuşlar gerçekleştirmiştir. Nisan 2016'da şirketleri geliştirmek üzere finansman bulunması amacıyla yetkilendirilen bir yatırım şirketi olan Ata Yatırım Menkul Kıymetler A.Ş. ("**Ata Invest**") firması Haziran 2016'da gelecek projeksiyonlarını da hesaba katarak hazırladığı bir sunum ile Borajet değerinin benzer şirketler çarpan analizi metodu uyarınca 358.000.000 ABD Doları'na, indirgenmiş nakit akım analizi metodu uyarınca da 1.770.000.000 ABD Doları'na kadar çıkacağını belirlemiştir. [**EK 2- Münhasır Danışmanlık Anlaşması ve Değerlemeye İlişkin Sunum**]

10.     2016 yılının Nisan ayından itibaren Borajet hakkında basında FETÖ bağlantısı ima eden haberler çıkmaya başlamıştır. Bu haberlerin bir kaçını örnek olarak Sayın Savcılığınıza sunarız.[1] [**EK 3- Müvekkil Aleyhine Çıkartılan Asılsız Haberler**]

11.     15 Temmuz 2016 hain darbe girişimi sonrasında. Müvekkil'i doğrudan hedef alan çok daha şiddetli bir karalama ve ağır suçlama operasyonu başlatılmıştır. Nitekim. 2016 Ağustos ayından başlayarak, Ocak 2017'ye kadar yoğun bir şekilde Sabah. Takvim. Sözcü gibi önde gelen gazeteler ve bir kısım başka haber sitelerinde sistematik olarak Müvekkil aleyhine asılsız, gerçeği yansıtmayan ve ülkedeki gelişmeler kapsamında salt negatif algı oluşturmaya yönelik sayısız haber yayınlanmıştır.[2] Ekte 15 Temmuz sonrası yayınlanan bu haberleri Sayın Savcılığınız dikkatine sunarız. [**EK 4- Müvekkil Hakkında Yapılan Asılsız Haberler**] Bu haberlerin de çıkarılmasında Kamil Ekim Alptekin ve/veya diğer Şüphelilerin tarafından sağlandığı bilgisi sonradan edinilmiştir.

[1] http://www.haberyaktim.com/haber/467094/paralar-cemaate-himmet-olarak-akterildi.html . http://t24.com.tr/haber/sikede-kumpas-dusi-asindan-polis-operasyon-yapti-cemaate-yolcu-avukat-savundu-parazit-himmet-oldu,337491 , http://www.karar.com/gundem-haberleri/sikcnun-hizmetci-ayukatlari-98067 . http://www.haberkanal.net/m/mansetgoster-mob.asp?haber_no=7929 . http://www.hurriyet.com.tr/avukat-ve-pulislerin-himmet-ugr-ti003238
[2] Mahmut Övür FETÖ her taşın altında, Ağustos 21. 2016. http://www.sabah.com.tr/yazarlar/ovur/2016/21/feto-her-tasin-altunda. Mahmut Övür. ABD'i Ayaslı'yla bu isimleri kim buluşturdu?. Ağustos. 23. 2016. http://www.sabah.com.tr/yazarlar/ovur/2016/08/23/abdli-ayasliyla-bu-isimleri-kim-bulusturdu; Ergün Diler. Gülen geldi mi?. Eylül 2. 2016. http://www.takvim.com.tr/yazarlar/ergundiler/2016/09/02/gulen-geldi-mi; Ersin Ramoğlu (Güney). Fettullah Gülen İstanbul'a geldi mi?. Eylül 4, 2016. http://www.sabah.com.tr/yazarlar/bolgeler/ramoglu/2016/09/04/feutllah-gulen-istanbula-geldi-mi Ergün Diler. Akıncı Üssü değil hangar?. Eylül 3, 2016. http://www.takvim.com.tr/yazarlar/ergundiler/2016/09/03/akinci-ussu-degil-hangar. Ergün Diler. Hangar hacısı. Eylül 7. 2016. http://www.takvim.com.tr/yazarlar/ergundiler/2016/09/07/hangar-havasi; Ergün Diler. Hangarın kapısı. Eylül 9. 2016. http://www.takvim.com.tr/yazarlar/ergundiler/2016/09/09/hangarin-kapisi; Soner Yalçın. Mücahit Arslan konuşsa keşke. Eylül 23. 2016. http://www.sozcu.com.tr/2016/yazarlar/soner-yalcin/mucahit-arslan-konussa-keske-1406234/; Ergün Diler. İşte baylock'. Ekim 6. 2016. http://www.takvim.com.tr/yazarlar/ergundiler/2016/10/06/iste-baylock; Ergün Diler. Bay Lock masalı. Ekim 25. 2016. http://www.takvim.com.tr/yazarlar/ergundiler/2016/10/25/bay-lock-masali; Ergün Diler Hangar kardeşliği. Ekim 27. 2016. http://www.takvim.com.tr/yazarlar/ergundiler/2016/10/27/hangar-kardesligi; Ergün Diler. Garip ilişkiler!.. Kasım 18. 2016. http://www.takvim.com.tr/yazarlar/ergundiler/2016/11/18/garin-iliskiler; Ergün Diler Al gülüm ver gülüm. Aralık 31. 2016. http://www.takvim.com.tr/guncel/2016/12/31/al-gulum-ver-gulum



Hergüner Bilgen Özeke

12.    Devam eden algı operasyonu sebebiyle Borajet'in THY ile devam etmekte olduğu ve geliştireceği yatırımlar da bu tip asılsız haberler sebebiyle THY tarafından iptal edilmiştir. Ayrıca bankalar bu haberlerden rahatsızlık duyarak kredi temininden çekinir hale gelmiştir. Müvekkil bu dönemde Borajet'in bu haberler sebebiyle uğradığı zararların önüne geçebilmek adına Borajet'e kendi cebinden ve sürekli artan şekilde kaynak aktarımında bulunmak durumunda kalmıştır.

13.    Bu iftira ve algı operasyonu ile daha fazla mücadele edemez hale gelen Müvekkil, çalışanların ve yatırımın daha fazla zarar görmemesi adına, şirketleri devretmeye karar vermiştir. Ata Invest bu konuda çalışmalara başlamıştır.

14.    Ancak Borajet'in o dönemki yönetim kurulu başkanı ve şüpheli Fatih Akol, Ata Invest ile bu sözleşmeyi bir kenara bırakarak, o dönemde Borajet'i alım ile ilgilenen farklı şirket ve kişiler olmasına rağmen, Müvekkil'in konuya yabancı olmasından istifade ederek ve kendisinin özellikle Ulaştırma Bakanlığı'yla ilişkilerini öne çıkararak, Bakanlığın tercih edeceğini düşündüğü şüphelilerden SBK Holding A.Ş.'nin ("**SBK Holding Türkiye**") Borajet ile ilgilendiğini belirtermiş ve hisse devirlerinin SBK Holding Türkiye'ye yapılması konusunda Müvekkile telkinde bulunmaya başlamıştır. **|EK 5- Fatih Akol'un SBK Holding Türkiye'ye Devir Yapılması Konusunda Müvekkil'e gönderdiği E-Postalar|**

15.    Bunun üzerine, Fatih Akol tüm sözleşme görüşmelerini yürütmüş ve SBK Holding Türkiye'nin iştiraki olan Bugaraj Elektronik Ticaret ve Bilişim Hizmetleri A.Ş. ("**Bugaraj**") ve Müvekkilimiz arasında, Müvekkilimizin yetkilendirdiği bir vekil aracılığıyla temsili suretiyle, Bora Jet, Bora Jet Bakım ve Aydın Jet hisselerinin tamamının Bugaraj'a devri için 29 Aralık 2016 tarihinde Hisse Devir ve Kar Paylaşım Sözleşmesi imzalanmıştır. ("Hisse Devir Sözleşmesi") [EK 6- Hisse Devir Sözleşmesi]

16.    Hisse Devir Sözleşmesi klasik hisse devir sözleşmesi niteliğinde değildir. **Hisseler bedelsiz devredilmiştir ve şirket borçları paylaşılmıştır.** Hisse Devir Sözleşmesi kapsamında Müvekkil Borajet'in banka kredi ve bir kısım leasing borçlarını ödemeyi kabul etmiş, devralan Bugaraj da piyasa borcunu üstlenmiştir. Ayrıca, Hisse Devir Sözleşmesi kapsamında Bugaraj'ın şirketlerin hisselerini devraldıktan sonra 3. Şahıslara devretmesi durumunda elde edilecek net karın %25'inin Müvekkile ödenmesi kararlaştırılmıştır. **Ancak Bugaraj ve Sezgin Baran Korkmaz bu süreçte Borajet'in 260.000.000 USD'ye satıldığına dair haberlerin sistematik bir şekilde çıkmasını sağlayarak, yanlış bir algı oluşturmuşlardır. Bu asılsız haberlerin ardında, Şüphelilerin Müvekkil aleyhine girişeceği saldırılar için bir mağduriyet görüntüsü yaratma gayesi olduğu ise sonradan anlaşılmıştır.** |EK 7- İlgili Haberler|

17.    Ayrıca Müvekkilimiz Hisse Devir Sözleşmesi'nin çerçevesindeki yükümlülüklerin ve borçların teminatı olarak 1 Şubat 2017 tarihinde Bugaraj lehine Müvekkil'e ait İstanbul ili, Fatih İlçesi, Molla Fenari Mah. Nuru Osmaniye Mevkii, 34 Pafta, 294 Ada 15 Parsel'de kain gayrimenkulü üzerinde (50.000.000 ABD Doları karşılığı) 220.000.000 TL tutarında ipotek tesis etmiştir. |EK 8- İpotek Senedi|

18.    Müvekkilimizin nasıl bir örgütün tuzağına düştüğü ise Hisse Devir Sözleşmesi'nin yapılmasından sonra anlaşılmıştır. Hisse Devir Sözleşmesi çerçevesinde Müvekkil'in banka borçlarını ödemek için bir yıllık vade kararlaştırılmış iken şüphelilerden Sezgin Baran Korkmaz, Borajet'in kredi kullandığı ve Müvekkilimizin kişisel kefaleti bulunduğu Akbank T.A.Ş., Denizbank T.A.Ş., Türk Ekonomi Bankası A.Ş., Odea Bank A.Ş., Garanti Bankası A.Ş. gibi bir kısım bankalar ile görüşerek, nedensiz olarak hesap kat ihtarında bulunmalarına sebebiyet vermiştir.

5



Hergüner Bilgen Özeke

19.     Sezgin Baran Korkmaz'ın bu girişimleri sebebiyle Odea Bank A.Ş. 28 Şubat 2017 tarihinde Borajet'e ve müteselsil kefil sıfatıyla Müvekkil'e ihtarname göndererek 1 gün içerisinde vadesi gelmiş/gelmemiş tüm kredilerin tahsilatını ve 21.070.603.45 TL.'lik kredi borcunun ödenmesini talep etmiştir. Müvekkil tarafından ödeme için 1 hafta süre istenilmesine rağmen bu süre verilmemiştir. Akabinde Odea Bank A.Ş. anılan ihtarnameye konu kredi alacağının tamamını 6 Mart 2017 tarihli sözleşme ile Bugaraj ve Bugaraj'ın devir dönemindeki nihai ana hissedarı SBK Holding Türkiye ile organik bağı bulunan, Mega Varlık Yönetim A.Ş'ye temlik etmiştir. <u>Ödenmeye devam edilen ve temerrüde düşülmemiş bir kredi için bu olağandışı bir durumdur. Odea Bank zaten ödenmekte olan bir krediyi önce kat etmiş, sonra asıl borçlu olan Borajet'ten tahsil etmek yerine daha az bir miktar karşılığında varlık yönetim şirketine devretmiş, varlık yönetim şirketi de alacağı önce asıl borçlu olan Borajet'ten tahsil etmek yerine, kefil olan Müvekkil'den talep ve tahsil etmiştir.</u> Bu temlik neticesinde Mega Varlık Yönetim A.Ş. İstanbul 22. İcra Müdürlüğü'nün 2017/6669 E. sayılı dosyası kapsamında ilamsız takip başlatmış ve Müvekkilin Türkiye'deki malvarlığı üzerinde haciz uygulamıştır. Bu takip kapsamında 10 Mart 2017 tarihinde gerçek borcun çok çok üstünde olacak şekilde dosya borcu olarak 23.161.907.94 TL Müvekkil tarafından ödenmek durumunda kalınmıştır ve hacizler ancak bu şekilde gerçek borcun yaklaşık 2.000.000 TL fazlası bir tutar ödenmek suretiyle kaldırılabilmiştir.

