UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

YALCIN AYASLI,

        Plaintiff,

        v.

SEZGIN BARAN KORKMAZ, KAMIL
FERIDUN OZKARAMAN, FATIH AKOL,
SBK HOLDINGS ANONIM SIRKETI, SBK
HOLDINGS, USA, INC., BUGARAJ
ELEKTRONIK TICARET VE BILISIM
HIZMETLERI ANONIM SIRKETI, and
MEGA VARLIK YONETIM ANONIM
SIRKETI,

        Defendants.

Civil Action No. 19-cv-00183-JL

DEFENDANTS SEZGIN BARAN KORKMAZ, SBK HOLDING A.S., AND BUGARAJ
ELEKTRONIK TICARET VE BILISIM HIZMETLERI A.S.'S BRIEF IN RESPONSE TO THE
COURT'S JUNE 16, 2020, ORDER.

i

**TABLE OF CONTENTS**

                                                                                            **Page**

I.    INTRODUCTION ............................................................................................................... 1

II.   THE UTAH VISIT .............................................................................................................. 3

III.  NO JURISDICTION OVER SBK HOLDING AND BUGARAJ ......................................... 4

IV.  AYASLI WAIVES THE UTAH VISIT AS A JURISDICTIONAL BASIS ............................ 4

V.   THE ALLEGED UTAH VISIT HAS NO JURISDICTIONAL SIGNIFICANCE ............... 4

VI.  CONCLUSION ................................................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Captive Concepts, LLC v. Williams*,
  No. CV1001230SJOSSX, 2010 WL 11549535 (C.D. Cal. Dec. 28, 2010) ......................... 9

*Chandler v. Roy*,
  985 F. Supp. 1205 (D. Ariz. 1997) ................................................................................... 6

*Clover Gifts, Inc. v. Airs Fragrance Prod., Inc.*,
  No. 205CV1084RCJLRL, 2006 WL 8441506 (D. Nev. Mar. 2, 2006) ............................ 6

*Dietz v. Dietz*,
  No. C-10-80207 SI EMC, 2011 WL 772914 (N.D. Cal. Mar. 1, 2011) ........................... 8

*Digitone Indus. Co. v. Phoenix Accessories, Inc.*,
  No. 2:08-CV-00404-RLHRJJ, 2008 WL 2458194 (D. Nev. June 13, 2008) ................... 8

*Doe v. Am. Nat'l Red Cross*,
  112 F.3d 1048 (9th Cir. 1997) ..................................................................................... 5, 9

*Doe v. Unocal Corp.*,
  248 F.3d 915 (9th Cir. 2001) ....................................................................................... 5, 8

*Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*,
  907 F.2d 911 (9th Cir. 1990) ............................................................................................ 8

*Galvin v. EMC Mortg. Corp.*,
  No. 12-CV-320-JL, 2013 WL 1386614 (D.N.H. Apr. 4, 2013) (Laplante, J.) .................. 4

*Harlow v. Children's Hosp.*,
  432 F.3d 50 (1st Cir. 2005) .............................................................................................. 5

*James Malinchak Int'l, Inc. v. Suzanne Evans Coaching, LLC*,
  No. 2:16-CV-89 JCM (CWH), 2016 WL 5796854 (D. Nev. Sept. 30, 2016) ................... 6

*Love v. The Mail on Sunday*,
  No. CV05-7798ABCPJWX, 2006 WL 4046170 (C.D. Cal. July 14, 2006) ..................... 7

*Mavrix Photo, Inc. v. Moguldom Media Grp. LLC*,
  No. CV 10-9351 RSWL JCGX, 2011 WL 1134187 (C.D. Cal. Mar. 28, 2011) ............... 6

*Notorious B.I.G. LLC v. Hutson*,
  No. CV1402415SJOJCX, 2014 WL 12589626 (C.D. Cal. July 3, 2014) ................. 5, 6, 7

*PSF Indus., Inc. v. Munroe, Inc.*,
    No. CIV. 05-6089-AA, 2005 WL 1565001 (D. Or. June 24, 2005) ....................................................... 8

*Stone v. Derosa*,
    No. CV 07-0680-PHXPGRCRP, 2009 WL 798930 (D. Ariz. Mar. 25, 2009) .................................. 8

*Terracom v. Valley Nat. Bank*,
    49 F.3d 555 (9th Cir. 1995) ..................................................................................................................... 5