20.     Hisse devrinin gerçekleşmesinden 3 ay önce Kamil Ekim Alptekin Mega Varlık Yönetim A.Ş'de yönetim kurulu üyesi olarak atanmış, dosya borcu tahsilatları yapıldıktan sonra da 17 Nisan 2017 tarihinde yönetim kurulundan istifa etmiştir. [EK 9 – İlgili Ticaret Sicil Kayıtları]

21.     Banka kat ihtarları ile zor durumda bırakılan Müvekkil tüm kredi borçlarını ödeyebilmek adına Türkiye Garanti Bankası A.Ş.' ("Garanti Bankası")indan çeşitli gayrimenkullerini ipotek göstererek toplamda yaklaşık 20.000.000 ABD Doları tutarında kredi çekmiş ve Borajet'in Türkiye'deki banka borçlarını kapatmıştır. Bugün itibariyle kapatılan kredi borçlarının toplam tutarı 67.216.407.35 TL + 1.489.819.67 ABD Doları'dır. Ayrıca Garanti Bankası'ndan alınan bu kredi kapsamında Garanti Bankası'nın kredi tahsisinin ön koşullarından biri de banka nezdindeki leasing borçlarının kapatılması olduğundan, Müvekkil vadesi gelmiş ve gelmemiş 487.607 TL. tutarındaki tüm leasing borçlarını ödemek durumunda kalmıştır. Bununla birlikte, Bugaraj Hisse Devir Sözleşmesi kapsamında ödemekle yükümlü olduğu çeşitli Borajet tedarikçi borçlarını ödememiştir. Bu sebeple ve bir kısım teminat mektupları ve harici garantilerin nakde çevrilmesi nedeniyle, bu garanti ve teminat mektupları kapsamında şahsi kefaleti bulunan Müvekkil Hisse Devir Sözleşmesi uyarınca ödemekle yükümlü olmadığı halde, işbu dilekçe tarihi itibariyle yaklaşık 12.500.000 TL'lik ödemeyi Borajet lehine yapmak durumunda kalmıştır. [EK 10- İhtarlar ve Kapatılan Borçlara İlişkin Tablo ve Belgeler] [EK 11– Leasing Borçlarının Kapatıldığına Dair Belgeler]

22.     Olay örgüsünden anlaşılacağı üzere, şüpheliler Kamil Ekim Alptekin, Sezgin Baran Korkmaz ve sahibi olduğu şirketler SBK Holding Türkiye, Bugaraj ve bunlarla organik bağı olan Mega Varlık Yönetim A.Ş. arasında bir ilişki olduğu ve örgütlü şekilde beraber hareket ederek hukukilik görüntüsü altındaki gayrimeşru yollarla Müvekkili zarara uğratma ve malvarlığına el koyma girişimi içerisinde oldukları açıktır. Olay tarafları arasındaki bağlara ilişkin hususlara aşağıda B bölümünde detaylıca değinilmektedir.

23.     Bu olayların sonrasında Bugaraj şirketi tarafından Müvekkil aleyhine 13 Mart 2017 tarihinde İstanbul 3. Asliye Ticaret Mahkemesi'nin 2017/242 E. sayılı dosyası ile görülmekte olan 253.305.035 TL tutarın Müvekkil'den tahsiline ilişkin haksız bir alacak davası açılmıştır. Müvekkil tarafından verilmiş bir ipotek olmasına rağmen, yine Müvekkil'in malvarlığı üzerinde haksız olarak menfaat sağlama amacı ile bu davada da Müvekkilimizin gayrimenkulleri üzerinde mükerrer olarak ihtiyati haciz uygulanması talep edilmiştir. Ancak, Bugaraj'ın bu iddiaları hem İstanbul 3. Asliye





Hergüner Bilgen Özeke

Ticaret Mahkemesi hem de İstanbul Bölge Adliye Mahkemesi 12. Hukuk Dairesi tarafından reddedilmiştir. Şikayet ile doğrudan bağlantılı olması sebebiyle bu davadaki dava dilekçesi ile sunmuş olduğumuz düplik dilekçesi ve delil listelerini Sayın Savcılığınıza sunarız. [EK 12– Dava, Düplik ve Delil Dilekçeleri]

24.     Bir üst paragrafta bahsi geçen alacak davasında ihtiyati haciz talebinin ilk seferde reddi nedeniyle gayesine ulaşamayan Bugaraj şirketi bu defa ceza yargılaması vasıtasıyla Müvekkilimizi baskı altına almayı, haksız menfaat elde etmeyi ve malvarlığına el koymayı hedeflemiş ve 5 Mayıs 2017 tarihli bir şikayet dilekçesi ile nitelikli dolandırıcılık, vergi kaçakçılığı, ticari defterlere gerçeğe aykırı kayıt yapma, trafik güvenliğini tehlikeye sokma gibi çeşitli suçlardan Müvekkil aleyhine kamu davası açılması talebinde bulunmuştur. Bu soruşturma İstanbul Cumhuriyet Başsavcılığı'nın 2017/68314 sayılı dosyası ile başlatılmıştır. Daha sonra bu soruşturma dosyasına verdiği dilekçeler ile Bugaraj suç uydurmaya devam etmiş, hiçbir temeli olmaksızın Müvekkil'in FETÖ ile ilişki içerisinde yer aldığı, By Lock'u kendisinin tasarlattığı, 15 Temmuz hain darbe girişiminden haberdar olduğu, FETÖ terör örgütüne finansman sağladığı ve aktif rol oynadığı, CIA ajanı olduğu yönünde söylentiler bulunduğunu iddia etmiştir. Bu iddialarına ilişkin sunduğu gazete haberleri ise şüphelilerden Kamil Ekim Alptekin ve/veya diğer Şüpheliler tarafından yaptırılan gazete haberleridir.

25.     Görüldüğü üzere şüpheliler eylem birliği içinde ve koordineli olarak, yaptırdıkları ve kurguladıkları asılsız gazete haberleriyle gerçeğe aykırı isnatlar yaratmakta ve hemen akabinde, hakkın kötüye kullanılması suretiyle hukuki yollara başvurmaktadırlar. Başvuru müstenidi sözde deliller de kendi yaptırdıkları ve kurguladıkları gerçek dışı haberlerdir. Şüphelilerin suç işlemek suretiyle haksız menfaat elde etmek için kötüye kullandıkları yol sadece yasal yollar değildir. Yanı sıra dilekçemizin devamında tafsilatlı olarak yer alacağı üzere, tehdit, şantaj ve şiddet yollarına da başvurmaktadırlar. Kısacası şüpheliler, amaçlarına ulaşmak için her türlü gayri meşru yolu **"meşru"** (!!!) edinmişlerdir. O amaç da, haksız menfaat elde etmektir.

26.     Bugaraj Müvekkil aleyhine bu adımları atmakla yetinmemiş, 6 Temmuz 2017 tarihinde (bu sefer Bölge Adliye Mahkemesi'nin ihtiyati haciz red kararını onaylamasından kısa süre sonra) Soruşturma Dosyasına sunduğu dilekçe ile Müvekkil ile birlikte Borajet eski yönetim kurulu üyesi şüphelilerden Fatih Akol'ün yanı sıra yönetim kurulu üyeliği yapmış diğer kişiler Zahide Üner, Nur Gezeroğlu ve Samir Bayraktar aleyhine nitelikli dolandırıcılık, vergi kaçakçılığı, ticari defterlere aykırı kayıt yapma ve trafik güvenliğini tehlikeye sokma yanı sıra, FETÖ'ye mensup/destek olma ve FETÖ benzeri bir yapı kurmak suretiyle siyasi ve askeri casusluk yapma iddiaları ile soruşturma başlatılmasını, şüphelilerin taşınmaz, hak ve alacaklarına el konulmasının sağlanmasını talep etmiştir. Bu talebi de kabul görmeyince, 11 Temmuz 2017 tarihli dilekçe ile, 2017/68314 sayılı soruşturma dosyasından Müvekkil'in, hissedarı ve/veya yöneticisi olduğu şirketlerin, vakıfların, banka hesaplarının tespit edilmesi, son 10 yıllık dökümlerinin çıkartılması ve tedbiren hesaplara bloke konulmasını talep etmiştir.

27.     İlgili soruşturma kapsamında Müvekkilimiz aleyhine haksız şekilde nitelikli dolandırıcılık şüphesi ile iddianame hazırlanmış olup, iddianameyi inceleyen Ağır Ceza Mahkemesi'ne iddianamenin haksızlığına ilişkin beyanlarımız sunulmuştur. [EK 13– İddianamenin Haksızlığına İlişkin Beyanlar]. Türkiye'deki mevcut ortamda en ağır itham olarak yer alan mesnetsiz FETÖ iddialarına ilişkin olarak ise dosya tefrik edilmiştir ve 2017/135059 numarası ile İstanbul Cumhuriyet Başsavcılığı Terör Bürosu'nda soruşturma devam etmektedir. Halbuki, tam aksine, esas şüphelilerden Sezgin Baran Korkmaz'ın FETÖ mensubu olduğuna dair gazetelerde haberler çıkmaktadır. 16 Kasım 2017 tarihinde Hürriyet Gazetesi yazarlarından Yalçın Bayer'in Sezgin Baran Korkmaz hakkındaki yazısından alıntıları aşağıda Sayın Savcılığınıza sunarız:





Hergüner Bilgen Özeke

"Pazarlığın, Flynn ile Korkmaz arasında New York Peninsula Otel'de yapıldığı, gelişmelerin gerisinde "Sezgin Baran Korkmaz'ın, algı yönetimi ile FETÖ düşmanı görünüp, FETÖ'nün Amerika'daki paralarını (Amerikan sermayesi gibi gösterip) Türkiye'ye getirdiği, el konulan ve zora düşen şirketlerini alma girişimi ile görevlendirildiği" belirtiliyor."

Bu haberin tamamını Sayın Savcılığınıza da ekte sunarız. **[EK 14- İlgili Haber]**

28.    Yine basında internet ortamında yer alan bir habere göre, Ankara Eski Ticaret Odası Başkanı Sinan Aygün'ün damadı Bereket Öner isimli şahıs tarafından, İstanbul Cumhuriyet Başsavcılığı'nın 2017/162009 soruşturma numarası tahtında Sezgin Baran Korkmaz aleyhinde FETÖ üyesi olduğu iddiasıyla ihbarda bulunulmuştur. İki sayfadan ibaret söz konusu ihbar dilekçesinin tam metni de yine internet ortamında muhtelif haber sitelerinde yayımlanmıştır. İhbar dilekçesinde Bereket Öner özetle: Sezgin Baran Korkmaz'ın kendisini Levon isimli Ermeni asıllı bir kişiyle tanıştırdığını, birlikte birkaç defa Amerika'ya gittiklerini, bu ziyaretlerden birinde Sezgin Baran Korkmaz'ın kendisine "sen otelde kal biz Levonla Pensilvanya'ya gidip hocaefendiyi ziyaret edip geleceğiz" dediğini, bu ziyaretin 15 Temmuz darbe girişiminden sonra olduğunu, ertesi gün Levon'la birlikte Sezgin Baran Korkmaz'ın döndüğünü, FETÖ'nün sarayında ve FETÖ liderinin yanında bazı kişilerin kendilerine Türkiye'de bir hava yolu şirketi satın almalarını söylediğini beyan ve iddia etmiştir. Yer, zaman, kişi vb nesnel unsurları belirtilmek suretiyle Sezgin Baran Korkmaz'ın FETÖ üyesi olduğu iddia olunan, söz konusu ihbar dilekçesine istinaden açılan soruşturma dosyasının celbini talep ederiz. Bu sayede Müvekkil'e yapılan kumpasın FETÖ'nün bitmek bilmeyen kumpaslarından biri olup olmadığı da anlaşılacaktır.