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
    No. 2:03-CV-01431-PMP, 2010 WL 4386951 (D. Nev. Oct. 29, 2010) ................................... 5, 7, 9

*Wine v. Kolar*,
    No. SACV1101229CJCRNBX, 2012 WL 13019943 (C.D. Cal. Jan. 26, 2012) ................................. 9

**I.      INTRODUCTION**

At the hearing on June 16, 2020, the Court sought briefing from Plaintiff Yalcin Ayasli and Defendants Sezgin Baran Korkmaz ("Korkmaz"), SBK Holding A.S. ("SBK Holding"), and Bugaraj Elektronik Ticaret ve Bilisim Hizmetleri A.S. ("Bugaraj") (together, the "Korkmaz Defendants") on "whether defendant Korkmaz's alleged visit to Utah in February 2018 satisfies the personal-jurisdiction requirement that Ayasli's civil RICO claim arise out of or is related to Korkmaz's activities in the United States" under Ninth Circuit law.  Ayasli alleges that during this Utah visit, Korkmaz met with Professor Hakan Yavuz ("Yavuz") (Ayasli is Yavuz's academic benefactor) and tried to persuade Yavuz to facilitate a face-to-face meeting between Korkmaz and Ayasli, so that Korkmaz could pressure Ayasli to settle Korkmaz's Turkish suits against Ayasli.  Ayasli never met with Korkmaz as a result of the Utah visit, much less made any payment to Korkmaz.  The Korkmaz Defendants now respond to the Court's briefing request.

As the Korkmaz Defendants understand it, the Court asked for this briefing because it perceives a potential difference between First and Ninth Circuit law in evaluating the "arising out of" prong (*i.e.*, relatedness prong) of personal jurisdiction.  As the Korkmaz Defendants further understand it, the Court concurs with the Korkmaz Defendants that Korkmaz's alleged Utah visit cannot be a basis for jurisdiction under the First Circuit's "proximate cause" test, but questions whether it can be under the Ninth Circuit's "but for" test.

Having now done a deep dive into the issue, the Korkmaz Defendants are confident that there is no meaningful distinction between First and Ninth Circuit law *vis-à-vis* the relatedness prong of personal jurisdiction, and Korkmaz's alleged Utah visit, even if it took place as Ayasli claims, is not enough to create jurisdiction either in the First or Ninth Circuit (or anywhere else as far as we can tell).

For starters, a thorough examination of First and Ninth Circuit law dispels any notion that

1

there is sharp, meaningful difference between the tests that these two Circuits use to analyze the "arising out of" prong of personal jurisdiction. Labels aside, in evaluating whether a claim arises out of forum-related activity, both the First and Ninth Circuits look at "but for" causation and some degree of "proximate" causation. In the end, whether a claim or injury "arises out of" the defendant's forum-related activity depends on the court finding that the claimed jurisdictional event is at the core of the plaintiff's claim. In this context, Korkmaz's alleged meeting with Yavuz years after the BoraJet transaction and the subsequent lawsuits in Turkey is jurisdictionally dead on arrival.

Applying the law to the facts of this case, the most telling sign that Korkmaz's alleged visit to Utah is a jurisdictional non-event under Ninth Circuit law is the fact that Ayasli and his counsel **not once** mention it in their transfer motion as one of the grounds for the United States District Court for the Central District of California's jurisdiction over the Korkmaz Defendants. If Korkmaz's alleged Utah visit was such a jurisdictional driver in the Ninth Circuit, Ayasli and his experienced counsel would have screamed it from the rooftops. Their deafening silence on the issue—which, frankly, constitutes waiver—should quell any concerns that the Court may have that Korkmaz's alleged visit to Utah has any jurisdictional consequence in the Ninth Circuit.

In fact, Ayasli and his counsel were right to believe that Korkmaz's alleged Utah visit had no jurisdictional significance in the Ninth Circuit. Under the Ninth Circuit's "but for" test, a defendant's forum-related activities do not create jurisdiction if the plaintiff's claim and injury would have existed regardless of the defendant's forum-related activities. It is not enough that the defendant's forum-related activities merely relate to plaintiff's claims or may be part of some larger alleged conspiracy; they must be at the heart of the claim and injury.