29.    YUKARIDA BAHSİ GEÇEN ALACAK DAVASI VE CEZA DAVASI KAPSAMINDAKİ İDDİA VE SAVUNMALARIMIZIN SAYIN SAVCILIK TARAFINDAN İNCELENMESİNİ TALEP EDERİZ. İLGİLİ DOSYA İÇERİKLERİNİN İNCELENMESİ İŞBU SORUŞTURMA BAKIMINDAN VE MÜVEKKİLE NASIL BİR KOMPLO KURULDUĞUNUN ANLAŞILMASI BAKIMINDAN HAYATİ ÖNEM ARZ ETMEKTEDİR.

30.    MÜVEKKİL'İN İYİ NİYETLİ OLARAK HİSSE DEVİR SÖZLEŞMESİ KAPSAMINDAKİ BORÇLARINI İFA ETMESİNE RAĞMEN, KURGUSAL OLARAK BİR SENARYO YARATILMIŞ VE MÜVEKKİL'İN ŞAHSINA VE MALVARLIĞINA MADDİ VE MANEVİ SALDIRILAR YAPILMAYA BAŞLANMIŞTIR. HEM HUKUKEN, HEM DE BASIN YOLUYLA İŞLEMEDİĞİ SUÇ İSNATLARINA MARUZ KALAN MÜVEKKİL'İN ASIL KENDİSİ DOLANDIRILMIŞTIR VE NİTELİKLİ DOLANDIRICILIK TEŞKİL EDEN EYLEMLER HALEN DEVAM ETMEKTEDİR.

B- ŞÜPHELİLERİN BİR KISMININ ÖRGÜT HALİNDE HAREKET ETTİĞİNİ GÖSTEREN VAKIALAR

31.    İlk bakışta Bugaraj tarafından açılan dava ve soruşturmalar hakların kullanımı gibi gözükse de, esasında arka planına bakıldığında Müvekkil'in itibarını sarsmak, asılsız iddialar ile haksız kazanç elde etmek ve malvarlığına el koymak amacı taşıyan, suç ve hakkın kötüye kullanılmasını teşkil eden eylemlerden başka bir şey değildir. Müvekkil kötü niyetli bir organizasyonun oyunu içerisinde kalmıştır ve bu kapsamda haksız olarak malvarlığına el kondurulmaya, haksız bedeller kendisinden tahsil ettirilmeye çalışılmaktadır. AÇILAN DAVA VE SORUŞTURMALAR DA BU ORGANİZASYONUN KULLANDIĞI BİR ARAÇTIR.

Bu hareketlerin arka planını ve ayrıntılarını Sayın Savcılığınıza aşağıda ayrıntıları ile sunarız:

8



Hergüner Bilgen Özeke

32.     Müvekkil'in Borajet hisselerinin tamamını devralan Bugaraj'ın tek hissedarı Bukombin Bilişim ve Teknoloji Anonim Şirketi'dir ("**Bukombin**").   Bukombin SBK Holding Türkiye tarafından 2015 yılında kurulmuştur. Bukombin'in kuruluşu ve 29 Aralık 2016'da Bugaraj'a olan hisse devri döneminde Bukombin'in tek yönetim kurulu üyesi SBK Holding Türkiye'dir. Ancak ticaret sicil kayıtlarından anlaşıldığı üzere pay devri gerçekleştirilmiş ve 26 Mayıs 2017 tarihi itibariyle tek pay sahibi Kamil Feridun Özkaraman olmuştur. Kamil Feridun Özkaraman aynı zamanda yönetim kurulu başkanı sıfatını almıştır.

33.     SBK Holding Türkiye de 8 Mart 2013 tarihinde 10.000.000 TL sermaye ile İstanbul'da kurulmuş olup, tek ortağı ve kurucu hissedarı, tek yönetim kurulu üyesi de Sezgin Baran Korkmaz'dır. Sezgin Baran Korkmaz aynı zamanda Hisse Devir Sözleşmesi'ni Bugaraj adına Garantör olarak imzalayan kişidir.

34.     Basında yer alan haberlerde Bugaraj'ın hisse devri dönemindeki nihai sahibi SBK Holding Türkiye'nin faaliyet konusunun **"iflasta ve icrada olan, üretim yapamayan ya da işçisine maaş ödeyemeyen krizdeki şirketleri satın almak"** olduğu açıkça belirtilmiştir. Sezgin Baran Korkmaz'ın ifadelerine göre söz konusu haberde ve SBK Holding Türkiye'nin kendi internet sitesinde yer alan kesitleri Sayın Savcılığınız dikkatine sunarız:

> *"Korkmaz'ın deyimiyle 'ölü fiyatına' satın aldığı bu batık veya batışın eşiğindeki şirketler önce bankalara olan borçlarından arındırılıyor. İşçiye maaşları ödeniyor ve tekrar üretime geçiriliyor. Ardından da faal bir şirket olarak satılıyor. SBK Holding Yönetim Kurulu Başkanı Sezgin Baran Korkmaz 1998 yılında yerli şirket olarak başladıkları bu işte daha sonra Amerikalı yatırım fonlarıyla batık şirketleri alarak yollarına devam ettiklerini söyledi. Korkmaz önceki akşam ise ilk defa bir İngiliz yatırım fonuyla anlaştıklarını, satın alma veya büyük ortak olmak suretiyle krizdeki şirketlere yatırım yapacaklarını açıkladı. Sezgin Baran Korkmaz ve işbirliği yaptığı İngiliz fonu AIM CEO'su Ana Cukic Armstrong ile birlikte İstanbul'da gazetecilerle sohbet toplantısında biraraya geldi."[3] [EK 15]*

> *"Geliştirdiği başarılı projeler ile sonuç odaklı yaklaşımı yenilikçi bir platformda Türkiye'de faaliyet gösteren topluma ve ekonomiye değer katan, finansal olarak büyümeyi kendi öz kaynakları ile sağlayamayan firmalara yatırımlar yaparak bu firmaların kendi sektörlerinde lider konuma gelmelerini sağlamaktadır."[4] [EK 16]*

35.     SBK Holding Türkiye'nin her ne kadar faaliyet konusu yukarıda belirtildiği şekilde olsa da, devredilen şirketler bakımından bunun tam aksi gerçekleştirilmiş, şirketlerin değeri düşürülmüş, piyasaya borçları ödenmemiş. İşçi çıkarımları yapılmıştır.

36.     Yine SBK Holding Türkiye yönetim kurulu başkanı Sezgin Baran Korkmaz'ın bu hususta yaptığı röportaj ve konuşmalara ilişkin video kayıtlarını da Müvekkil aleyhine söylenen hususları kabul anlamına gelmeksizin Sayın Savcılığınıza sunarız. [EK 17- **SBK Holding Türkiye'nin Faaliyet Konusuna İlişkin Sezgin Baran Korkmaz'ın Açıklamalarını İçeren Video Kayıtları**]

37.     İlgili videolarda Sezgin Baran Korkmaz tarafından "Distressed Asset Management" olarak nitelendirilen faaliyetin. Mormonlar tarafından finanse edildiği belirtilmektedir. İlgili Mormon mensubunun Jacob Ortell Kingston olduğu da bu videolarda Sezgin Baran Korkmaz tarafından belirtilmektedir.

---

[3] SBK Holding Türkiye'nin İflas Eden Şirketleri Satın Aldığına Dair Haber http://www.hurriyet.com.tr/ingiliz-fonu-yanina-aldi-fabrika-avina-cikti-28597180
[4] http://www.sbkholding.com.tr/tr-TR/sbk_holding/1/19

Hergüner Bilgen Özeke

38.     Öte yandan belirtmek gerekir ki. SBK Holding Türkiye'nin arkasında Kaliforniya'da SBK Holdings USA. Inc. ("SBK Holding ABD") adında bir şirket daha bulunmaktadır. Bu şirket 6 Aralık 2013 tarihinde kurulmuş olup, hissedarları Levon Termendzhyan, Edgar Sargsyan ve George Termendzhyan'dır. Buna ilişkin ticaret sicil kayıtlarını ve Sezgin Baran Korkmaz'ın Forbes dergisine verdiği röportaj çerçevesinde çıkartılan yazıyı ekte sunarız. **[EK 18- İlgili Ticaret Sicil Kaydı ve Forbes Dergisi Yazısı]**. Yukarıda bahsi geçen bu kişilerden bazıları hakkındaki suç isnatlarına ilişkin bilgi ve haberleri Sayın Savcılığınıza sunarız. **[EK 19- Suç İsnatlarına İlişkin Deliller]** Bu çerçevede belirtmek gerekir ki. Ermeni asıllı Levon Termendzyan hakkında ABD'de yürütülen dava ve soruşturmalarda kendisini temsil eden avukat Mark Gregos aynı zamanda Los Angeles'da ASALA örgütü tarafından katledilen merhum Başkonsolos Orhan Arıkan'a suikast düzenleyen teröristi temsil eden ve Türkiye'ye karşı 1915 Ermeni olayları nedeniyle ABD'de başlatılan bir kısım davaları açan avukattır. **Şüphelilerin bir kısmının Ermeni asıllı olmaları ve hatta Ermeni lobisi içinde önemli bağlantılarının olması da göz önünde bulundurulduğunda, Müvekkil'in içerisinde kaldığı durumun en vahim boyutlarından birinin Müvekkil'in yukarıda 5 nolu paragraf altında ayrıntılarını açıkladığımız Ermeni soykırımı iddialarına karşı duruşuna bir darbe vurulmak istenmesi olduğu anlaşılmaktadır.**

39.     Ayrıca belirtmek isteriz ki. Levon Termendzyan'ın Amerika Birleşik Devletlerinde ismini Lev Aslan Dermen olarak değiştirdiği öğrenilmiş olup, Türk Vatandaşlığı alma girişimlerinde bulunduğuna ilişkin duyumlar alınmaktadır. Ekte Amerika Birleşik Devletleri'ndeki isim değişikliğine ilişkin belgeyi Sayın Savcılığınıza sunarız. Bu değişikliğin Amerika Birleşik Devletleri'nde kendisi tarafından işlenen bir suçtan kaçma amacıyla gerçekleştirildiğine dair de duyumlar alınmaktadır. **[EK 20– İsim Değişikliği Belgesi]**

40.     SBK Holding Türkiye'nin bir dönem internet sitesinde yer alan bilgilerde yurtdışındaki aynı unvanlı şirketin ortaklarından olan Levon Termendzhyan, Jacob Ortell Kingston ve Sezgin Baran Korkmaz'ın SBK Holding ABD yönetim kurulu üyeleri olduğu belirtilmiştir.

41.     Jacob Ortell Kingston aynı zamanda Türkiye'de kurulu Mega Varlık Yönetim A.Ş.'nin kurucu ortağıdır. **[EK 21– İlgili Ticaret Sicil Gazeteleri]**

42.     37. paragrafta bahsi geçen videolarda, Sezgin Baran Korkmaz bu faaliyetleri yaparken arkasında Ekim Alptekin'in yer aldığını belirtmiş ve kendisinden "Ekim Abi" olarak bahsetmiştir.