The Complaint makes it plain that Ayasli's RICO claim and alleged injuries would exist irrespective of Korkmaz's alleged visit to Utah. Ayasli's core RICO claim is that the Korkmaz Defendants (1) carried out a media defamation campaign against him beginning around August

2

2016, which enabled them to "devalue" BoraJet and purchase it at a "fire sale price" in December 2016; and then (2) attempted to extort him through "sham" lawsuits in Turkey based on the BoraJet sale beginning around March 2017. Korkmaz's alleged Utah visit did not occur until February 2018—well after Ayasli's central RICO claim. It is basic commonsense that a meeting that took place years after Ayasli's core RICO claim cannot be the "but for" cause of that claim.

Not only is Korkmaz's alleged Utah visit dismantled by the absence of any temporal relationship with Ayasli's core RICO claim, it is also too factually attenuated to have any jurisdictional significance. Even if Korkmaz visited Yavuz with the intent to persuade him to set up a settlement meeting between Korkmaz and Ayasli, no such meeting took place, much less any "settlement" payment by Ayasli to Korkmaz. At best, Korkmaz's alleged Utah visit is a footnote in Ayasli's expansive RICO claim. Such an ancillary allegation does not carry any jurisdictional significance under the Ninth Circuit's "but for" test (nor anywhere else as far as we have been able to determine).

The Court should deny transfer and dismiss this case. If Ayasli wants to continue litigation, he can do so in Turkey where he agreed to litigate and has been doing so for over three years.

## II. THE UTAH VISIT

Ayasli alleges a two part RICO scheme relating to his sale of BoraJet. First, he claims that the Korkmaz Defendants "devalue[d] BoraJet through a defamatory media campaign" that enabled Bugaraj to purchase BoraJet at a "fire sale price." (Compl. ¶ 327.) Next, he contends that the Korkmaz Defendants used the BoraJet sale as a springboard to "divest . . . [him] of all of his real estate holdings in Turkey" through "sham commercial and criminal litigation in Turkey." (Compl. ¶¶ 417, 462.) The alleged defamation campaign began in August 2016. (Compl. ¶ 339.) The BoraJet purchase occurred on December 29, 2016. (Compl. ¶ 405.) The Turkish litigation began in March 2017. (Compl. ¶ 465.)

3

Yavuz's role in all of this is attenuated. Ayasli claims that Korkmaz visited Yavuz on February 22, 2018, in Utah "in an effort to set up a face-to-face meeting between [Korkmaz] and . . . Ayasli," so that Korkmaz could "pressur[e] . . . Ayasli to 'surrender' and pay a monetary 'settlement' to the RICO Enterprise." (Compl. ¶¶ 555, 562, 575.) Ayasli never met Korkmaz as a result of this visit, much less made any payment to Korkmaz. (Compl. ¶ 576.)

### III. NO JURISDICTION OVER SBK HOLDING AND BUGARAJ

At the outset, Korkmaz's alleged Utah visit cannot confer jurisdiction over SBK Holding and Bugaraj because Ayasli does not allege that they participated in Korkmaz's alleged Utah visit.

### IV. AYASLI WAIVES THE UTAH VISIT AS A JURISDICTIONAL BASIS

In determining that Korkmaz's alleged Utah visit has no jurisdictional significance, the Court does not need to look any further than Ayasli's transfer motion. Ayasli and his counsel clearly believed that Korkmaz's alleged Utah visit was so jurisdictionally insignificant that they **never** bothered advancing it as a basis for the United States District Court for the Central District of California's jurisdiction over the Korkmaz Defendants in their transfer motion. (Dkt. # 50-1, Mem. 7-10; Dkt. # 64, Reply 5.) If Ayasli and his counsel do not believe that the Korkmaz's alleged Utah visit is jurisdictionally significant, neither should the Court. In fact, Ayasli and his lawyers' deafening silence on Korkmaz's alleged Utah visit as a jurisdictional driver means that they waived their ability to argue that visit as a basis for jurisdiction over the Korkmaz Defendants in the United States District Court for the Central District of California. *See Galvin v. EMC Mortg. Corp.*, No. 12-CV-320-JL, 2013 WL 1386614, at *1 (D.N.H. Apr. 4, 2013) (Laplante, J.) (holding that arguments not raised in memoranda are waived).