43.     **Burada görülmektedir ki, bir yandan SBK Holding Türkiye borca batık durumdaki şirketleri alıp "iyileştirirken" esasen kötüleştirmekte, öte yandan SBK Holding Türkiye'nin organik bağ içerisinde olduğu Mega Varlık Yönetim A.Ş. aynı şirketlerin banka kredilerini devir almakta ve bu şekilde menfaat elde etmektedir.**

44.     Mega Varlık Yönetim A.Ş. için Soner Yalçın'ın Sözcü Gazetesi'nde 31 Mart 2017 tarihli ve Maskeli Balo başlıklı yazısında:

*"Batıda bu şirketlere akbaba deniyor. çek senet mafyasının yasal hali. Banka finans kuruluşlarının batık kredilerini alıp borçluların boğazına yapışıyorlar. Bizim akbaba en son Bodrum Kervansaray Oteli aldı. Mega Varlık asıl sahibi ABDli Jacob Ortel Kingston idi. Türkiye'nin notunu düşüren kredi derecelendirme kuruluşu JCR'nin bu akbaba şirketin notunu kısa sürede A'ya kadar yükseltmesi tuhaf mı? Değil. Küresel Dayanışma!"*

denilmektedir.

Hergüner Bilgen Özeke

**45.** Şüphelilerden Kamil Feridun Özkahraman ise SBK Holding Türkiye'nin tüm yatırımlarında üst düzey görevler yürütmekte, aşağıda C bölümünde açıklanacağı üzere bunların karar mekanizmalarında etkin bir rol oynamaktadır.

## C- BU ÖRGÜT AYNI VEYA BENZER KURGUYU BAŞKA OLAYLARDA DA SERGİLEMİŞTİR – KERVANSARAY OTEL ÖRNEĞİ

**46.** Şüphelilerden Kamil Feridun Özkaraman SBK Holding Türkiye'nin iştirakleri ve bağlı ortaklıkları bünyesinde yönetim ve hissedar sıfatına sahip bir kişi olup, Sezgin Baran Korkmaz ile yakın ilişki içerisindedir.

**47.**    Kamil Feridun Özkaraman'ın organizasyon içerisindeki yerini aşağıda Sayın Savcılığınıza sunarız:

(i)    **Borajet Havacılık Taşımacılık Uçak Bakım Onarım ve Ticaret Anonim Şirketi:** Müvekkil'in hisselerini devretmesini müteakip, 30 Aralık 2016 tarihli Yönetim Kurulu Kararı ile Kamil Feridun Özkaraman üç yıl süre ile yönetim kurulu üyesi olarak seçilmiş ve kendisine şirketi temsil ve ilzam yetkisi verilmiştir. Ardından 30 Mart 2017 tarihli yönetim kurulu kararı ile de genel müdür olarak atanmıştır. **[EK 22- Yönetim Kurulu Kararları]**

(ii) **Bukombin Bilişim ve Teknoloji Anonim Şirketi:** Bu şirket Bugaraj'ın tek hissedarıdır. Bu şirketin tek paysahibi kurucu ortağı SBK Holding Türkiye'dir. Şirket 2015 yılında kurulmuştur. Kuruluş ve hisse devri döneminde yönetim Kurulu üyesi SBK Holding Türkiye'dir. Ancak ticaret sicil kayıtlarından anlaşıldığı üzere pay devri gerçekleştirilmiş ve 26 Mayıs 2017 tarihi itibariyle tek pay sahibi Kamil Feridun Özkaraman olmuştur. Kamil Feridun Özkaraman aynı zamanda yönetim kurulu başkanı sıfatını almıştır. **[EK 23- İlgili Ticaret Sicil Kayıtları]**

(iii) **Mega Varlık Yönetim A.Ş.:** Her ne kadar sicil kayıtlarında Kamil Feridun Özkaraman'ın bu şirkette doğrudan yönetim kurulu üyesi veya pay sahibi olduğunu tespit etmemiş olsak da, kendisi bu şirketin kurucu ortağı Jacob Ortell Kingston'ın vekili olarak pek çok işlem yapmıştır. **[EK 24 - Kamil Feridun Özkaraman'ın Jacob Ortell Kingston'ın Vekili Olduğunu Gösterir Belge ve Vekâletnameler]**

(iv) **Noil Yatırım İnşaat Turizm Sanayi ve Ticaret A.Ş:** Levon Termendzyhyan, Friedrich Grosz Roell ve Mehmet Özbey tarafından 23 Ekim 2012'de kurulmuştur. Şirketin ilk Yönetim Kurulu Başkanı Levon Termendzyhyan, Genel Müdürü Sezgin Baran Korkmaz'dır. Şirketin daha sonra 28 Aralık 2012 tarih ve 2012/5 no.lu Yönetim Kurulu Kararı ile Kamil Feridun Özkaraman ın geniş şekilde münferiden temsil ve ilzam etmek üzere yetkili Genel Müdür olarak atanmış ve 28 Ocak 2013 tarih ve 2013/2 no.lu Yönetim Kurulu Kararı ile şirketin 28 Ocak 2013 tarihinden itibaren tek pay sahipli anonim şirket olarak devam etmesine karar verilmiş ve aynı kararda tek pay sahibinin Kamil Feridun Özkaraman olduğu belirtilmiştir.[5] **[EK 25– İlgili Ticaret Sicil Kayıtları]**

---

[5] ABD'nin Utah Eyalet Sekreterliği'nin kamuoyunun erişimine açık resmi kayıtlarına göre Washakie Renewable Energy LLC, 03.06.2006 tarihinde kurulmuştur. Şirket Genel Müdürü (CEO) Jacob Ortell Kingston'dır. ABD'nin Kaliforniya Eyalet Sekreterliği'nin kamuoyunun erişimine açık resmi kayıtlarına göre Noil Energy Group. INC. 20.06.2007 tarihinde kurulmuştur. Genel Müdürü Daniel McDyre, Şirket Sekreteri George Termendzhyan Finans Müdürü Anne Termendzhyan ve Şirket Direktörü ise Levon Termendzhyan'dır. ABD'nin Utah Eyalet Sekreterliği'nin kamuoyunun erişimine açık resmi kayıtlarında yer alan Washakie Renewable Energy LLC'ye ilişkin şirket kayıtlarına aşağıda yer alan internet adresi üzerinden erişmek mümkündür (Erişim tarihi 11.09.2017):  https://secure.utah.gov bes details.html?entity=6138397-0160  https://www.epa.gov/enforcement/washakie-renewable-energy-llc-stipulation-settlement-and-order-notice-violation-and) (ABD'nin Kaliforniya Eyalet Sekreterliği'nin kamuoyunun erişimine

11



Hergüner Bilgen Özeke

(v) Kervansaray Yatırım Holding A.Ş: Kamil Feridun Özkaraman bu şirkette de, 21 Temmuz 2015 tarihli muvafakatname ile şirket yönetim kuruluna seçilmeyi kabul etmiş ve bu husus 28 Ağustos 2015 tarihli Genel Kurul'da açıklanarak karara bağlanmıştır. Kendisi 2 Haziran 2017 tarihinde istifasını sunmuştur. **[EK 26- İlgili Ticaret Sicil Kayıtları]**

48.     Yukarıda detayları verilen ve haklarında şikayette bulunulan söz konusu şirket yetkilileri tarafından Borajet ve dolayısıyla hisse devrini gerçekleştiren Müvekkil üzerinde oynanan oyun ve gerçekleştirilen suç konusu eylemler aynı zamanda başka şirketler hakkında da gerçekleştirilmiştir. Nitekim, Kamil Feridun Özkaraman'ın yönetim kurulu üyeliği yaptığı dönemde Kervansaray Yatırım Holding A.Ş. ("Kervansaray") bir takım usulsüzlükler ile anılmıştır. Öncelikle, Kervansaray Bodrum Oteli, 4 Ağustos 2015 tarihinde SBK Holding Türkiye'ye 10 yıllığına kiraya verilmiştir ve bu kira sözleşmesinin neticesinde SBK Holding Türkiye Kervansaray Bodrum Oteli'ne 27.960.000 TL değerinde 10 senelik kira şerhi işletmiştir. **[EK 27- Kervansaray Yatırım Holding A.Ş. 2 Aralık 2016 tarihli KAP açıklaması]**

49.     Kervansaray tarafından 9 Mart 2016 tarihinde yapılan özel durum açıklamasında ise şirketin kreditör bankalarından Odea Bank A.Ş.'nin şirketten olan 29.505.037 TL ve 1.104.262 Euro'luk alacağını, Mega Varlık Yönetim A.Ş'ye Devir/Temlik ettiği ve Mega Varlık Yönetim A.Ş'nin bu cihetle iki ayrı ilamsız takip başlattığı duyurulmuştur. 7 Aralık 2016 tarihli açıklamada bahsi geçen alacağın teminatı olan Kervansaray Bodrum Oteli'nin Mega Varlık Yönetim A.Ş.'nin talebi üzerine 94.239.951 TL bedelle satışa çıkarıldığı ifade edilmiştir. **BU OLAY, AYNI AKTÖRLERLE BORAJET'TE DE YAŞANMIŞTIR.** [EK 28- Kervansaray Yatırım Holding A.Ş. 9 Mart 2016 ve 7 Aralık 2016 tarihli KAP açıklamaları]

**Burada Müvekkil'e karşı Odea Bank A.Ş. ve Mega Varlık Yönetim A.Ş.'nin oluşturduğu yapının aynısının görüldüğünü Sayın Savcılığınızın dikkatine getiririz.**

50.     Sürecin devamında Kervansaray Bodrum Oteli 21 Mart 2017 tarihinde 47.150.95,77 TL bedelle Mega Varlık Yönetim A.Ş.'ye ihale yoluyla satılmıştır. Ancak, Sermaye Piyasası Kurulu'nun 23 Mart 2017 tarih ve 2017/12 sayılı Bülteni'nde yer verildiği üzere Kurul Karar Organı'nın 23 Mart 2017 tarih ve 13/451 sayılı kararı gereğince Bodrum İcra Hukuk Mahkemesi'nde 27 Mart 2017 tarihinde İİK 134. Madde uyarınca ihalenin feshi davası açılmıştır:

> *"Kurulumuzun 20.03.2017 tarihli başvurusuyla, Şirket'in malvarlığının SPKn'nun 21. maddesi kapsamında azaltılmasının önlenmesini teminen, SPKn'nun 92/1-(a) ve (b) maddeleri ve 6100 sayılı Hukuk Muhakemeleri Kanunu'nun 389 ve devamı maddeleri çerçevesinde, Şirket'e ait Kervansaray Bodrum Oteli'nin Bodrum 2'nci İcra Müdürlüğü tarafından 21.03.2017 tarihinde yapılacak satışının durdurulması için tedbir talepli olarak ayrıca davalılar arasında akdedilen söz konusu otelin kiralanmasına ilişkin 04.08.2015 tarihli kira sözleşmesinin de muvazaalı olması nedeniyle sözleşmenin geçersizliğinin tespitine karar verilmesi talepleriyle İstanbul 7'nci Sulh Hukuk Mahkemesi nezdinde de E.2017/264 sayılı dosya üzerinden dava açılmıştır.*
>
> *Söz konusu Mahkeme'nin 21.03.2017 tarih ve E.2017/264 sayılı kararıyla Kurulumuzun ihtiyati tedbir talebinin reddine karar verilmiştir.*
>
> *Şirket'in 22.03.2017 tarihli özel durum açıklaması ile Bodrum 2'nci İcra Dairesi tarafından 21.03.2017 tarihinde gerçekleştirilen ihale sonucunda, Kervansaray Bodrum Oteli'nin*





Hergüner Bilgen Özeke

*47.150.9⁻5.⁷⁷ TL bedel ile Mega Varlık Yönetim A.Ş.'ye satışının gerçekleştiği kamuya açıklanmıştır.*

**<u>Söz konusu satışın iptali için ivedilikle girişimlerde bulunulması yönünde Şirkete talimat verilmesine, Mega Varlık Yönetim A.Ş.'nin iş ve işlemlerinin incelenmesini teminen BDDK'ya bildirimde bulunulmasına,</u>** *Şirket ortaklarının da haklarını aramak amacıyla yasal yollara başvurabilecekleri hususunda kamuoyunun bilgilendirilmesine Kurulumuzca karar verilmiştir."*

**[EK 29 - Kervansaray Yatırım Holding A.Ş. 27 Mart 2017 tarihli KAP açıklaması ve Sermaye Piyasası Kurulu'nun 23 Mart 2017 tarih ve 2017/12 sayılı Bülteni]**

51.     Öte yandan, Kervansaray Yatırım A.Ş'nin 26 Eylül 2017 tarihinde yapılan 2015 ve 2016 yılı Olağan Genel Kurul Toplantısı tutanağında:

> *"Ayrıca Zübeyir Öztopal söz alarak şirket sürekli zarar ediyor olmasına karşın büyük hissedarlar şirketten aldıkları bedelleri şirkete ödememişler, yine bankadan alınan krediler hakkında yüksek faizi ödenmiştir, bunlar hakkında bilgi istiyoruz, ayrıca **SBK Holding'e yüksek faiz oranla borçlanılmasına ilişkin açıklama istiyoruz,** dedi."*

> *Zübeyir Öztopal söz alarak SBK Holding'e borç karşılığı verilen otelin iade alınması söz konusuydu, bu konuda bilgi verilmedi bilgi verilmesi temennimizdir, dedi. Şirket adına toplantı başkanından söz alan Zuhal Tılhaslı, Bodrum Oteli ile ilgili olarak Mega Varlık ile görüşmeler devam etmektedir, yakında sonuçlanacağını ümit ediyoruz, sonuçlandığında . KAP' ta gerekli bilgilendirme yayınlanacaktır, dedi.*

ifadeleri yer almaktadır.