### V. THE ALLEGED UTAH VISIT HAS NO JURISDICTIONAL SIGNIFICANCE

At the heart of the current analysis is the fact that the First Circuit's "proximate cause" test for determining relatedness and the Ninth Circuit's "but for" test for determining relatedness

4

converge in practice. The First Circuit describes its "proximate cause" test as one in which "but for" causation is complemented by the concept of proximate cause, which is "not a per se requirement" but rather an "important" factor. *Harlow v. Children's Hosp.*, 432 F.3d 50, 61 (1st Cir. 2005) (internal quotations and citation omitted). Similarly, Ninth Circuit courts describe their Circuit's "but for" test as requiring "some degree of proximate causation to be considered for purposes of jurisdiction." *Notorious B.I.G. LLC v. Hutson*, No. CV1402415SJOJCX, 2014 WL 12589626, at *4 (C.D. Cal. July 3, 2014) (internal quotations and citation omitted). At bottom, the purposes of the First Circuit's "proximate cause" test and the Ninth Circuit's "but for" test are identical: they seek to establish that the defendant's forum-related activities are not "attenuated," but rather are essential to the cause of plaintiff's injury. *See Harlow*, 432 F.3d at 61 (internal quotations and citation omitted); *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1051 (9th Cir. 1997).

We believe that Ninth Circuit jurisprudence is clear that Korkmaz's alleged Utah visit cannot serve as the basis of the United States District Court for the Central District of California's jurisdiction over the Korkmaz Defendants. In determining whether a "claim . . . arises out of or results from the defendant's forum-related activities," the Ninth Circuit describes a "but for" test: would the defendant "have sustained . . . injury[ ] 'but for' [the defendant's] alleged misconduct" in the forum (in this case the United States). *Am. Nat'l Red Cross*, 112 F.3d at 1052. *See also Doe v. Unocal Corp.*, 248 F.3d 915, 924 (9th Cir. 2001) ("[T]he Court considers whether plaintiffs' claims would have arisen but for [defendant's] contacts with [the forum].").

If the plaintiff's claims or injuries would have arisen "irrespective" of the defendant's forum-related activity, then the "but for" test is not satisfied. *In re W. States Wholesale Nat. Gas Antitrust Litig.*, No. 2:03-CV-01431-PMP, 2010 WL 4386951, at *3 (D. Nev. Oct. 29, 2010). *See also Unocal Corp.*, 248 F.3d at 924-25 (9th Cir. 2001) (holding no jurisdiction exists in California because plaintiff's claims would have arisen notwithstanding defendant's contacts with California); *Terracom v.*

5

*Valley Nat. Bank*, 49 F.3d 555, 561 (9th Cir. 1995) (finding that personal jurisdiction does not exist because "it cannot be said" that "'but for' the contacts between the defendant and the forum state, the cause of action would not have arisen"); *James Malinchak Int'l, Inc. v. Suzanne Evans Coaching, LLC*, No. 2:16-CV-89 JCM (CWH), 2016 WL 5796854, at *5 (D. Nev. Sept. 30, 2016) (holding that plaintiff fails to establish Nevada jurisdiction under the "but for" test because plaintiff does not "assert that it would not have been harmed 'but-for' defendants selling tickets on their website to the Las Vegas engagement and holding their engagement in Las Vegas"); *Notorious B.I.G. LLC*, 2014 WL 12589626, at *4 ("Plaintiff does not argue that the instant action would not have occurred 'but for' the 2007 Action and the subsequent Agreement, and there is no indication of a causal relationship. Plaintiff instituted this action in response to Defendant's cease-and-desist letters not the 2007 Action."); *Mavrix Photo, Inc. v. Moguldom Media Grp. LLC*, No. CV 10-9351 RSWL JCGX, 2011 WL 1134187, at *5 (C.D. Cal. Mar. 28, 2011) ("Plaintiff fails to show that 'but-for' Defendant's advertisements on its website, Plaintiff would not have suffered the alleged injuries. Thus, the Court finds that Plaintiff's claim does not arise out of or result from Defendant's alleged forum-related contacts."); *Clover Gifts, Inc. v. Airs Fragrance Prod., Inc.*, No. 205CV1084RCJLRL, 2006 WL 8441506, at *6 (D. Nev. Mar. 2, 2006) ("Here, any claim that Plaintiffs make that Banner's alleged contacts with Nevada led to their current claim is attenuated and weak at best. Plaintiffs likely would have suffered their losses regardless of any of Banner's alleged contacts with the forum. Plaintiffs' losses suffered through Banner's opening of an account for Hakim would have occurred even if there were no other Clover-related bank accounts, no Banner website, or any Raymond James office affiliated with Banner."); *Chandler v. Roy*, 985 F. Supp. 1205, 1215-16 (D. Ariz. 1997) ("Plaintiffs argue that their 'claims against Steinway and Weinberg arise from the inadequate training Dr. Roy received in Arizona.' . . . Plaintiffs' argument is not persuasive. Even if Defendants Weinberg and Steinway were involved in the production of the teaching materials used in Casebeer's training seminar [in