52.     Bu kapsamda en dikkat çekici noktalardan biri ise, hali hazırda Borajet'in sahibi olan Kamil Feridun Özkaraman hakkında Sermaye Piyasası Kurulu'nun ("SPK") yayınladığı çeşitli bültenlerde yer alan suç duyurularıdır. SPK'nın Kamil Feridun Özkaraman'ın işlediğini iddia ettiği ve bir kısmı Mega Varlık Yönetim A.Ş. ile de bağlantılı olan ekonomik suçlar aşağıdaki şekildedir:

> *"Mevcut alacaklar tahsil edilememesine rağmen, karşılığında hiçbir menfaat temin edilmeksizin ilişkili taraf Komak Isı Yalıtım Sistemleri Sanayi ve Ticaret Ltd. Şti.'ye finansman sağlanması sonucunda oluşan 4.794.292.87 TL tutarındaki **alacağın 19.04.2017** tarihinde tahsilinden vazgeçilmesi ve bu şekilde Şirket'in 4.794.292,87 TL zarara uğratılması"*

> *"İstanbul 10. İcra Dairesi nezdindeki dosyada Mega Varlık Yönetimi AŞ tarafından fazladan talep edilen 7.348.336 TL ve 49.261 EURO'ya ve Odea Bank AŞ ile imzalanan kredi sözleşmesine aykırı olarak döviz ve TL cinsinden borçlara işletilen %44,24 temerrüt faizine. 2004 sayılı İcra ve İflas Kanunu uyarınca gerekli itirazlarda bulunulmaması sebebiyle Şirket'in İstanbul 10. İcra Dairesi nezdindeki dosyada 21.03.2017 tarihi itibarıyla haksız olarak 26.949.109.88 TL fazla borcu üstlenmesi"*

> *"Kasıtlı olarak gerçeğe aykırı hesap açılması, kayıtlarda muhasebe hilesi yapılması ve muhasebe hilelerini gerçeğe uygun gösterme adına bağlı ortaklıklar olan Anteks Tekstil ve Antalya Koleji arasında fiktif faturalar kesilmesi"* **[EK 30– Kamil Feridun Özkaraman Hk. Suç Duyurularına İlişkin SPK Bültenleri]**

13





Hergüner Bilgen Özeke

53. Ayrıca belirtmek gerekir ki. bahsi geçen Komak Isı Yalıtım Sistemleri Sanayi ve Ticaret Ltd. Şti de Sezgin Baran Korkmaz tarafından kurulmuş iken, pay devri ile Kamil Feridun Özkaraman'a devredilmiştir. [EK 31 - İlgili Ticaret Sicil Gazeteleri]

54. Bu kapsamda Kamil Feridun Özkaraman'ın çeşitli şirketler aracılığıyla Sezgin Baran Korkmaz ve Jacob Ortell Kingston ile birlikte hareket ettiği ve bu-hareketlerin sonucunda farklı şirketlere yönelik olarak suç isnatlarının olduğu ortadadır.

55. **Bu suçlar ve ilişkilere bakılınca esasen Müvekkil'in bila bedel bir havayolu şirketler grubunu devrettiği, devre ilişkin tüm yükümlülükleri yerine getirdiği, hileli bir davranışta bulunmadığı ortada iken, kendisi hakkında gerçeğe aykırı bir algı yaratılarak, üzerine mesnetsiz suçlar atılarak, Müvekkil'in aldatıldığı ve dolandırıldığı ortadadır.**

## D- TEHDİT SUÇUNA İLİŞKİN MADDİ VAKIALAR

56. <u>Diğer yandan şüphelilerden Sezgin Baran Korkmaz, Müvekkilimizi ve eski çalışanlarını sürekli olarak tehdit etmektedir.</u>

57. Yukarıda açıkladığımız eylemlerin yanında. eş zamanlı olarak, Bugaraj ve hisse devir dönemindeki nihai sahibi Sezgin Baran Korkmaz da dahil olmak üzere, şüphelilerin bu organize suç hareketleri bir silsile ile devam etmiştir. Nitekim, Müvekkil'e karşı haksız davalar açılmasına sebep olmakla kalınmamış, aynı zamanda Sezgin Baran Korkmaz Müvekkil'e ve çalışanlarına tehdit içerikli mesaj ve hareketlerde bulunmuştur. Sezgin Baran Korkmaz tarafından Müvekkil'e gönderilen tehdit içerikli mesajların bir kısım örneklerini aşağıda Sayın Savcılığınıza sunarız:

| | | |
|---|---|---|
| *Sizin bana bu yaşattık larımızı yanınıza bırakmayacağım sayın ayaslı* | 2 Mart 2017 öğleden sonra 4:02:25 | +90 532 268 43 44 |
| *Ben burda senin borçlarınla uğraşırken, sen keyfine bakıyor sun. Senle hesaplaşacağız dolandırıcı ayaslı* | 6 Mart 2017, öğleden sonra 2:57:53 | +90 532 268 43 44 |
| *Bugün vergi dairesine gidip, vergi borcunuzdan dolayı evlerinizin üzerine haciz koyduracağım* | 7 Mart 2017, akşam 10:50:41 | +90 532 268 43 44 |
| *Yarına kadar bekleğeceğim eyer, bir sonuç çıkmazsa 83 mil dolarlık bilanco farklılık davası açıp, bütün mallarınıza tedbir koyacağım.* | 7 Mart 2017, akşam 10:52:50 | +90 532 268 43 44 |
| *Seni tüm dünyaya rezil edecem* | 9 Mart 2017, sabah 11:25:18 | +90 532 268 43 44 |
| *Senin malına göz dikmişiz demek, ulan şerefsiz sen kimsin senin malına göz koyalım* | 9 Mart 2017, sabah 11:26:49 | +90 532 268 43 44 |
| *Senin gerçek yüzünü tüm Türkiye ye göstereceğim* | 9 Mart 2017, sabah 11:27:21 | +90 532 268 43 44 |
| *Senin fetö ye yaptığın bağışları tek tek çıkaracağım ortaya* | 9 Mart 2017, sabah 11:31:59 | +90 532 268 43 44 |
| *Ama sana şeref sözü burnundan fitil fitil gerireceğim* | 9 Mart 2017, sabah 11:33:30 | +90 532 268 43 44 |



Hergüner Bilgen Özeke

| | | |
|---|---|---|
| *Seni amerikada rezil edeceğim* | 9 Mart 2017, sabah 11:33:52 | +90 532 268 43 44 |
| *Senin burnundan fitil fitil gerirecem* | 9 Mart 2017, sabah 11:36:11 | +90 532 268 43 44 |
| *Aşağlık herif, senin şirketin batık değilmiğdi.* | 9 Mart 2017, sabah 11:36:50 | +90 532 268 43 44 |
| *Benmi batırdım* | 9 Mart 2017, sabah 11:36:57 | +90 532 268 43 44 |
| *Seni vicdansız aşağlık herif* | 9 Mart 2017, öğleden sonra 12:02:40 | +90 532 268 43 44 |
| *Size tafsiyem daha fazla rezil olmadan bu işi çözmeniz* | 22 Mart 2017, sabah 7:17:58 | +90 532 268 43 44 |
| *Amerikaya geleceğim yakında sizi ordada mahkemeğe vereceğim, beni burda dolandırdınız diye* | 22 Mart 2017, sabah 7:19:32 | +90 532 268 43 44 |
| *Beni kim dolandırdıysa herkes hesabını verecek* | 22 Mart 2017, sabah 7:23:54 | +90 532 268 43 44 |
| *Fatih ve zahide başta* | 22 Mart 2017, sabah 7:24:07 | +90 532 268 43 44 |
| *Sana bir gün müsade, ya namusunla ortaya cıkıp gereğini yaparsın, yada bundan sonra olacaklardan sen sorumlusun* | 21 Nisan 2017, sabah 3:51:55 | +90 532 268 43 44 |
| *Senin dolandırıcı olduğunu az kaldı cıkaracam ayaslı* | 27 Nisan 2017, sabah 2:13:04 | +90 532 268 43 44 |
| *Sen olsen emin ol cocuklarından alacam* | 27 Nisan 2017, sabah 2:14:45 | +90 532 268 43 44 |
| *Avuk kızın yada yönetmen oğlun ödeyecek* | 27 Nisan 2017, sabah 2:15:23 | +90 532 268 43 44 |
| *Yakında oraya geliyorum az kaldı sen rahat ol* | 27 Nisan 2017, sabah 2:15:47 | +90 532 268 43 44 |
| *Seni herkese tüm dünyaya belgeleri ile rezil edeceğim* | 27 Nisan 2017, sabah 2:18:01 | +90 532 268 43 44 |
| *Bakalım türkiyeye gelecek yüzün olabilecekmi* | 27 Nisan 2017, sabah 2:18:50 | +90 532 268 43 44 |
| *Zahide kaşarı size kefildi şimdi ortada yok* | 27 Nisan 2017, öğleden sonra 2:56:34 | +90 532 268 43 44 |
| *Kacacak delik arayacaksınız sen ve eşin* | 27 Nisan 2017, öğleden sonra 4:25:22 | +90 532 268 43 44 |
| *Seni cezaevine sokacam* | 28 Nisan 2017, öğleden sonra 3:50:28 | +90 532 268 43 44 |
| *İşimi gücümü bıraktım, tek derdim beni dolandıran adamı cezaevine sokmak* | 28 Nisan 2017, öğleden sonra 3:51:09 | +90 532 268 43 44 |
| *Zahide dolandırıcısıda* | 28 Nisan 2017, öğleden sonra | +90 532 268 43 44 |

15

Hergüner Bilgen Özeke

| | 3:51:59 | |
|---|---|---|
| *Kayaköy'e gidip senin gercek yüzünü anlatacam bu hafta(belgelerle* | 28 Nisan 2017, öğleden sonra 4:55:49 | +90 532 268 43 44 |
| *Beni on tane yabancı gazeteci aradı, Bekleyin dolandırıcılık davası açılsın size dosyayı tercüme edip yollayacağım dedim* | 8 Mayıs 2017, öğleden sonra 1:00:30 | +90 532 268 43 44 |
| *Az kaldı* | 8 Mayıs 2017, öğleden sonra 1:00:34 | +90 532 268 43 44 |
| *ODTÜ deki panolara nasıl dolandırıldığımı anlatan broşürler yaptırıyorum. Artık bilim adamlığının dışındaki vergi kaçakçısı ve dolandırıcılık tarafınızda görsünler* | 8 Mayıs 2017, öğleden sonra 1:02:25 | +90 532 268 43 44 |
| *Amerika'da kızınızın olduğunu Ünüversite yede durumu anlatan bir yazı ve belge yolluyorum.* | 8 Mayıs 2017, öğleden sonra 1:03:14 | +90 532 268 43 44 |
| *Eski genel müdür Kadir Peker in kapısına icra gidince oda konuşacaktır elbet* | 8 Mayıs 2017, öğleden sonra 5:14:06 | +90 532 268 43 44 |
| *Gelin Benin mağduriyetimi çözün. Bende sizle beraber sizi dolandıran müdürlerinize hesabını sizle beraber sorayım* | 8 Mayıs 2017, öğleden sonra 5:22:59 | +90 532 268 43 44 |
| *Sizin beni dolandırmanızın hesabını sizden Sorana kadar, Allah ım bana ömür verirsin, bunu sizin burnunuzdan fitil fitil getireceğim* | 6 Temmuz 2017, öğleden sonra 5:37:59 | +90 532 268 43 44 |

58.    Yukarıdaki mesajlardan da açıkça görülebileceği üzere, Müvekkil uzunca bir dönem Bugaraj'ın nihai sahibi olan Sezgin Baran Korkmaz'dan açıkça tehdit ve hakaret içeren mesajlar almaktadır.