6

Arizona], Plaintiffs have not established that "but for" their alleged involvement, Defendant Roy would not have caused Plaintiff's injury. Therefore, Plaintiffs' cause of action did not "arise out of" Defendant Weinberg and Steinway's contact with Arizona.").

The mere existence of a "'relationship'" between plaintiff's claim and defendant's forum-related activities "is not the correct legal standard" under the "but for" test. *Notorious B.I.G. LLC*, 2014 WL 12589626, at *4.

Nor do Ninth Circuit courts "go so far as to hold that any forum-related act in furtherance of a conspiracy will suffice to support specific personal jurisdiction, as it cannot be said that a particular plaintiff's claim would not have arisen but for each and every act in furtherance of a conspiracy." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 2010 WL 4386951, at *3.

Applying this extensive and clear body of precedent to the Ayasli's claims, Korkmaz's alleged visit to Utah cannot serve as the basis for the United States District Court for the Central District of California's jurisdiction over the Korkmaz Defendants.

***First,*** "irrespective" of Korkmaz's alleged Utah visit, Ayasli's RICO claim "would be precisely the same in both character and scope." *Id.* The crux of Ayasli's RICO claim is that the Korkmaz Defendants: (1) carried out an alleged defamatory media campaign against Ayasli to devalue BoraJet and purchase it cheaply; and (2) instituted "sham" lawsuits in Turkey relating to the BoraJet sale to divest Ayasli of his Turkish holdings. (Compl. ¶¶ 327, 417, 462.) Thus, Ayasli has never stated, and cannot seriously contend now, that his RICO claim hinges on Korkmaz's visit to Utah, and that this action would never have been brought without the meeting between Yavuz and Korkmaz having taken place in Utah in 2018. *See Love v. The Mail on Sunday*, No. CV05-7798ABCPJWX, 2006 WL 4046170, at *8 (C.D. Cal. July 14, 2006) ("Plaintiff's causes of action would have occurred regardless of Defendant's contract with TIMCO. Therefore, Plaintiff's assertion of personal jurisdiction based on Defendant's contract with TIMCO fails."); *PSF Indus.,*

7

*Inc. v. Munroe, Inc.*, No. CIV. 05-6089-AA, 2005 WL 1565001, at *3 (D. Or. June 24, 2005) ("The fact that the Economizer was to be shipped to a third-party's mill in Oregon does not satisfy the "but for" cause of plaintiff's claim. . . . I find that plaintiff would have the exact same cause of action for alleged breach of contract even if the Purchase Order mentioned nothing whatsoever about . . . Oregon.").

**Second,** the timing of the Utah meeting in 2018 dictates that Korkmaz's alleged visit to Utah could never give rise to Ayasli's RICO claim because this 2018 visit occurred after the events underlying Ayasli's RICO claim—namely, the alleged BoraJet defamation campaign in 2016 and the alleged "sham lawsuits" in 2017. (Compl. ¶¶ 327, 339, 405, 417, 462, 465.) *See Unocal Corp.*, 248 F.3d 925 (holding that "but for" test was not met because defendant had agreed to enter into the pipeline project giving rise to plaintiffs' claims before defendant's forum-related activities); *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990) (holding that "[o]nly contacts occurring prior to the event causing the litigation may be considered" for jurisdictional purposes); *Dietz v. Dietz*, No. C-10-80207 SI EMC, 2011 WL 772914, at *2 (N.D. Cal. Mar. 1, 2011) ("This relatedness requirement is met if the cause of action (*i.e.* the basis for the Louisiana judgment) would not have arisen 'but for' the alleged contacts (*i.e.* the San Mateo lawsuit) between defendant and forum state. Here, the Louisiana judgment was issued a year before Mr. Dietz filed suit in San Mateo. It could not have arisen out of the San Mateo lawsuit."); *Stone v. Derosa*, No. CV 07-0680-PHXPGRCRP, 2009 WL 798930, at *2-3 (D. Ariz. Mar. 25, 2009) ("Watts' 'contact' was nine months after the rejection of the book for which plaintiff seeks compensatory and punitive damages. Such post-incident contacts are accorded little [jurisdictional] weight."); *Digitone Indus. Co. v. Phoenix Accessories, Inc.*, No. 2:08-CV-00404-RLHRJJ, 2008 WL 2458194, at *5 (D. Nev. June 13, 2008) ("[Plaintiff] fails to demonstrate that the initial formation of the Parties' business and social relationships arose out of the Parties' Nevada contacts. On the contrary, the Parties' business and