59.    **Sezgin Baran Korkmaz'ın tehditleri sadece telefon ve yazışma üzerinden değil fiziki olarak da gerçekleşmiştir.** Sezgin Baran Korkmaz Müvekkil'in Taksimde yer alan ofisini arayarak tehdit ve hakaretler yağdırmış, ayrıca Borajet eski yönetim kurulu üyesi Zahide Üner'e ve Müvekkil'in avukatı Burhan Asaf Şafak'ın da aralarında bulunduğu çalışanlarına tehditler savurmuş, toplantılarda küfürler ve hakaretler etmiştir. Buna ilişkin bir kısım delilleri Sayın Savcılığınıza sunarız. **[EK 32- Sezgin Baran Korkmaz tarafından Müvekkil ve Çalışanlarına Baskı ve Tehdit Uygulandığı Hakaret-Edildiğine Dair Deliller]**

60.    Ayrıca Hisse Devri Sözleşmesi'ne ilişkin ihtilaflar kapsamında, Fatih Akol, Kamil Ekim Alptekin, Kamil Feridun Özkaraman, Zahide Üner ve Burhan Asaf Şafak'ın katıldığı 18 Mart 2017 tarihli toplantıda, Zahide Üner karşı tarafça saldırıya uğramıştır. Sezgin Baran Korkmaz çay bardağını ve su bardağını Zahide Üner'e fırlatmış, masaya vurup masanın camını kırmış ve Zahide Üner'in üstüne yürüyerek "Seni öldürürüm, *sinkaflı küfür* kızım" demiştir.



16

Hergüner Bilgen Özeke

61.    Sezgin Baran Korkmaz'ın Müvekkil'e gönderdiği mesajlarda ayrıca Borajet eski genel müdürü şüpheli Kadir Peker'e de Müvekkil aleyhine hareket etmesi ve suç uydurması için baskı uyguladığı belirtilmektedir. Nitekim. Kadir Peker de bu hususu doğrulamıştır. [EK 33- Kadir Peker'e Müvekkil Aleyhine Hareket Etmesi İçin Baskı Uygulandığına Dair Deliller]

62.    Bunların yanında Sezgin Baran Korkmaz herhangi bir şekilde davet edilmediği halde, Müvekkil'in Kandilli'de yer alan gayrimenkulüne 25 Şubat 2017 tarihinde eşi ve farklı bir bayan ile gitmiştir. Bununla yetinmeyen Korkmaz. 30 Temmuz 2017 tarihinde aynı yere tekrar gitmiş, bu defa güvenliğe içeri alınmaması yönünde kesin talimat verilmesi karşısında içeri giremermiştir. Bunun üzerine güvenliğe evi satın aldığını, birkaç gün içerisinde taşınacağını belirtmiştir.

## E- YALAN TANIKLIK VE ADİL YARGILAMAYI ETKİLEMEYE TEŞEBBÜS SUÇLARINA İLİŞKİN MADDİ VAKIALAR

63.    Şüphelilerden Sezgin Baran Korkmaz tarafından, İstanbul Cumhuriyet Başsavcılığı'nın 2017/68314 numaralı CBS Soruşturmasında ifade veren tanıklara da baskı uygulanmıştır. İfadelerin verildiği gün adliyede bizzat bulunan Sezgin Baran Korkmaz, Müvekkil aleyhine ifade verilmesini sağlamıştır. Bazı tanıklar ise kendi menfaatleri sebebiyle Müvekkil aleyhine ifade vermişlerdir. Nitekim. Sezgin Baran Korkmaz'ın çeşitli yollarla Şüphelilerden Fatih Akol'a karşı da şiddet uyguladığına ilişkin duyumlar alınmıştır. Sezgin Baran Korkmaz bunu Müvekkil'e attığı aşağıdaki mesajda da belirtmiştir:

| *Fatih bey ona yaptığımı fazlası ile hak etti* | 22 Mart 2017, sabah 7:17:58 | +90 532 268 43 44 |

64.    Soruşturma Dosyası kapsamında, Fatih Akol (Borajet Eski Yönetim Kurulu Başkanı ve Genel Müdürü). Tolga Üzümcü (Mali İşler Başkanı), Mehmet Ceylan Topal (Bora Jet Bakım'ın Genel Müdürü). Olcay Özbay (Bora Jet'te Bakımdan Sorumlu Genel Müdür Yardımcısı) ifade vermiştir. Bu kişiler Borajet'te hisse devri sonrası da çalışmaya devam etmişlerdir. Fatih Akol'un yönlendirmesi ve süreci yönetmesiyle Hisse Devir Sözleşmesi kapsamında devredilen şirketler hisselerinin Bugaraj'a satılması kararı verilmiştir. Bunun akabinde, bizzat Fatih Akol'un liderliğinde, müzakere süreci yönetilmiş, şirket mali tabloları Mali İşler Başkanı Tolga Üzümcü tarafından hazırlanmış ve hazırlanan bu mali tablolar Hisse Devir Sözleşmesi'ne ek yapılmış olmasına rağmen, bu kişiler uygulanan baskıyla sanki Müvekkil kendilerini mizanlarda sahtecilik yapmaya yöneltmiş gibi ifade vermişlerdir. [EK 34- Fatih Akol Tarafından Sürecin Yönetildiği ve Tolga Üzümcü Tarafından Hisse Devir Sözleşmesi Eklerinin Hazırlandığına İlişkin Yazışmalar]

65.    Yine önce tanık sıfatıyla ifadesi alınan ve sonra Bugaraj'ın isnatlarıyla sanık haline gelen Zahide Üner de aynı soruşturmada verdiği ifadede kendisine baskı uygulandığını belirtmiştir. Şüphelilerden Kamil Feridun Özkaraman da ayrıca Zahide Üner'e ifadesi konusunda baskı yapmaya çalışmıştır. [EK 35- İfade metni] [EK 36- Kamil Feridun Özkaraman Zahide Üner'e İfade Konusunda Baskı Uyguladığı Hakkında Mesaj]

66.    Bunların yanında Sezgin Baran Korkmaz'ın Müvekkil aleyhine yayınlattığı ve Müvekkil'in suçlu olduğuna dair hakkında verilmiş bir yargı kararı olmamasına rağmen, varmış gibi gösterilerek soruşturma gizliliğinin ihlal edildiği ve Müvekkil'in itibarının zedelendiği haberleri de bir kısım örnekleri aşağıda yer almak üzere ekte Sayın Savcılığınıza sunarız. [EK 37– Müvekkil'i Karalama Kampanyası İçinde Çıkartılan Diğer Haber Örnekleri]

17



Herguner Bilgen Özeke

*"Borajet'in patronu Sezgin Baran Korkmaz, Numberone Türk'te katıldığı radyo programında Borajet'in satış sürecine ve gelecekteki planlarına ilişkin bilgiler verdi. Korkmaz, önceki yönetimi iflas eden şirketi evrakta sahtecilik yaparak ayakta tutmakla suçlarken, "Giderde atmaları gereken her şeyi gelire atmışlar. Teknik olarak 2015-2016 yılında iflas eden şirkette lisans ellerinden gitmesin diye böyle bir sahtecilik yapmışlar. Denetim şirketleri durumu tespit etti. Dava hazırlığı yapıyoruz" ifadelerini kullandı"[6].*

*"Eski patrona dolandırıcılık davası*

*Bir süre önce uçuşlarına geçici olarak ara veren Borajet yönetimi şirketin eski sahibi hakkında suç duyurusunda bulundu SBK Holding Yönetim Kurulu Başkanı Sezgin Baran Korkmaz, "Borajet eski Genel Müdürü Kadir Peker, Yalçın Ayaslı ve eşi Serpil Ayaslı dahil herkesin yargılanması gerekirdi" dedi."[7]*

*"SBK Holding Yönetim Kurulu Başkanı Sezgin Baran Korkmaz, "Borajet eski Genel Müdürü Kadir Peker, Yalçın Ayaslı ve eşi Serpil Ayaslı dahil herkesin yargılanması gerekirdi" dedi."[8]*

*"Yeni Şafak Gazetesi'nden Murat Palavar'ın haberine göre, yapılan suç duyurusunda Borajet'in teknik olarak iflas ettiği iddia edildi. Şirketin giderlerin de gelir hanesine kaydedilerek usulsüzlük yapıldığı belirtildi."[9]*

67.   Nitekim Sezgin Baran Korkmaz Müvekkil'e gönderdiği ve basında ve çevrede Müvekkil ve ailesi aleyhine konuştuğunu itiraf da ettiği bir kısım mesajları da aşağıda iletiyoruz:

| | | |
|---|---|---|
| *Seni tüm dünyaya rezil edecem* | 9 Mart 2017, sabah 11:25:18 | +90 532 268 43 44 |
| *Her önüme gelene elimde sizin imzaladığınız sözleşmeği ve bugünkü durumu gösteriyorum* | 22 Mart 2017, sabah 7:17:20 | +90 532 268 43 44 |
| *Kayaköy'e gidip senin gercek yüzünü anlatacam bu hafta(belgelerle* | 28 Nisan 2017, öğleden sonra 4:55:49 | +90 532 268 43 44 |
| *ODTÜ'deki panolara nasıl dolandırıldığımı anlatan broşürler yaptırıyorum. Artık bilim adamlığının dışındaki vergi kaçakçısı ve dolandırıcılık tarafınızda görsünler* | 8 Mayıs 2017, öğleden sonra 1:02:25 | +90 532 268 43 44 |
| *Amerika'da kızınızın olduğunu Üniversite yede durumu anlatan bir yazı ve belge yolluyorum* | 8 Mayıs 2017, öğleden sonra 1:03:14 | +90 532 268 43 44 |
| *Beni on tane yabancı gazeteci aradı, Bekleyin dolandırıcılık davası açılsın size dosyayı tercüme edip yollayacağım dedim* | 8 Mayıs 2017, öğleden sonra 1:00:30 | +90 532 268 43 44 |

68.   Ayrıca alınan duyumlara göre Şüphelilerden Sezgin Baran Korkmaz, Kamil Ekim Alptekin ile birlikte, Mega Varlık Yönetim A.Ş.'nin sahibi olduğu İstanbul Boğazı'nda bir yalıda, 2017 yılının Temmuz – Ağustos aylarında basın mensuplarına bir davet vermiştir. Yalıyı kendi yalısı gibi lanse ederek, basın mensuplarına Müvekkil'in FETÖ ile bağlantısı olduğu ve illegal fiillerde bulunduğu şeklinde gerçeğe aykırı beyanlarda bulunmuştur. Bu fiiller adil yargılamayı etkileme suçunu

[6] http://www.turizmguncel.com/haber/borajet%27in-patronundan-eski-yonetime-sahtecilik-suclamasi-h31505.html
[7] http://www.yenisafak.com/ekonomi/eski-patrona-dolandiricilik-davasi-2652663 - http://uzmanpara.milliyet.com.tr/haber-detay/genel/eski-patrona-dolandiricilik-davasi/68298/
[8] https://www.haberler.com/borajet-yonetimi-eski-patrona-dolandiricilik-9574451-haberi/
[9] http://www.kokpit.aero/borajet-yalcin-ayasli-dava - http://www.airlinehaber.com/borajet-yonetimieski-patrona-dolandiricilik-davasi-acti/

18

Hergüner Bilgen Özeke

oluşturmaktadır ve medya mensupları vasıtası ile yanıltıcı bir kamuoyu oluşturması hedeflenmektedir.