8

social relationships began three years prior to Phoenix's trips to Las Vegas.").

At best, Ayasli can claim that Korkmaz's alleged Utah visit was part of a conspiracy to extort him post-BoraJet sale. But again, Ninth Circuit courts will not "go so far as to hold that any forum-related act in furtherance of a conspiracy will suffice to support specific personal jurisdiction, as it cannot be said that [Ayasli's] claim would not have arisen but for each and every act in furtherance of a conspiracy." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 2010 WL 4386951, at *3.

**Third**, Ayasli cannot claim that he "would not have sustained . . . injury[ ] 'but for,'" *Am. Nat'l Red Cross*, 112 F.3d at 1052, Korkmaz's alleged Utah visit because he never met with Korkmaz as a result of that visit, much less made any payments to Korkmaz, (Compl. ¶¶ 555, 575). *See Wine v. Kolar*, No. SACV1101229CJCRNBX, 2012 WL 13019943, at *3 (C.D. Cal. Jan. 26, 2012) (holding that defendant's forum-related conduct could not be a "but for" cause of plaintiff's claims because those activities "did not cause [plaintiff] any injury"); *Captive Concepts, LLC v. Williams*, No. CV1001230SJOSSX, 2010 WL 11549535, at *3 (C.D. Cal. Dec. 28, 2010) ("Plaintiff fails to provide sufficient facts to allege that Defendants' sales of the Copyrighted Materials were the 'but for' cause of Plaintiff's injury. In fact, Plaintiff concedes that Defendants "did not deliver on the sale. Plaintiff fails to satisfy the second prong." (internal quotations and citation omitted)).

## VI. CONCLUSION

There is no credible or logical "but for" causal connection between Ayalsi's RICO claim and Korkmaz's later alleged Utah visit under Ninth Circuit law. Ninth Circuit jurisprudence is clear that Ayasli cannot establish jurisdiction in the United States District Court for the Central District of California over the Korkmaz Defendants based on Korkmaz's alleged Utah visit in 2018. The Court should therefore deny Ayasli's transfer motion.

Respectfully submitted,

SEZGIN BARAN KORKMAZ,
SBK HOLDINGS A.S., and BUGARAJ
ELEKTRONIK TICARET VE BILISIM
HIZMETLERI A.S.

By their Attorneys,

McLANE MIDDLETON,
PROFESSIONAL ASSOCIATION

Dated: June 23, 2020  /s/ Bruce W. Felmly
Bruce W. Felmly (NH Bar No. 787)
Michael A. Delaney (NH Bar No. 10504)
Andrew R. Hamilton (NH Bar No. 265245)
900 Elm Street, P.O. Box 326
Manchester, NH 03105-0326
Direct: (603) 628-1448
Facsimile: (603) 625-5650
bruce.felmly@mclane.com
michael.delaney@mclane.com
andrew.hamilton@mclane.com

-and-

BRYAN CAVE LEIGHTON
PAISNER LLP

Nafiz Cekirge (*pro hac vice*)
1290 Avenue of the Americas
New York, NY 10104-3300
Telephone: (212) 541-2000
nafiz.cekirge@bclplaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify on this 23rd day of June, 2020, this document was filed through the Electronic Case Filing System of the United States District Court for the District of New Hampshire and will be served electronically by the court to the Registered Participants identified in the Notice of Electronic Filing (NEF).

      */s/ Bruce W. Felmly*
      Bruce W. Felmly