## III.   İSNAD OLUNAN SUÇLAR

### 1- Nitelikli Dolandırıcılık (TCK m. 158 1. fıkra f-g-h bentleri)

69.    5237 Sayılı Türk Ceza Kanunu'nun ("TCK") "Dolandırıcılık" başlıklı 157. Maddesinin 1. fıkrası uyarınca *'Hileli davranışlarla bir kimseyi aldatıp, onun veya başkasının zararına olarak, kendisine veya başkasına bir yarar sağlayan kişiye bir yıldan beş yıla kadar hapis ve beş bin güne kadar adli para cezası verilir.'*

70.    Söz konusu maddenin devamında ise 'Nitelikli Dolandırıcılık' suçu düzenlenmiştir. 158. madde (f) bendi uyarınca Dolandırıcılık suçunun *"Bilişim sistemlerinin, banka veya kredi kurumlarının araç olarak kullanılması suretiyle işlenmesi'* halinde (g) bendi uyarınca da *"Basın ve yayın araçlarının sağladığı kolaylıktan yararlanmak suretiyle"* Nitelikli Dolandırıcılık suçu oluşmaktadır.

71.    Yine 158. maddenin (h) bendinde Dolandırıcılık suçunun *'Tacir veya şirket yöneticisi olan ya da şirket adına hareket eden kişilerin ticari faaliyetleri sırasında; kooperatif yöneticilerinin kooperatifin faaliyeti kapsamında'* işlenmesi halinde de Nitelikli Dolandırıcılık suçunun oluştuğu düzenlenmiştir.

72.    Bu kapsamda Müvekkil'e karşı sistematik bir şekilde birden fazla fiil ile ve birden fazla kişi tarafından nitelikli dolandırıcılık suçu işlenmiştir ve işlenmeye devam etmektedir. Yukarıda ayrıntılarıyla açıklanan bu fiiller şikâyetimize konu olarak saklı kalmak üzere: - Şikayet edilen kişilerce Müvekkil aleyhine başlatılan algı operasyonu ile sistematik hileli hareketlerde bulunulması ile Borajet'in değerinin düşürülmesi,

- Bu şekilde Müvekkil'in Borajet'i bila bedel devretmek durumunda bırakılması,

- Hisse Devir Sözleşmesi'nden kısa bir süre sonra, bu kişilerin kabul ettikleri hüküm ve şartlara uymayarak, inceledikleri mizanın sahteliğini kötü niyetle iddia etmeleri,

- Ardından batık şirketleri alarak geliştirmeyi faaliyet konusu edinen bu kişilerin dolandırıldıklarını iddia etmeleri ve Müvekkil'den haksız menfaat elde etmeye başlamaları,

- Bugaraj'ın esasen Müvekkil ile arasında sözde bir ticari uyuşmazlık yaratmak suretiyle maddi menfaat elde etme gayesi ile. ve Müvekkil'e kestikleri haracı ödemeye mecbur etmek amacıyla Müvekkil hakkında asılsız iddialar ortaya atarak, soruşturmanın konusunu ticari uyuşmazlıkla hiçbir ilgisi olmayan ve asılsız olan iddialarla genişleterek, bu şekilde hileli olarak yargı mercileri önünde Müvekkil aleyhine bir kanaat oluşturup, Müvekkil aleyhine soruşturma ve davalar açılmasına sebep olunması,

- Yıllarını Türkiye'nin menfaatine harcamış bir bilim insanı olan Müvekkil hakkında, ağza alınmayacak. hakaret düzeyine varan suçlamalarda, tehditlerde bulunması,

- Benzer tehditlerin Müvekkil'in çalışanlarına ve ailesine de yöneltilmesi,

- Müvekkil'in suç işlediğine dair yalan tanıklık yapılması,



19

Hergüner Bilgen Özeke

- Basında Müvekkil hakkında suç uydurma niteliğinde Müvekkil'in itibarını zedelemek üzere hatalı/yanıltıcı haberler yapılmasının sağlanması.

- Müvekkil aleyhine çeşitli bankalar ile görüşülüp, Müvekkil'in hesaplarında nedensiz olarak hesap kat ihtarında bulunulması, haciz tehditleriyle haksız menfaat elde edilmeye çalışılması,

- Odea Bank kredisinin kat ettirilmesi sağlanarak Mega Varlık Yönetim A.Ş.'ye devrinin yapılması ve bu şekilde Müvekkil'den haksız kazanç elde edilmesi.

- Hisse Devir Sözleşmesi sonrası Borajet yetkililerinin bir kısmının tehdit vs. baskılarla saf değiştirerek Müvekkil aleyhine ve gerçeğe aykırı delil yaratmaları, ifade vermeleri, bir kısmının ise başından beri Sergin Baran Korkmaz ile işbirliği içerisinde hareket etmesi nedeniyle mahkemeler nezdinde yalan beyanda bulunup, gerçeğe aykırı delil yaratmaları ve ifade vermeleri,

- Tanıklara baskı uygulanarak Müvekkil aleyhine ifade vermelerinin sağlanması suretiyle Müvekkil'in zararına olarak ve yargı mercilerinin de yanıltılması,

- Bu hileli fiiller ile, Borajet, Aydın Jet ve Borajet Bakım şirketlerinin bila bedel alınması ve Müvekkil'in borcu olmadığı halde, Müvekkil'den zorla ve kısa zaman içinde tahsil edilen paralarla, şirket aktifinin hukuka aykırı yollardan artırımının sağlanması,

- Hisse Devir Sözleşmesi'nin hükümleri doğrultusunda şirketlerin kar etmesini sağlamak yerine çalışanların işten çıkartılması, piyasa borçlarının ödenmemesi, uçakların uçmasını sağlayacak tedbirlerin alınmaması, uçak bakımlarının yapılmaması bu şekilde Hisse Devir Sözleşmesi'ne aykırı olacak şekilde şirketlerin devri halinde Müvekkil'e ödenecek %25 kar payının ödenmemesinin amaçlanması hem basın ve yayın araçlarının sağladığı kolaylıktan yararlanmak suretiyle, hem de tacir veya şirket yöneticisi olan ya da şirket adına hareket eden kişilerin ticari faaliyetleri sırasında gerçekleştirilmeleri sebebiyle nitelikli dolandırıcılık suçunun iki farklı görüntümünü oluşturmaktadır. Savcılık tarafından tespit olunacak şüphelilerin en ağır ceza ile cezalandırılmaları için iddianame düzenlenmesini talep ederiz.

73.     Öte yandan son aldığımız duyumlar ve basında çıkan haberlere göre Borajet'in satımı gerçekleştirilecektir. Bu şekilde SBK Holding Türkiye batık şirketleri alıp satarak kazanç sağlamaya yönelik faaliyet konusunu Müvekkil'i iştirakleriyle ve iş ortaklarıyla birlikte dolandırarak yerine getirmiş olmaktadır. Ayrıca burada belirtmek gerekir ki, açılan dava ile Müvekkil'in borçlu olduğunu iddia eden Bugaraj, Hisse Devir Sözleşmesi kapsamında üçüncü bir kişiye Borajet'i devrederken, Müvekkil'e vermesi gereken kar payını da elimine etmeye çalışmaktadır. Bu kapsamda anlaşılmaktadır ki kar payı ödeneceğine ilişkin Hisse Devir Sözleşmesi'ne eklenen madde, salt Müvekkil'i yanıltarak, yönlendirerek Hisse Devir Sözleşmesini imzaya itmeye yöneliktir. Dolayısıyla, nitelikli dolandırıcılık suçunun zincirleme şekilde işlenmesi durumu söz konusudur. İddianame hazırlanırken bu hususların da göz önünde bulundurulmasını talep ederiz.

## 2- Yalan Tanıklık (TCK m. 272)

74.     TCK'nın 272. maddesinde *"Hukuka aykırı bir fiil nedeniyle başlatılan bir soruşturma kapsamında tanık dinlemeye yetkili kişi veya kurul önünde gerçeğe aykırı olarak tanıklık yapan kimseye, dört aydan bir yıla kadar hapis cezası verilir."* hükmü getirilmiştir.

75.     Bugaraj tarafından İstanbul Cumhuriyet Başsavcılığı nezdinde başlatılan soruşturma kapsamında Müvekkil aleyhine gerçeğe aykırı bir kısım beyanlarda bulunarak yalan tanıklık suçunu



20



Herguner Bilgen Özeke

oluşturan fiiller gerçekleştirilmiştir. Bu kişilerin Sayın Savcılık tarafından yukarıdaki beyanlarımız çerçevesinde tespiti ile yalan tanıklık suçunu tehdit altında işleyenlerin Sayın Savcılığınızca tespit olunarak TCK'nın 28. maddesi kapsamında değerlendirilmelerini ve tehdidi uygulayan kişilerin tespit edilerek suçun faili olarak yargılanmaları için haklarında iddianame hazırlanmasını talep ederiz.

76.     Bu suçun işlenmesi hem bizzat ilgili kişilerin kendi menfaatlerini gözetmeleri, hem de Sezgin Baran Korkmaz'ın azmettiren sıfatıyla iştiraki çerçevesinde gerçekleştirilmiştir. Bugaraj yetkilisi olmadığı halde ve Bugaraj'ın kendini zaten vekil ile temsil ettiriyor olması sebebi ile, Sezgin Baran Korkmaz'ın adliyede bulunması ve söz konusu kişilerin şirket devri sonrası Borajet'te çalışmaya devam ettiği gerçeği tanıklar üzerinde baskı da oluştuğunu göstermektedir. Bu hususun da iddianamenin hazırlanması bakımından Sayın Savcılık tarafından dikkate alınmasını talep ederiz.

## 3- Adil Yargılamayı Etkilemeye Teşebbüs (TCK md. 288)

77.     TCK'nın 288. maddesi çerçevesinde *"Görülmekte olan bir davada veya yapılmakta olan bir soruşturmada, hukuka aykırı bir karar vermesi veya bir işlem tesis etmesi ya da gerçeğe aykırı beyanda bulunması için, yargı görevi yapanı, bilirkişiyi veya tanığı hukuka aykırı olarak etkilemek amacıyla alenen sözlü veya yazılı beyanda bulunan kişi, elli günden az olmamak üzere adli para cezası ile cezalandırılır."*

78.     Yukarıda ayrıntılı olarak açıkladığımız tüm fiiller ve özellikle Müvekkil hakkındaki asılsız suç isnatları, basın yoluyla Müvekkil hakkında alenen sözlü ve gerçeğe aykırı beyanlarda bulunulması, tanıklara baskı ve tehdit ile gerçeğe aykırı ifadeler verdirilmesi suçun unsurlarının defalarca oluştuğunu göstermektedir.

79.     Müvekkil'in terör örgütü üyesi olduğuna dair iddialar içeren şikayetler de Müvekkil aleyhine yargı görevini yapan savcılığı etkilemeye ve Müvekkil aleyhine kanaat uyandırmaya çalışılmasının en iyi kanıtıdır. Günümüz koşullarında FETÖ'ye yardım ve yataklıktan iftira ve hakaret boyutunda suçlanmak, toplumda olumsuz kanaat uyandırmakta, kişinin şeref ve haysiyetini de etkilemektedir. Müvekkil'in toplumdaki saygınlığı da göz önünde bulundurulduğunda, kendisi hakkındaki bu tip aleni suçlama ve beyanlar savcılık nezdinde olumsuz kanaat oluşturup, adil yargılamayı etkilemeyi amaçlamış ve esasen amaca ulaşmış, Müvekkil'in hiçbir alakası olmamasına rağmen hakkında nitelikli dolandırıcılık suçundan dava açılmıştır. Dava açılana kadarki süreçte de, Müvekkil'in 43 yıldır Amerika Birleşik Devletleri'nde ikamet ettiği bilinmesine ve hatta MERNİS'te de ikamet adresi olarak bu adresin yer almasına karşın, Savcılık yanıltılarak Müvekkil ifade etmekten imtina ediyormuşçasına Müvekkil hakkında ifadesi alınmak üzere yakalama kararı çıkartılmıştır. Her ne kadar adil yargılanmayı etkilemeye teşebbüs suçu işlenerek başlatılan yargılama henüz sonuçlanmamış olsa da, suçun tamamlanması için adil yargılanmanın ihlali gerekmediği, teşebbüs aşaması yeterli olduğu için, hâlihazırda bu bakımdan da suç tüm öğeleri ile oluşmuştur.

## 4- Tehdit (TCK m. 106)

80.     Türk Ceza Kanunu'nun 106. maddesinde *"Bir başkasını, kendisinin veya yakınının hayatına, vücut veya cinsel dokunulmazlığına yönelik bir saldırı gerçekleştireceğinden bahisle tehdit eden kişi, altı aydan iki yıla kadar hapis cezası ile cezalandırılır. Malvarlığı itibarıyla büyük bir zarara uğratacağından veya sair bir kötülük edeceğinden bahisle tehditle ise, mağdurun şikayeti üzerine, altı aya kadar hapis veya adli para cezasına hükmolunur."* hükmü yer almıştır.



21



Hergüner Bilgen Özeke

81.     Sezgin Baran Korkmaz'ın Müvekkil'e whatsapp uygulaması üzerinden gönderdiği ve yukarıda örneklerini Sayın Savcılığınıza sunduğumuz mesajlarda, Müvekkil'in hem kendisinin, hem ailesinin hayatına zarar verileceği, malvarlığı itibariyle büyük bir zarara uğratılacakları belirtilmek suretiyle tehdit suçu işlenmiştir.

82.     Yine Müvekkil'in çalışanlarına ve vekiline karşı da aynı içerikte mesajların hem Müvekkil'e hem de ilgili kişilere gönderilmesi de tehdit suçunu oluşturmaktadır.  Müvekkil'in Taksim'de yer alan ofisinin de aynı şekilde aranarak Sezgin Baran Korkmaz tarafından aynı yönde beyanlarda bulunulması da tehdit suçunu oluşturmaktadır.

83.     Bu çerçevede Sezgin Baran Korkmaz'ın defacalarca farklı kişilere karşı tehdit suçunu işlemiş olması çerçevesinde hakkında en ağır cezayı gerektirecek şekilde iddianame düzenlenmesini talep ederiz.

5- Suç işlemek amacıyla örgüt kurma TCK md. 220

84.     Türk Ceza Kanunu'nun  220. maddesi uyarınca *"Kanunun suç saydığı fiilleri işlemek amacıyla örgüt kuranlar veya yönetenler, örgütün yapısı, sahip bulunduğu üye sayısı ile araç ve gereç bakımından amaç suçları işlemeye elverişli olması halinde, iki yıldan altı yıla kadar hapis cezası ile cezalandırılır. Ancak, örgütün varlığı için üye sayısının en az üç kişi olması gerekir."*

85.     Yine aynı maddenin 4. fıkrasında *"Örgütün faaliyeti çerçevesinde suç işlenmesi halinde, ayrıca bu suçlardan dolayı da cezaya hükmolunur."* ve 5. fıkrasında *"Örgüt yöneticileri, örgütün faaliyeti çerçevesinde işlenen bütün suçlardan dolayı ayrıca fail olarak cezalandırılır."* hükümleri de yer almaktadır.

86.     Yukarıda açıklamış olduğumuz fiiller çerçevesinde, Müvekkil'in içerisinde kaldığı organizasyonun yalnızca Devredilen Şirketlerin devir sürecine dahil olan Sezgin Baran Korkmaz ve Bugaraj yetkililerinden ibaret olmadığı, resmin tümüne bakıldığında, SBK Holding Türkiye ve iştirakleri ile, iş ortakları ve yurtdışındaki bağlantılarının organize şekilde birlikte hareket ederek, Müvekkil de dahil olmak üzere farklı kişilere karşı çeşitli suçlar işledikleri, bu yolla ilgili kişileri baskı altına alarak mal varlıklarına el koydukları ve kazanç sağladıkları ortadadır. Hatta bu konular Sermaye Piyasası Kurulu'nun da  dikkatini çekmiş, yukarıda verdiğimiz örneklerde Şüphelilerin bir kısmı hakkında suç duyurularında da bulunulmuştur. Bu bakımdan, yukarıda bahsettiğimiz hususların araştırılmasını ve suç işlemek amacıyla bu örgüte dahil olduğu tespit edilen kişiler hakkında suç işlemek amacıyla örgüt kurma suçundan iddianame hazırlanmasını talep ederiz.

87.     Şayet şüphelilerden örgüte üyeliği tespit olunamayanlar olur ise, bunlar hakkında da aynı maddenin 7.fıkrası kapsamında *"Örgüt içindeki hiyerarşik yapıya dahil olmamakla birlikte, örgüte bilerek ve isteyerek yardım eden kişi, örgüt üyesi olarak cezalandırılır."* hükmü çerçevesinde iddianame hazırlanmasını talep ederiz.

88.     Yine aynı maddenin yukarıda bahsi geçen 4. ve 5. fıkraların da göz önünde bulundurulması ve yukarıda isnad olunan diğer suçlar ve Sayın Savcılığınız tarafından yürütülecek soruşturma çerçevesinde tespit olunacak diğer tüm suçlar ile birlikte değerlendirme yapılmasını talep ederiz.

89.     Ayrıca yukarıda örneklerini ilettiğimiz Sezgin Baran Korkmaz'ın FETÖ mensubu olduğuna ilişkin basında yer alan haberler çerçevesinde, TCK'nın 314. maddesi ile yukarıda suç işlemek amacıyla örgüt kurma suçuna ilişkin ilgili maddeler kapsamında araştırma yapılmasını ve herhangi bir ilişki/bağlantı tespit edilir ise dosyanın bu bakımdan tefrik edilerek İstanbul Cumhuriyet Başsavcılığı Terör ve Örgütlü Suçlar Soruşturma Bürosuna gönderilmesini talep ederiz.



22

Hergüner Bilgen Özeke

**IV.     İSTİNABE TALEBİ**

90.     Yukarıda belirtmiş olduğumuz üzere, Müvekkilimiz 40 yılı aşkın süredir ABD'de ikamet etmekte olup. MERNIS adresi de 75 Hawthorn Village Road, Nashua NH 03062 ABD'dir. Şikayet dilekçemizde yer alan tüm hususlar çerçevesinde Sayın Savcılığınızca Müvekkil'in müşteki sıfatıyla ifadesinin alınması gerekli görülür ise, Amerika Birleşik Devletleri ile Türkiye Cumhuriyeti arasında 7 Haziran 1979 tarihli "Amerika Birleşik Devletleri ile Türkiye Cumhuriyeti arasında Suçluların Geri Verilmesi ve Ceza İşlerinde Karşılıklı Yardım Anlaşması"'nın 21. maddesinin üçüncü fıkrasının (b) bendinde "Kişilerin ifade ve beyanlarının alınmasının sağlanması" da karşılıklı yardım konuları kapsamında sayılmıştır. Bu bağlamda Müvekkil'in müşteki sıfatıyla ifadesinin istinabe yoluyla ikamet ettiği Amerika Birleşik Devletleri'nde alınmasının değerlendirilmesini talep ederiz. **[EK 38 - Amerika Birleşik Devletleri ile Türkiye Cumhuriyeti arasında Suçluların Geri Verilmesi ve Ceza İşlerinde Karşılıklı Yardım Anlaşması]**

**NETİCE ve TALEP_____** : Yukarıda belirtilen olaylar ve hukuki açıklamalar neticesinde Sayın Savcılık Makamınız'dan;

1.      Eldeki deliller yukarıda tafsilatı yer alan kuvvetli suç şüphesi ve şüphelilerin kaçma ve delilleri karartma ihtimali olduğundan yukarıdaki isimleri yazılı olan Şüpheliler ile tahkikat neticesinde suçlara iştirak ettiği tespit edilecek diğer tüm şüpheliler hakkında öncelikle Ceza Muhakemesi Kanunu ("CMK") madde 90 ve 91 uyarınca **YAKALAMA ve GÖZALTI KARARLARI** verilerek kararın icra ve uygulanmasının derhal kolluktan istenilmesini,

2.      CMK madde 100 gereğince Şüphelilerin saklanması veya kaçma ve delil karartma şüphesini uyandıran birden fazla olgunun varlığı ile şüphelilerin delilleri yok etme, gizleme veya değiştirme gibi ihtimalleri nazara alınarak **TUTUKLAMA KARARI VERİLMESİ TALEBİYLE YETKİLİ SULH CEZA HÂKİMLİĞİ'NDEN TALEPTE BULUNULMASINI,**

3.      Şikayete konu suçlar arasında Nitelikli Dolandırıcılık suçu da yer aldığından, CMK madde 128 ve eldeki deliller uyarınca Şüphelilerin üzerine kayıtlı olan taşınır ve taşınmazlar ile banka ve diğer mali kurumlardaki her türlü hesapları, gerçek ve tüzel kişiler nezdindeki her türlü alacakları, kiralık kasa mevcutları, Takasbank nezdinde adlarına kayıtlı var ise hisse senetleri. tüm menkul ve gayrimenkul malvarlığı değerleri de dâhil olmak üzere tüm **MALVARLIĞI DEĞERLERİNE EL KONULMASI AMACIYLA, YETKİLİ SULH CEZA HAKİMLİĞİ'NDEN TALEPTE BULUNULMASINI,**

4.      Şüphelilerin yurtdışına kaçma ve delil karartma şüphesine binaen ve tahkikat neticesinde suça iştirak ettiği tespit edilecek diğer tüm şüpheliler hakkında CMK madde 109/3-a uyarınca **YURT DIŞINA ÇIKIŞ YASAĞI KOYULMASI AMACIYLA YETKİLİ SULH CEZA HAKİMLİĞİ'NDEN TALEPTE BULUNULMASINI,**

5.      Yukarıda isimleri yazılı olan Şüpheliler ile tahkikat neticesinde suça iştirak ettiği tespit edilecek diğer tüm şüphelilerin yukarıda açıklanan eylemleri nedeniyle TCK'nın ilgili maddeleri uyarınca cezalandırılmaları için haklarında iddianame düzenlenerek **KAMU DAVASI AÇILMASINI,**




23



Hergüner Bilgen Özeke

6.  FETÖ iddiaları hakkında da araştırma yapılarak, eğer ilişki tespit edilir ise dosyanın bu bakımdan tefriki ile İstanbul Cumhuriyet Başsavcılığı Terör ve Örgütlü Suçlar Bürosu'na gönderilmesini,

arz ve talep ederiz.

Saygılarımızla,

Yalçın Ayaslı

Vekilleri

Av. Ayşe Hergüner Bilgen – Av. Hamdi Tolga Danışman

[EK 39- Vekaletname]

24